# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

**Cameron James Wilson, In Propria Persona**

**Plaintiff,**

v.

**City of Hood River**, a municipal corporation;

**Officer Emelike Delancy**, in his individual capacity;

**Officer Austin Griffin**, in his individual capacity;

**Officer Ryan Jundt**, in his individual capacity;

**Defendants.**

**Case No.: 3:24-cv-02033-JR**

**AMENDED COMPLAINT**

*(JURY TRIAL DEMANDED)*

# I. INTRODUCTION

Plaintiff, **Cameron James Wilson**, files this Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, seeking redress for the egregious violation of his fundamental constitutional liberties. This action stems from events occurring on or about December 10, 2022,

in Hood River, Oregon, where officers of the City of Hood River Police Department, acting under color of state law, subjected Plaintiff to an unlawful seizure, detention, and a series of threats tantamount to a coercive "kidnapping" under the Fourth Amendment.[1]

The allegations set forth herein describe how Defendants, purportedly tasked with upholding the law, instead violated Plaintiff's clearly established rights to be free from unreasonable searches and seizures, as well as to live unencumbered by unjustified restraint.  Plaintiff contends that the forceful and unjustifiable nature of Defendants' actions, including threatening Plaintiff with jail and physically subduing him without probable cause, rose to the level of a constitutionally infirm "kidnapping," contravening the Fourth Amendment's prohibition on unreasonable governmental intrusions.[2]

In this Amended Complaint, Plaintiff details the specific acts and omissions of the City of Hood River and its officers, demonstrating the want of any legitimate basis for the detention or the subsequent use of force.  By instituting this action, Plaintiff seeks not only to hold Defendants accountable for their constitutional infractions but also to ensure that such abuses of power do not recur.  This Court's intervention is warranted to vindicate Plaintiff's rights under the Fourth Amendment, applied through the Fourteenth Amendment, and to provide an avenue for appropriate legal and equitable remedies consistent with 42 U.S.C. §1983 and other applicable federal law.

---

[1] See *Dunaway v. New York*, 442 U.S. 200 (1979) (discussing unlawful detention and seizures).
[2] See *United States v. Mendenhall*, 446 U.S. 544 (1980) (outlining standards for seizure under the Fourth Amendment).

## II. JURISDICTION AND VENUE

1. **Subject Matter Jurisdiction:** This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §1331, as Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. §1983.[3] These claims challenge Defendants' alleged violations of Plaintiff's rights guaranteed by the Fourth, First, and Fourteenth Amendments.

2. **Personal Jurisdiction:** Defendants reside in, are employed within, or have otherwise established sufficient contacts in the State of Oregon, and the acts or omissions giving rise to this action occurred in Hood River, Oregon. Consequently, this Court maintains personal jurisdiction over all Defendants, consistent with the Due Process Clause and Oregon's long-arm statutes.[4]

3. **Venue:** Venue is proper in the District of Oregon, Portland Division, under 28 U.S.C. §1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Hood River, Oregon. This District is thus the most appropriate and convenient forum for the resolution of Plaintiff's claims.

## III. PARTIES

4. **Plaintiff: Cameron James Wilson**, proceeding *In Propria Persona*, resides at 1312 South 44th Avenue, Yakima, Washington 98908, and is a citizen of the United States.

5. **Defendant City of Hood River:** A municipal corporation organized under the laws of Oregon, bearing responsibility for the policies, practices, and customs of its Police Department, as well as

---

[3]See *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983) (federal-question jurisdiction under 28 U.S.C. §1331).

[4]See *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (requiring minimum contacts for personal jurisdiction).

the training and supervision of the individually named officers.

6. **Defendant Officer Emelike Delancy:** A police officer employed by the Hood River Police Department, acting under color of state law. Sued in his individual capacity.

7. **Defendant Officer Austin Griffin:** A police officer employed by the Hood River Police Department, acting under color of state law. Sued in his individual capacity.

8. **Defendant Officer Ryan Jundt:** A police officer employed by the Hood River Police Department, acting under color of state law. Sued in his individual capacity.

# IV. STATEMENT OF FACTS

1. On December 10, 2022, Plaintiff did park his blue 2014 BMW 328d in a public space in Hood River, Oregon, and began to walk on the nearby sidewalk.

2. Defendants Officer Emelike and Officer Austin did stop a SUV for speeding but did not appear to issue a citation to the speeding driver.

3. Officers Emelike and Austin did notice Plaintiff's vehicle to have a private plates and did yell for Plaintiff to "come here" or return to his vehicle.

4. Plaintiff heard the officers yelling, turned around, and saw them calling out to him.

5. Officer Austin approached Plaintiff, requesting that Plaintiff remove his hands from his pockets for officer safety.

6. Plaintiff stated he did not wish to engage in conversation and did not want to contract with them

in any manner.

7. Plaintiff requested a supervising officer (sergeant); Officer Austin confirmed the request but did not bring a supervisor on-scene.

8. Plaintiff verbally reserved all rights, including the right to remain silent; Officer Austin acknowledged this.

9. Around this time, Officer Emelike did not issue any citation to the speeding SUV driver, releasing that vehicle without formal enforcement action.

10. Officer Emelike then walked approximately seventy yards to where Plaintiff and Officer Austin were discussing the plates on Plaintiff's car.

11. Officer Austin did not inform Officer Emelike that Plaintiff had reserved his rights.

12. Officer Emelike told Plaintiff he would be arrested for obstruction if he failed to walk back to his car as instructed.

13. Officer Emelike insisted he was not "above" Plaintiff, stating he disliked ranks or titles.

14. Plaintiff asked for Emelike's name and badge number; Emelike provided partial identification (badge 60).

15. Plaintiff repeated a request for name and badge number; Officer Austin provided his identification (badge 63).

16. Plaintiff attempted to request identification from Officer Jundt; at that moment, Officer Emelike

grabbed Plaintiff's phone and his arm.

17. Officer Emelike took Plaintiff's phone, which was still recording, and terminated the eligibility to record, placing it in Plaintiff's jacket pocket.

18. Officer Jundt took hold of Plaintiff's other arm.

19. Officers Emelike and Jundt handcuffed Plaintiff. Plaintiff neither posed a threat nor attempted to flee.

20. Officer Emelike advised Plaintiff of what he referred to as Miranda rights, stating Plaintiff had the right to remain silent and an attorney.

21. Plaintiff asked why he was being arrested; Emelike responded that he was being detained.

22. Plaintiff requested a higher authority again; Emelike stated no one was available.

23. Emelike proceeded to pull Plaintiff toward his car, advising that this situation could be deemed "kidnapping" if forcibly moving a non-consenting individual.

24. Emelike claimed familiarity with constitutional matters due to over a decade of personal study.

25. Emelike asserted Plaintiff could not cover his VIN number, though acknowledging it might sometimes be "reasonable."

26. Emelike asked for Plaintiff's personal information for the first time, while Plaintiff was in handcuffs.

27. Plaintiff requested a sergeant for a fourth time; Emelike reiterated no higher authority was on duty.

28. Plaintiff asked if the body camera was active; Emelike confirmed and poked Plaintiff in the chest.

29. Emelike physically nudged Plaintiff to move, prompting Plaintiff to walk.

30. Emelike indicated he wanted Plaintiff's identification or license.

31. Plaintiff stated he would have provided it without coercion had he been given a chance.

32. Emelike accused Plaintiff of "playing a game."

33. Emelike said Plaintiff could leave quickly if he had a valid driver's license, insurance, and registration.

34. Emelike repeatedly pressed his finger into Plaintiff's chest.

35. Emelike asked whether Plaintiff was "driving or traveling."

36. Plaintiff answered he was traveling, not for hire.

37. Emelike continued pressing Plaintiff's chest, emphasizing compliance.

38. Emelike declared that if Plaintiff lacked a state driver's license, "he would not win."

39. Plaintiff stated he did not contract for a driver's license in Oregon.

40. Plaintiff withheld consent for any search.

41. Plaintiff asked, "What did I do wrong?" seeking clarity on alleged infractions.

42. Emelike stated "we've asked for your identification and you dont want to give it."

43. Emelike indicated Plaintiff was operating a motor vehicle with no valid registration, which he deemed impermissible.

44. Emelike called Portland registration fees "greedy" and said they offered "nothing" in return.

45. Plaintiff educated Emelike that registration is for commercial privileges, not necessary for private travel.

46. Plaintiff stated no driver's license is required when merely traveling.

47. Emelike disagreed, affirming a driver's license is mandated.

48. Officer Jundt interjected: "Take him to jail," signifying a threat to escalate.

49. Emelike again asked for Plaintiff's name.

50. Jundt stated "Driving is a privilege, not a right."

51. Plaintiff verbally acknowledged that statement, not contesting it.

52. Jundt indicated Plaintiff would remain in jail until fingerprint checks or warrants came back if he withheld identification.

53. Emelike described Plaintiff as "passive aggressive."

54. Plaintiff asked if he had been rude; Emelike did not retract the "passive aggressive" remark.

55. Plaintiff then provided his name and birth date under perceived threat of imprisonment.

56. Emelike stated publicly that Plaintiff was being "passive aggressive," which Plaintiff perceived as defamatory.

57. Emelike contacted dispatch to check Plaintiff's records using the name and DOB provided.

58. Plaintiff mentioned prior court dismissals affirming his right to travel.

59. Jundt reiterated that driving is a privilege, not a right.

60. Plaintiff indicated he was engaged in non-commercial travel.

61. Emelike considered refraining from renewing his own driver's license if Plaintiff's dismissals were valid.

62. Emelike expressed discontent with paying vehicle registration fees, seeing little benefit.

63. Emelike underscored that he personally disliked such fees.

64. Plaintiff requested to be released from the handcuffs; Emelike removed them.

65. Dispatch revealed no Oregon driver's license under Plaintiff's name.

66. Plaintiff stepped to his car to retrieve private identification and a binder of legal paperwork.

67. Emelike acknowledged placing Plaintiff's phone into his jacket pocket, halting any recording.

68. Plaintiff showed documents reflecting previous dismissals and references to Supreme Court commentary on travel.

69. Emelike acknowledged a distinction between traveling by right and operating commercially.

70. Emelike acknowledged that Plaintiff was not engaged in commerce at that time.

71. Plaintiff elaborated on use of public roads for non-commercial purposes; Emelike did not oppose.

72. Emelike noted that Plaintiff used Black's Law Dictionary definitions in his materials.

73. Plaintiff confirmed he was neither transporting goods nor passengers for hire; Emelike did not dispute it.

74. Plaintiff stated he was minding his own business, which Emelike confirmed he understood.

75. Plaintiff asserted the officer's duty was to protect; Emelike said he wished to inspire people who "look like me and you."

76. Emelike commented on differences among officers regarding personal backgrounds.

77. Emelike mentioned he liked First Amendment "audits"; Plaintiff clarified he was simply being private, not auditing.

78. Emelike stressed he would not label Plaintiff a "sovereign citizen," recalling a different situation where a person lost in court.

79. Plaintiff described legal principles of jurisdiction and consent; Emelike agreed that the state is a corporation and that he worked for it.

80. Emelike recognized he could not serve as a verified complainant for the public in that context.

81. Plaintiff said he switched plates only when performing commerce; Emelike did not challenge that statement.

82. Emelike requested the VIN, which Plaintiff provided, and Austin conveyed to dispatch.

83. Emelike stated he disliked being called "sir" or "officer," as it implied a hierarchy over Plaintiff.

84. Plaintiff reminded Emelike that the sovereign people created government; Emelike nodded and verbally agreed.

85. Plaintiff asked that Emelike calm Officer Jundt's hostile stance; Emelike did not overtly disagree.

86. Plaintiff inquired if he had been cordial overall; Emelike replied "Yeah."

87. Emelike decided not to issue any citations, clarifying it was not due to fear.

88. Plaintiff referenced constitutional freedoms and personal religious convictions.

89. Emelike noted that Plaintiff's registration was expired but did not write a ticket.

90. Officers ultimately departed, issuing no citation and lodging no charges, allowing Plaintiff to leave freely without further incident.

## V. CLAIMS FOR RELIEF

**COUNT I: UNLAWFUL SEIZURE AND FALSE ARREST**

(*Fourth Amendment, 42 U.S.C. §1983*)

1. Plaintiff re-alleges and incorporates by reference the facts stated in **Section IV**.

2.  Defendants, acting under color of state law, did knowingly and intentionally seize Plaintiff by forcibly handcuffing him and restricting his freedom of movement, despite lacking probable cause or legitimate legal justification for such a restraint.  This conduct violates Plaintiff's right under the Fourth Amendment to be free from unreasonable searches and seizures, as incorporated against the states through the Fourteenth Amendment.[5]

3.  By threatening Plaintiff with jail time solely for his refusal to produce identification absent any lawful basis, Defendants further effectuated an unlawful arrest.  This deprivation of liberty exceeded the bounds of a mere investigatory stop and rose to the level of a full custodial arrest without probable cause.[6]

4.  As a direct and proximate result of this unconstitutional seizure and false arrest, Plaintiff experienced physical restraint, emotional distress, and a significant interference with his liberty interests, thereby entitling him to compensatory and other appropriate relief under 42 U.S.C. §1983.

**COUNT II: EXCESSIVE FORCE**

(*Fourth Amendment, 42 U.S.C. §1983*)

5.  Plaintiff re-alleges and incorporates by reference the facts stated in **Section IV**.

6.  Defendants, while acting under color of state law, employed force against Plaintiff, including but not limited to handcuffing, repeated poking, and pulling, without lawful justification and in disregard of Plaintiff's lack of resistance or flight risk.  This use of force was objectively unreasonable, violating the Fourth Amendment's prohibition on excessive force.[7]

---

[5]See *Terry v. Ohio*, 392 U.S. 1 (1968); *Gerstein v. Pugh*, 420 U.S. 103 (1975).
[6]See *Dunaway v. New York*, 442 U.S. 200 (1979).
[7]See *Graham v. Connor*, 490 U.S. 386 (1989).

7. As a result of Defendants' unjustified and disproportionate application of force, Plaintiff suffered physical pain, discomfort, and mental anguish. Defendants' actions thus proximately caused Plaintiff's injuries, rendering them liable under 42 U.S.C. §1983.

## COUNT III: RETALIATION

(*First Amendment, 42 U.S.C. §1983*)

8. Plaintiff re-alleges and incorporates by reference the facts stated in **Section IV**.

9. Plaintiff engaged in constitutionally protected activities by (a) requesting a supervising officer, (b) asserting his right to remain silent, and (c) attempting to record the interaction with law enforcement. Each of these actions is encompassed by the free speech and petition rights guaranteed under the First Amendment.[8]

10. Defendants, acting under color of state law, retaliated against Plaintiff by detaining him, employing force, and threatening punitive measures. This retaliation was directly motivated by Plaintiff's exercise of his First Amendment rights, aiming to suppress or punish Plaintiff's protected expression and conduct.[9]

11. Such retaliatory actions chilled Plaintiff's willingness and ability to continue exercising his First Amendment freedoms, causing Plaintiff to suffer damages, including emotional distress and apprehension in future interactions with law enforcement.

## COUNT IV: VIOLATION OF DUE PROCESS AND EQUAL PROTECTION

(*Fourteenth Amendment, 42 U.S.C. §1983*)

12. Plaintiff re-alleges and incorporates by reference the facts stated in **Section IV**.

---

[8]See *City of Houston v. Hill*, 482 U.S. 451 (1987); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011).
[9]See *Hartman v. Moore*, 547 U.S. 250 (2006).

13.  Defendants deprived Plaintiff of his liberty without affording him procedural safeguards required by the Fourteenth Amendment, such as articulating a legitimate basis for his detention or respecting his repeated requests for a higher authority (i.e., a supervising officer).  Their failure to provide any lawful justification or hearing mechanism for the detention contravened the principles of procedural due process.[10]

14.  Defendants' disregard for Plaintiff's stated position and his disability-related needs, specifically the necessity to adjust his prosthetic limb, demonstrates deliberate indifference to Plaintiff's substantive due process rights.  This conduct effectively denied Plaintiff a reasonable accommodation and heightened the coercive nature of the detention.[11]

15.  By singling out Plaintiff for detention and failing to furnish a legal rationale, Defendants acted without a legitimate basis in law, thereby violating the Equal Protection Clause of the Fourteenth Amendment.  Such arbitrary and discriminatory treatment deprived Plaintiff of the equal protection guaranteed by the Constitution.

**COUNT V: KIDNAPPING/UNLAWFUL IMPRISONMENT UNDER 42 U.S.C. §1983**

(*Fourth Amendment and Fourteenth Amendment*)

16.  Plaintiff re-alleges and incorporates by reference the facts stated in **Section IV**.

17.  Defendants explicitly acknowledged, through verbal statements, that their actions, physically moving Plaintiff by force, threatening him with jailing if he did not comply, could be construed as "kidnapping."  Such an admission, coupled with the absence of probable cause, underscores that Defendants' actions exceeded mere investigatory detention and ventured into an unlawful seizure

---

[10]See *Mathews v. Eldridge*, 424 U.S. 319 (1976).
[11]See *City of Canton v. Harris*, 489 U.S. 378 (1989).

akin to unlawful imprisonment.[12]

18.  Plaintiff neither posed a threat nor resisted, and no probable cause supported any formal arrest or justification for the forced relocation and prolonged restraint.  These actions lacked any lawful basis and constituted a severe deprivation of liberty in violation of the Fourth Amendment's protection against unreasonable seizures and the Fourteenth Amendment's guarantee of due process.

## COUNT VI: MONELL CLAIM – UNCONSTITUTIONAL POLICY, PRACTICE, OR CUSTOM

(*42 U.S.C. §1983*)

19.  Plaintiff re-alleges and incorporates by reference the facts stated in **Section IV**.

20.  The City of Hood River, through its final policymakers, established or maintained policies, practices, or customs that failed to ensure constitutional policing.  This deliberate indifference manifested in inadequate training on lawful detentions, permissible scope of force, respect for First Amendment recording rights, and the proper handling of individuals with unique or disability-related circumstances.[13]

21.  These deficient policies, practices, or customs were the moving force behind Plaintiff's injuries, resulting in the unlawful seizure, excessive force, retaliatory conduct, and deprivation of fundamental liberties under the Constitution.  By failing to train or supervise its officers adequately, the City of Hood River bears direct liability under 42 U.S.C. §1983 for the constitutional violations inflicted upon Plaintiff.

---

[12]See *Dunaway v. New York*, 442 U.S. 200 (1979).
[13]See *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

# VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff **Cameron James Wilson**, in Propria Persona, respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, awarding the following relief:

A. **Compensatory Damages:** An award of compensatory damages in the amount of $60,000 (sixty thousand dollars), or such greater amount as the evidence may support, to fully compensate Plaintiff for the physical restraint, emotional distress, humiliation, interference with Plaintiff's travel, and other tangible and intangible harms proximately caused by Defendants' wrongful conduct.[14]

B. **Punitive Damages:** An award of punitive damages in the amount of $300,000 (three hundred thousand dollars) against the individual Defendants to punish and deter any willful, reckless, or malicious conduct that violated Plaintiff's clearly established constitutional rights.[15]

C. **Declaratory Relief:** A judicial declaration that Defendants' actions, including the unlawful detention, excessive force, and retaliatory conduct, violated Plaintiff's rights under the Fourth, First, and Fourteenth Amendments of the United States Constitution.[16]

D. **Injunctive Relief:**

   i. Requiring the City of Hood River to implement comprehensive and ongoing training programs addressing lawful detentions, permissible scope of force, First Amendment recording rights, and necessary accommodations for individuals with disabilities or

---

[14]See *Carey v. Piphus*, 435 U.S. 247 (1978) (outlining damages in civil rights cases).
[15]See *Smith v. Wade*, 461 U.S. 30 (1983) (describing standards for punitive damages in Section 1983 actions).
[16]See *28 U.S.C. §2201* (Declaratory Judgment Act).

unique circumstances.[17]

    ii. Mandating written protocols that forbid forcible relocation or detention absent a lawful basis, thereby ensuring officers properly respond to supervisory requests and safeguard individuals' constitutional rights at every stage of a law enforcement encounter.

E. **Pre- and Post-Judgment Interest:** As permitted by law, awarding interest on all monetary recoveries at the prevailing statutory rate to preserve the full economic value of Plaintiff's judgment.[18]

F. **Any Other Relief:** Such other and further relief as this Court deems just, proper, and equitable in the interests of justice, including but not limited to the issuance of additional directives or orders to ensure Defendants' compliance with the Constitution and deter future violations.

# VII. JURY DEMAND

Pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38, **Plaintiff demands a trial by jury** on all issues so triable.

**Respectfully submitted on this 3rd day of February, 2025.**

**/s/ Cameron James Wilson**
**Cameron James Wilson, In Propria Persona**
1312 South 44th Avenue
Yakima, WA 98908
Email: cam@tlatoani-machi.com
Telephone: (503) 496-9239

---

[17] See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (discussing municipal liability).
[18] See *28 U.S.C. §1961* (statutory interest on judgments).

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **AMENDED COMPLAINT** on:

**Keegan C. Murphy, OSB #194264**
**Kenneth S. Montoya, OSB #064467**
**Montoya Law**
350 Mission St. SE, Suite 202
Salem, OR 97302
Telephone: (503) 990-8436
Fax: (503) 878-8598
Emails: kenny@montoyalaw.org, keegan@montoyalaw.org
Attorneys for Defendants


by the following indicated method or methods:


☐ by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below;
☐ by emailing a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;
☐ by mailing a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to Plaintiff's last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below.


**DATED this 3rd day of Febuary, 2025.**


**/s/ Cameron James Wilson**
**Cameron James Wilson, In Propria Persona**
1312 South 44th Avenue
Yakima, WA 98908
Email: cam@tlatoani-machi.com
Telephone: (503) 496-9239