Kenneth S. Montoya, OSB #064467
*kenny@montoyalaw.org*
Keegan C. Murphy
*keegan@montoyalaw.org*
Montoya Law
350 Mission St. SE, Suite 202
Salem, OR 97302
  Telephone: (503) 990-8436
  Fax: (503) 878-8598
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CAMERON WILSON, | Case No. 3:24-cv-2033-JR |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CITY OF HOOD RIVER, a municipal corporation; OFFICER EMELIKE DELANCY, in his individual capacity; OFFICER AUSTIN GRIFFIN, in his individual capacity; OFFICER RYAN JUNDT, in his individual capacity, | |
| Defendants. | |

## LR 7-2 CERTIFICATION

Pursuant to LR 7-2, counsel for Defendants City of Hood River, Officer (now Sergeant) Emelike Delancy, Officer Austin Griffin, and Officer Ryan Jundt ("Defendants") hereby certifies that after conferring with Plaintiff Cameron Wilson ("Plaintiff") the parties were unable to resolve the issues presented in this motion without court assistance.

## MOTION

Defendants move this Court for an order pursuant to FRCP 56(a) granting summary judgment and dismissing the claims against them because their actions in detaining Plaintiff after he attempted to leave a traffic stop were lawful as a matter of law. This motion is supported by the following memorandum of law as well as the Declarations of Sergeant Emelike Delancy and Officer Austin Griffin as well as the exhibits attached thereto.

## I.  INTRODUCTION

On December 10, 2022, Plaintiff Cameron Wilson was stopped after police observed him driving a vehicle eastbound on Oak Street in Hood River without registration plates. While officers were speaking to the driver of another vehicle stopped at the same time, Plaintiff exited his vehicle and attempted to walk away from the scene of the traffic stop. When officers informed Plaintiff that he was being detained as part of a traffic stop and asked him to return to his vehicle, Plaintiff refused. As a result, Plaintiff was placed in handcuffs and walked back to his vehicle so that officers could proceed with checking his license and registration. After doing so, Plaintiff was released with a warning and without further incident. Based on this interaction, Plaintiff brings claims for unlawful arrest, excessive force, and "kidnapping" in violation of the Fourth Amendment, retaliation in violation of the First Amendment, violations of his due process and equal protection rights under the Fourteenth Amendment, and for the department having allegedly unconstitutional policies that permitted these violations under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d. 611 (1978).

As explained in further detail below, Plaintiff's claims all fail as a matter of law. Plaintiff's claims under the Fourth Amendment fail because the officers had lawful authority to detain Plaintiff and return him to his vehicle both as a function of the officers' authority to control a traffic stop and because they had probable cause to believe that Plaintiff violated ORS 819.430 by concealing the vehicle's VIN number. Plaintiff's First Amendment claim fails because there is absolutely no evidence that any part of Plaintiff's arrest was premised on any

sort of retaliatory motive for Plaintiff having exercised his free speech rights. Plaintiff's due process and equal protection claims fail because Plaintiff was provided all process lawfully due to him before his detention and because there was a rational basis for the officers' actions. Finally, Plaintiff's claims under *Monell* fail because there is no evidence that the department has an unconstitutionally deficient municipal training policy that amounts to deliberate indifference to Plaintiff's rights.  Accordingly, Defendants are entitled to summary judgment on the claims against them.

## II.  FACTUAL BACKGROUND

On December 10, 2022, Officers Emelike Delancy and Austin Griffin were out on patrol in Hood River when they observed a vehicle travelling eastbound on Oak Street without state-issued license plates, instead displaying a white placard reading "Private Automobile Not for Hire TRAVELER."  Delancy Decl. ¶ 4.  Because either a state-issued license plate or trip permit is required by ORS 803.540, the officers initiated a traffic stop of Plaintiff's vehicle, along with another vehicle driving next to Plaintiff that had been speeding.  Delancy Decl. ¶ 5.  Both vehicles parked in spaces along the north side of State Street.  Delancy Decl. ¶ 6.  While Officer Delancy contacted the driver of the speeding vehicle, he observed Plaintiff exit his vehicle and begin walking away down State Street.  Delancy Decl. ¶ 7.  Officer Griffin began walking after Plaintiff and told him to stop.  Griffin Decl. ¶ 9, 12.  Plaintiff stopped, turned, and began walking back toward Officer Griffin.  Griffin Decl. ¶ 13.

Officer Griffin explained to Plaintiff that they wanted to talk to Plaintiff about the lack of license plates on his vehicle.  Griffin Decl. ¶ 14.  Plaintiff advised that he wanted to talk to a sergeant, which Officer Griffin relayed to Officer Delancy.  Griffin Decl. ¶ 15.  After Officer Delancy responded that he would speak to Plaintiff back at his vehicle, Officer Griffin asked Plaintiff to return to the vehicle, but Plaintiff refused.  Griffin Decl. ¶ 16-17.  Officer Griffin relayed Plaintiff's refusal to Officer Delancy, who began walking toward Officer Griffin and Plaintiff once he had finished with the stop of the other driver.  Delancy Decl. ¶ 9, 11.  As

Officer Delancy was walking over and passed Plaintiff's vehicle, he observed a piece of paper that appeared to have been strategically placed to conceal the vehicle's VIN number. Delancy Decl. ¶ 12.

Upon reaching Officer Griffin and Plaintiff, Officer Delancy informed Plaintiff that he needed to return to his vehicle and advised that, if he did not do as instructed, he would be placed in handcuffs. Delancy Decl. ¶ 14, Ex. A at 0:08. Plaintiff ignored Officer Delancy's instruction and instead asked again for a sergeant, who Officer Delancy again told Plaintiff was unavailable. Delancy Decl. ¶ 16. Plaintiff asked each of the officers for their names and badge numbers, which they provided, and Plaintiff recorded on his cell phone. Delancy Decl. ¶ 18-19. Plaintiff then took two steps westward down the street away from his vehicle, at which point Officer Delancy and Officer Jundt—who had just pulled up and walked over to join the others—took Plaintiff's wrists and placed him in handcuffs. Delancy Decl. ¶ 20-22. During the handcuffing process Plaintiff was fully cooperative and no force was used against him beyond simply placing his hands into the handcuffs. Delancy Decl. ¶ 23. Further, Officer Delancy was careful when taking Plaintiff's phone during the handcuffing process to make sure that he did not stop the ongoing recording. Delancy Decl. ¶ 24. Officer Delancy placed the phone in Plaintiff's jacket pocket and specifically advised Plaintiff that he was not turning off the phone so that it could continue recording their encounter. Delancy Decl. ¶ 25.

Once Plaintiff was in handcuffs, the officers walked him back over to his vehicle. Delancy Decl. ¶ 26. There, Officer Delancy asked Plaintiff for his driver's license, but Plaintiff insisted that one was not necessary because he was not operating his vehicle in a commercial capacity. Delancy Decl. ¶ 27. Officer Jundt interjected that a driver's license is required by the State of Oregon and that, if Plaintiff refused to provide one, he would be taken to jail to have his fingerprints taken to confirm his identity. Delancy Decl. ¶ 28. After some back and forth, Plaintiff eventually identified himself. Delancy Decl. ¶ 29. After running Plaintiff through dispatch, the officers learned that Plaintiff did not have valid driving privileges, that his

registration had expired in 2021, and that Plaintiff's vehicle lacked valid liability insurance, which Plaintiff claimed not to need.  Delancy Decl. ¶ 30.  Several minutes into this process, Plaintiff requested to be let out of his handcuffs and Officer Delancy obliged.  Delancy Decl. ¶ 31.  In total, Plaintiff was in handcuffs for approximately seven minutes.  Delancy Decl. ¶ 32. Again, Officer Delancy advised Plaintiff that his cell phone was in his jacket pocket and that he could take it out to continue recording, but Plaintiff replied "nah, it's alright."  Delancy Decl. ¶ 33.  Ultimately, after obtaining the VIN number from Plaintiff and verifying that the vehicle had not been reported stolen, Officer Delancy decided to release Plaintiff with warnings as to all infractions.  Delancy Decl. ¶ 34.  The stop concluded with Officer Delancy and Plaintiff shaking hands and Plaintiff telling Officer Delancy that "I respect you."  Delancy Decl. ¶ 35.  Several weeks later Plaintiff contacted Officer Delancy to inquire if he had seen the body camera footage from the stop Plaintiff had posted online.  Delancy Decl. ¶ 36.  During their conversation, Plaintiff again thanked Officer Delancy for how he treated Plaintiff during the contact and advised that he had just had another encounter with a different law enforcement agency where he had been treated very differently.  Delancy Decl. ¶ 37.

### III.  LEGAL STANDARD

FRCP 56 permits a court to grant summary judgment when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  No genuine issue of material fact exists if the record, viewed in the light most favorable to the non-moving party, could not lead a rational trier of fact to find for the non-moving party.  *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008).  Notably, however, if the non-moving party's account of events is plainly contradicted by the evidence in the record, like a video, such that no rational juror could believe it, a court need not adopt that party's version of events for purposes of ruling on a motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d. 686 (2007).  Procedurally, if the party moving for summary judgment

would not bear the burden of persuasion on a given issue at trial, that party is responsible only for identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Olivier v. Baca*, 913 F.3d 852, 857 (9th Cir. 2019). The burden then shifts to the non-moving party to "present significant probative evidence tending to support its claim or defense" and create a genuine issue of material fact. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

## IV. ANALYSIS

In his Amended Complaint, Plaintiff makes a variety of claims under 42 U.S.C. § 1983 against the different officers involved in his detention. First, Plaintiff alleges, Defendants violated his rights under the Fourth Amendment by (1) arresting him without probable cause, (2) using excessive force against him by placing him in handcuffs and occasionally poking or pulling him, and (3) "kidnapping" him by moving him from the sidewalk to over by his vehicle. Am. Compl. at 11-15. Second, Plaintiff alleges that the officers violated his rights under the First Amendment by arresting him in retaliation for requesting a supervisor, exercising his right to remain silent, and attempting to record the interaction. Am. Compl. at 13. Third, Plaintiff alleges that the officers violated the Due Process and Equal Protection Clauses by arresting him without affording him adequate procedural safeguards, "singling him out" in doing so, and violating some unspecified substantive due process rights by allegedly refusing to allow Plaintiff to adjust his prosthetic limb. Am. Compl. at 13-14. Finally, Plaintiff alleges that the City of Hood River failed to train its officers on lawful detentions, use of force, First Amendment recording rights, or "handling" of individuals with disabilities in a way that amounted to deliberate indifference to his constitutional rights. Am. Compl. at 15. As explained in further detail below, Plaintiff's claims all fail as a matter of law.

### A. Fourth Amendment – Unlawful Arrest

Plaintiff's first claim is that Defendants violated the Fourth Amendment by unlawfully placing him under arrest without probable cause to believe that he committed a crime when they

placed him in handcuffs and when Officer Jundt warned Plaintiff that he would be taken to jail if

he did not produce identification.  Beginning with Plaintiff's handcuffing, his argument fails on

both fronts—that is, Plaintiff was neither placed under arrest when he was handcuffed nor did the

officers do so without probable cause to believe that Plaintiff had committed a crime.  Under

prevailing Ninth Circuit case law, "handcuffing as a means of detaining an individual does not

automatically escalate a stop into an arrest." *Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir.

2020).  Rather, "[t]o determine whether a *Terry* stop has escalated into a full-blow arrest, [courts]

evaluate the severity of the intrusion, the aggressiveness of the officer's actions, and the

reasonableness of the officer's methods under the circumstances." *Hernandez v. Skinner*, 969

F.3d 930, 940 (9th Cir 2020).  The Ninth Circuit has recognized that these factors permit use of

handcuffs during a *Terry* stop in several circumstances, including "where the suspect is

uncooperative." *United States v. In*, 124 F.4th 790, 795 (9th Cir. 2024).

Here, that is exactly what happened.  Plaintiff was validly stopped for failing to display a

license plate as required by ORS 803.540.  During a traffic stop, part of an officer's "mission" is

"checking the driver's license, determining whether there are outstanding warrants against the

driver, and inspecting the automobile's registration and proof of insurance." *United States v.

Nault*, 41 F.4th 1073, 1078 (9th Cir. 2022).  In support of that mission, Officers Griffin and

Delancy each asked Plaintiff to return to his vehicle after he had been stopped to retrieve the

required documentation.  Griffin Decl. ¶ 16; Delancy Decl. ¶ 15.  Under Ninth Circuit precedent

the officers' order was lawful, as officers have broad authority to "control all movements in a

traffic encounter" as necessary to "reasonably control the situation." *United States v. Williams*,

419 F.3d 1029, 1032-34 (9th Cir. 2005).  This authority specifically includes ordering a suspect

who has exited a vehicle during a stop to return to it. *Id.* at 1034 ("We hold that under the Fourth

Amendment it is reasonable for an officer to order a passenger back into an automobile that he

voluntarily exited because . . . the need for officers to exercise control over individuals

encountered during a traffic stop[ ] outweigh[s] the marginal intrusion on the passenger's liberty

Page 7 –    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

interest.") (Emphasis added).  However, Plaintiff did not cooperate with the officers' request and twice refused to return to his vehicle.  Griffin Decl. ¶ 16; Delancy Decl. ¶ 16.

Under the circumstances, the factors evaluated in determining whether a stop has escalated into an arrest—severity of intrusion, aggressiveness of the officers' actions, and reasonableness of the officers' methods under the circumstances—favor Defendants.  Although handcuffing significantly intrudes on a person's liberties, the officers' actions were not aggressive and were reasonable under the circumstances.  During Plaintiff's initial encounter with the officers before Plaintiff was placed in handcuffs, the conversation was calm and polite.  When Officer Griffin first contacted Plaintiff, he did not raise his voice or threaten Plaintiff with force if he did not comply with his command to return to the vehicle; Officer Griffin simply asked Plaintiff to return to the vehicle and Plaintiff replied that "I'll stand where I stand."  Griffin Decl. ¶ 16.  Once Officer Delancy came over, he again told Plaintiff to move back to the car and warned him that he would be detained in handcuffs if he failed to do so.  Delancy Decl. ¶ 15, Ex. A at 0:08.  Again, Plaintiff refused, so the officers took Plaintiff's arms and placed him in handcuffs.  Delancy Decl. ¶ 22.  During the handcuffing process, Plaintiff did not resist the officers and the officers did not use any sort of force against him to compel him to submit beyond simply placing the handcuffs on Plaintiff's wrists.  Griffin Decl. ¶ 23.  Under the circumstances, where Plaintiff refused to comply with the officers' valid request to return to his vehicle, detaining Plaintiff in handcuffs to walk back over to the vehicle was reasonable and the least intrusive means available to the officers to complete their lawful mission of checking the vehicle's documentation and completing the traffic stop.

Additionally, even if the stop did escalate to an arrest when Plaintiff was placed in handcuffs, he is also incorrect that the officers lacked probable cause to do so.  For purposes of the Fourth Amendment, "probable cause" means that there must be a "'fair probability' that a crime was committed."  *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994).  This determination poses a "commonsense, practical question" and does not require "certainty or even

Page 8 –    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir.

2006).   Here, as Officer Delancy walked over to Plaintiff and Officer Griffin, he passed

Plaintiff's vehicle and noticed that Plaintiff appeared to have strategically placed papers to cover

the vehicle's VIN number.  Under ORS 819.430, it is a class A misdemeanor in the State of

Oregon for a person to "[have] in the person's possession any vehicle . . . from which the vehicle

identification number has been . . . covered . . . for the purpose of concealing . . .the identity of

the vehicle."  Given the apparent placement of the papers to cover the VIN number, the fact that

Plaintiff had removed the vehicle's other identification in the license plates, the fact Plaintiff had

immediately attempted to walk away from the traffic stop, and the fact that he was now refusing

to return to his vehicle to continue the traffic stop—where the vehicle registration would be

checked—Officer Delancy reasonably believed that Plaintiff had covered the VIN number for

the purpose of concealing the vehicle's identity.  Delancy Decl. ¶ 17.  That belief amounted to

probable cause that Plaintiff had violated ORS 819.430 and permitted Officer Delancy to arrest

Plaintiff.

In the alternative, Plaintiff's complaint alleges that if he was not arrested when he was

placed in handcuffs, he was arrested when Officer Jundt informed him that he would be taken to

jail to be fingerprinted and identified if he refused to provide identification.  Regardless of

whether Officer Jundt's comments effected an arrest of Plaintiff, any arrest was well-justified by

probable cause.  In addition to the violation of ORS 819.430 by covering the vehicle's VIN

number discussed above, at that point in the encounter Plaintiff's refusal to present a driver's

license when requested by the officers also gave probable cause to arrest him.  Under ORS

807.570, a person commits a class C misdemeanor by failing to carry and present a driver's

license to a police officer after being lawfully stopped while driving a vehicle.  Here, the officers

observed Plaintiff driving a vehicle and lawfully stopped him because his vehicle did not have

license plates as required by ORS 803.540.  Despite their request for Plaintiff to provide a

driver's license and registration, Plaintiff refused to provide one because he believed it

Page 9 –    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

unnecessary to drive on public roads.  Delancy Decl. ¶ 27.  That gave the officers probable cause

to arrest Plaintiff as required by the Fourth Amendment.

Finally, even if there were a triable issue of fact regarding whether Plaintiff was arrested

unlawfully without probable cause, Officer Griffin is still entitled to summary judgment on these

claims as they relate to him, as he played no part in the events alleged as the basis for these

claims.  That is to say, Officer Griffin was not directly involved in handcuffing Plaintiff and did

not make any comments about taking Plaintiff to jail.  When Plaintiff was handcuffed, it was

Officers Delancy and Jundt who put the handcuffs on him.   Griffin Decl. ¶ 24.   Moreover, it

was Officer Jundt who commented that if Plaintiff refused to identify himself then he would be

taken to jail to be fingerprinted.  Griffin Decl. ¶ 29.  Because liability under § 1983 requires

personal participation from the named defendant, Officer Griffin is entitled to summary

judgment on these claims.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a

person acting under color of state law to be liable under section 1983 there must be a showing of

personal participation in the alleged rights deprivation.").

B.  *Fourth Amendment – Excessive Force*

In addition to his claim that the officers violated the Fourth Amendment by placing him

under arrest, Plaintiff also contends that the officers violated his Fourth Amendment rights by

using excessive force.  Specifically, Plaintiff alleges that the act of handcuffing itself constituted

excessive force under the circumstances as well as the officers poking and pulling him during the

encounter.  Whether force is excessive under the Fourth Amendment turns on whether or not it

was reasonable.  *Birchfield v. North Dakota*, 579 U. S. 438, 477, 136 S. Ct. 2160, 195 L. Ed. 2d

560, 589 (2016) ("[R]easonableness is always the touchstone of Fourth Amendment analysis.").

The reasonableness of the use of force is evaluated under an "objective" inquiry that pays

"careful attention to the facts and circumstances of each particular case."  *Graham v. Connor*,

490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).  "[R]easonableness is generally

assessed by carefully weighing the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Cty. of L.A. v. Mendez*, 581 U.S. 420, 427, 137 S. Ct. 1539, 198 L.Ed.2d 52 (2017) (internal quotation marks omitted).

Here, the force Plaintiff alleges was used against him was nothing more than the *de minimis* amount necessarily involved in arresting a suspect and taking him into custody. *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) (characterizing force involved in normal handcuffing procedure as "minimal"). Because, as previously explained, the officers both had authority to handcuff Plaintiff as a function of the investigatory detention to complete the mission of the traffic stop and had probable cause to arrest Plaintiff, it is reasonable for them to use the minimal degree of force necessary to accomplish those objectives. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d. 443 (1989) ("The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Accordingly, Plaintiff's claim for excessive force also fails as a matter of law.

Furthermore, as with Plaintiff's unlawful arrest claim, Plaintiff's excessive force claim against Officer Griffin in particular fails because he did not use any force against Plaintiff during the encounter. Officer Griffin was not involved in handcuffing Plaintiff and, indeed, never touched Plaintiff at any point. Griffin Decl. ¶ 26. Plaintiff is therefore unable to show the requisite personal participation to maintain a claim under § 1983 against him.

C. *Fourth Amendment – "Kidnapping"*

In his final claim under the Fourth Amendment, Plaintiff alleges that he was "kidnapped" when the officers walked him from where he was detained back down the block to his vehicle where he parked it. Defendants interpret this as a claim that Plaintiff was unlawfully seized when the officers moved Plaintiff, in violation of the Fourth Amendment. This claim fails because, as explained in the section regarding unlawful arrest above, it is settled law in the Ninth Circuit that if an individual detained as part of a traffic stop exits his or her vehicle, officers may

Page 11 –  **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

lawfully exercise control over that individual's movements and order a return to the vehicle. *Williams*, 419 F.3d at 1034 ("We hold that under the Fourth Amendment it is reasonable for an officer to order a passenger back into an automobile that he voluntarily exited because the concerns for officer safety originally announced in *Wilson*, and specifically the need for officers to exercise control over individuals encountered during a traffic stop, outweigh the marginal intrusion on the passenger's liberty interest."). Accordingly, this claim must be dismissed.

### D. First Amendment – Retaliation

Plaintiff next claims that he was arrested in retaliation for his request for a supervisor, invocation of his right to remain silent, and attempt to record the encounter with police, all in violation of the First Amendment. To prevail on a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016). Here, Plaintiff is unable to present any evidence indicating that his handcuffing had any relationship to the protected activities he claims. The mere fact that Plaintiff was handcuffed during the same conversation in which he invoked his right to remain silent, asked to speak to a supervisor, and attempted to record the conversation does not itself imply that the handcuffing was a direct response to any of those activities. On the contrary, in the case of Plaintiff's recording of the encounter, the body worn camera footage reflects that Officer Delancy went above and beyond to ensure that he *did not* interfere with Plaintiff's First Amendment rights. When handcuffing Plaintiff, although Officer Delancy took Plaintiff's cell phone, he specifically told Plaintiff that he was putting the phone in Plaintiff's jacket pocket and leaving it running so that it could continue to record their interaction. Delancy Decl. ¶ 25. Then, when Plaintiff was later released from handcuffs, Officer Delancy again reminded Plaintiff about the cell phone and that he could

continue to record the encounter if he wanted, but Plaintiff declined.  Delancy Decl. ¶ 33.

Accordingly, this claim must be dismissed.

    *E. Fourteenth Amendment – Due Process and Equal Protection*

    Plaintiff next makes three claims under the Fourteenth Amendment.  First, Plaintiff

claims that he was arrested without first affording him procedural safeguards required by the Due

Process Clause, namely "articulating a legitimate basis for his detention" and giving him an

opportunity to speak with a supervising officer.  Second, Plaintiff claims that he was "singled

out" for detention, in violation of the Equal Protection Clause.  Finally third, Plaintiff claims that

he was denied an opportunity to adjust his prosthetic limb during the encounter—which he

characterizes as a "reasonable accommodation"—in violation of his substantive due process

rights.

    Beginning with Plaintiff's procedural due process claim, there is no authority supporting

Plaintiff's position that officers are constitutionally required to articulate a basis for an arrest or

detention.  On the contrary, the United States Supreme Court has explicitly disclaimed any such

requirement: "While it is assuredly good police practice to inform a person of the reason for his

arrest at the time he is taken into custody, we have never held that to be constitutionally

required." *Devenpeck v. Alford*, 543 U.S. 146, 155, 125 S. Ct. 588, 160 L. Ed. 2d. 537 (2004);

*United States v. Magallon-Lopez*, 817 F.3d 671 (9th Cir. 2016) (citing and applying rule from

*Devenpeck*).  Similarly, Defendants are aware of no legal authority requiring that Plaintiff be

given an opportunity to speak with a supervising officer before he can be detained or arrested

and Plaintiff is unable to provide any.

    Turning then to Plaintiff's equal protection claim, the only contention Plaintiff makes is

that he was somehow "singled out" for detention or arrest when he was placed in handcuffs.  To

prevail on an equal protection claim that the plaintiff was singled out for differential treatment—

a so-called "class-of-one" claim—the plaintiff must show that he or she has been "[1]

intentionally [2] treated differently from others similarly situated and that [3] there is no rational

basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam). In proving the second element, a plaintiff is required to show that he or she was treated different from a comparator who was similarly situated "in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022). This standard is strict and requires proof of "an extremely high degree of similarity between [the plaintiff] and the persons to whom they compare themselves." *Id.*; *Ashford v. City of Brownsville*, No. 23-2804, 2024 U.S. App. LEXIS 30877, at *3 (9th Cir. Dec. 6, 2024) (noting that the comparator similarity requirement is "strict"). Here, Plaintiff is unable to identify any other similarly situated comparators. Plaintiff was alone at the time of the stop and was the only one who attempted to get out of his vehicle and leave the scene. Accordingly, Plaintiff's claim fails as a matter of law.

Finally, as to Plaintiff's substantive due process claim for failing to provide him an opportunity to adjust his prosthetic limb, Plaintiff's claim fails for several reasons. As a preliminary matter, it is not immediately clear what substantive due process right Plaintiff claims that the officers violated in this case. Although Plaintiff's Amended Complaint suggests that he was denied a "reasonable accommodation," that phrase originates from the Americans with Disabilities Act ("ADA")—it does not refer to any substantive due process right and Plaintiff's Amended Complaint does not make any claims under the ADA. Instead, in the paragraph of Plaintiff's Amended Complaint where he asserts this claim, Plaintiff includes a footnote citing to *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d. 412 (1989), as the apparent basis for the claim. In *Harris*, the plaintiff brought an action for violation of her substantive due process right to receive adequate medical care while in police custody after she repeatedly collapsed and made incoherent remarks following her arrest. *Id.* at 831. Accordingly, Defendants understand Plaintiff to be claiming that their alleged failure to allow him to adjust his prosthetic limb violated his substantive due process right to adequate medical care while in police custody.

So understood, Plaintiff's claim fails as a matter of law.  For a pre-trial detainee to prevail on a claim of inadequate medical care, he or she must show that,

(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(ii) those conditions put the plaintiff at substantial risk of suffering serious harm;

(iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  Here, Plaintiff is unable to establish any of these elements.  There is no evidence that any of the Defendants intentionally decided to prevent Plaintiff from adjusting his prosthetic limb.  The entire interaction was recorded via the officers' body worn cameras and at no point did Plaintiff so much as mention a prosthetic, particularly during the seven minutes when he was restrained in handcuffs. Additionally, even if Plaintiff had mentioned a need to adjust a prosthetic, there is no evidence that his inability to adjust it while handcuffed put him at substantial risk of serious harm.  In the context of a due process claim for medical treatment, a person is at substantial risk of serious harm only if he or she has a "serious medical need," meaning a condition that left untreated "could result in further significant injury or the unnecessary and wanton infliction of pain." *Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022).  There is no evidence that Plaintiff's need to adjust his prosthetic here threatened him with any sort of significant injury or unnecessary and wanton pain.  Accordingly, Defendants are entitled to summary judgment on this claim as a matter of law.

### F.  Monell Claim

Lastly, Plaintiff brings a *Monell* claim, alleging that the City of Hood River failed to adequately train its officers on the lawful scope of their authority to carry out detentions, their authority to use force, suspects' rights to record encounters with police, and the "proper handing

of individuals with unique or disability-related circumstances." To establish liability under

*Monell* for failure to train, a plaintiff must show "(1) . . . a constitutional violation; (2) . . . a

municipal training policy that amounts to a deliberate indifference to constitutional rights; and

(3) that the constitutional injury would not have resulted if the municipality properly trained their

employees." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021). Notably,

"[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim

turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed.

2d 417 (2011) (citation omitted). Here, there is no evidence whatsoever of a deficient municipal

training policy, much less that any gaps in training would have amounted to "deliberate

indifference." To demonstrate deliberate indifference, "[a] pattern of similar constitutional

violations by untrained employees is ordinarily necessary." *Flores v. Cty. of L.A.*, 758 F.3d

1154, 1159 (9th Cir. 2014). Even assuming that the officers had violated Plaintiff's

constitutional rights here, he is unable to show evidence of a pattern of any similar such

incidents. Accordingly, Defendants are entitled to summary judgment on Plaintiff's *Monell*

claim.

### G. *Qualified Immunity*

In addition to summary judgment on the merits, Defendants are also entitled to summary

judgment on the basis of qualified immunity. Under the doctrine of qualified immunity,

"government officials who violate another's rights are immune from liability under § 1983

unless the unlawfulness of their conduct was 'clearly established at the time.'" *District of*

*Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (quoting

*Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)). "A clearly

established right is one that is 'sufficiently clear that every reasonable official would have

understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.

Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting *Reichle*, 566 U.S. at 664). For a

constitutional right to be deemed clearly established, "existing precedent must have placed the

statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (citations omitted). "That demanding standard reflects the long-standing principle that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Est. of Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1221 (9th Cir. 2024) (internal quotation marks omitted).

Whether or not a right is "clearly established" is a matter of law to be decided by a judge. *Morales v. Fry*, 873 F.3d 817, 824–25 (9th Cir. 2017). "In determining whether this standard is met, the [c]ourt considers whether there are cases of controlling authority in the plaintiff['s] jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [their] actions were lawful." *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (internal quotation marks omitted). "The plaintiff bears the burden of showing that the rights allegedly violated were clearly established." *Gordon v. Cty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021).

Here, Plaintiff is unable to make the required showing. Accordingly, the individual Defendants are also entitled to summary judgment on the basis of qualified immunity.

## CONCLUSION

In sum, Defendants' actions in handcuffing Plaintiff during the traffic stop and moving him were justified as a function of both probable cause and the officers' authority to control Plaintiff's movements while he was lawfully seized during a traffic stop and refused to return to his vehicle. Further, there is no evidence that any of Defendants' actions were taken in retaliation for Plaintiff's conduct, that Plaintiff was singled out for selective treatment, or that any of the alleged conduct was the result of an unconstitutionally deficient municipal training policy. Finally, in any event, Defendants are entitled to qualified immunity because Plaintiff is unable to show that it was clearly established that any of Defendants' actions violated his clearly

established rights.  Accordingly, Defendants respectfully request that this Court grant their

motion and dismiss the claims against them.


       DATED this 6th Day of August, 2025.


                                         _____

                                         Keegan C. Murphy, OSB #194264
                                         Kenneth S. Montoya, OSB #064467
                                         Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** on:

> Cameron Wilson
> 1312 South 44th Avenue
> Yakima, Washington 98908
>      Pro Se

by the following indicated method or methods:

☒      by **electronic means through the Court's Case Management/Electronic Case File system** on the date set forth below;

by **emailing** a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;

by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to plaintiff's last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below.

   DATED this 6th Day of August, 2025.

Keegan C. Murphy, OSB #194264
Kenneth S. Montoya, OSB #064467
Attorneys for Defendants

CERTIFICATE OF SERVICE