# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**CAMERON JAMES WILSON,**

Plaintiff,

*v.*

**CITY OF HOOD RIVER, a municipal corporation; OFFICER EMELIKE DELANCY, in his individual capacity; OFFICER AUSTIN GRIFFIN, in his individual capacity; OFFICER RYAN JUNDT, in his individual capacity,**

Defendants.

**Case No.:** 3:24-cv-2033-JR

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR TRIAL**

Cameron James Wilson

Pro Se Plaintiff

1312 South 44th Avenue

Yakima, Washington 98908

503-496-9239

cam@piitp.com

## INTRODUCTION

### I. Philosophical Foundation and Creator-Endowed Rights Framework

This Response to Defendants' Motion for Summary Judgment is grounded in the fundamental principle that the Creator-endowed rights of sovereign individuals transcend governmental authority and predate constitutional recognition. The constitutional violations perpetrated against Plaintiff Cameron James Wilson on December 10, 2022, represent not merely technical infractions of positive law, but profound violations of natural rights that exist independent of and prior to governmental acknowledgment.[1]

The Constitution of the United States does not create fundamental rights; rather, it recognizes and protects pre-existing natural rights inherent in the dignity and sovereignty of every individual.[2] The procedural remedies sought herein are not mere requests for discretionary judicial relief, but assertions of sovereign rights against governmental overreach that violates the fundamental compact between the governed and those who derive their limited authority from the consent of the governed.

### II. Procedural Posture and Strategic Framework

Defendants' Motion for Summary Judgment must be denied because it relies entirely upon systematic perjury, creates genuine issues of material fact requiring jury determination, and fundamentally mischaracterizes both the factual record and the applicable legal standards. The depositions of the individual defendants reveal devastating admissions that directly contradict their sworn declarations and establish clear constitutional violations that no reasonable officer could have believed were lawful.

The standard for summary judgment requires that there be no genuine issue of material fact and that the moving party be entitled to judgment as a matter of law.[3] When viewing the evidence in the light most favorable to the non-moving party, as is required,[4] the record establishes multiple constitutional violations that were clearly established at the time of the incident and that no reasonable officer could have believed were lawful.

---

[1] See Declaration of Independence (1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights").

[2] See Calder v. Bull, 3 U.S. (3 Dall.) 386, 388 (1798) (Chase, J.) ("An act of the Legislature (for I cannot call it a law) contrary to the great first principles of the social compact, cannot be considered a rightful exercise of legislative authority").

[3] Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Constitutional Framework and Clearly Established Law

The constitutional violations in this case implicate multiple clearly established rights that have been recognized by the Supreme Court and circuit courts for decades:

**First Amendment Retaliation:** The Supreme Court in Nieves v. Bartlett established that the presence of probable cause generally defeats a First Amendment retaliatory arrest claim, but recognized an important exception where a plaintiff can demonstrate they were treated differently than similarly situated individuals who did not engage in protected speech.[5] The right to request badge numbers from police officers is clearly established First Amendment activity,[6] and retaliation for exercising this right violates clearly established constitutional law.[7]

**Fourth Amendment Excessive Force:** The Supreme Court in Graham v. Connor established that all excessive force claims must be analyzed under the Fourth Amendment's objective reasonableness standard, considering the totality of circumstances from the perspective of a reasonable officer on the scene.[8] The Graham factors include: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether the force was applied in good faith or maliciously and sadistically for the purpose of causing harm.[9]

**Fourth Amendment Unreasonable Seizure:** Under Terry v. Ohio, an investigative detention requires reasonable suspicion that the individual has committed, is committing, or is about to commit a crime.[10] A traffic violation alone, without more, does not provide reasonable suspicion of criminal activity sufficient to justify handcuffing and detention.[11]

**Qualified Immunity Standard:** Under Harlow v. Fitzgerald, government officials are entitled to qualified immunity only if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[12] The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.[13]

---

[5]Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019).

[6]Glik v. Cunniffe, 655 F.3d 78, 85 (1st Cir. 2011) ("The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within these principles [of First Amendment protection]").

[7]Turner v. Driver, 848 F.3d 678, 688 (5th Cir. 2017) ("the right to record police officers as they perform their official duties is clearly established").

[8]Graham v. Connor, 490 U.S. 386, 396-97 (1989).

[9]Id. at 396.

[10]Terry v. Ohio, 392 U.S. 1, 21 (1968).

[11]See United States v. Hensley, 469 U.S. 221, 229 (1985).

[12]Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[13]Anderson v. Creighton, 483 U.S. 635, 640 (1987).

## IV. Municipal Liability Under Monell

The City of Hood River faces municipal liability under Monell v. Department of Social Services because the constitutional violations resulted from official policy, custom, or practice of the municipality.[14] The systematic nature of the constitutional violations, the lack of proper training regarding citizens' constitutional rights, and the institutional cover-up following the incident establish municipal liability that must be determined by a jury.[15]

# FACTUAL BACKGROUND

## I. The December 10, 2022 Constitutional Violations

On December 10, 2022, Plaintiff Cameron James Wilson was walking on a public sidewalk when he was approached by Defendants Delancy, Griffin, and Jundt. The undisputed facts, as established through the defendants' own deposition testimony, demonstrate a systematic pattern of constitutional violations that began with the initial contact and escalated through retaliatory arrest and excessive force.

**Initial Contact and Lack of Criminal Suspicion:** Officer Griffin, under oath, admitted that he possessed no reasonable suspicion that Wilson had committed, was committing, or was about to commit any crime.[16] Griffin further testified that the only basis for contact was "a violation of a traffic statute," explicitly distinguishing this from criminal activity.[17]

Critically, Griffin admitted that this was not a traffic stop, but merely "making contact" with Wilson, who was walking on a sidewalk after his vehicle was already parked.[18]

**Exercise of Constitutional Rights:** Wilson exercised his clearly established First Amendment right to request the badge numbers of the officers present.[19] Wilson also exercised his Fifth Amendment right to remain silent, which Griffin explicitly acknowledged as a constitutional right.[20]

---

[14] Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).

[15] Canton v. Harris, 489 U.S. 378, 388 (1989) (municipal liability may be established through deliberate indifference to constitutional rights).

[16] Griffin Depo. at 18:5-6 ("Beyond what I've already stated, no. No crime past that point").

[17] Griffin Depo. at 17:13-15 ("the only thing I have for you is that I was making contact with you due to the violation of a traffic statute").

[18] Griffin Depo. at 24:13-15 (confirming they "made contact" rather than conducted traffic stop); Griffin Depo. at 25:21-22 (admitting Wilson's car was "parked" and they did not "pull over" Wilson's car).

[19] Griffin Depo. at 20:22-24 (Griffin confirms Wilson requested badge numbers and "it was provided").

[20] Griffin Depo. at 18:15-16 (Griffin advised Wilson "he absolutely had the right to" remain silent); Griffin Depo. at 18:19 (Griffin confirms he was acknowledging Wilson's Fifth Amendment right).

**Cooperative Behavior and Lack of Threat:** The defendants' own testimony establishes that Wilson posed no threat and exhibited no dangerous or threatening behavior. Griffin testified that he "did not observe dangerous actions" by Wilson.[21] Griffin further confirmed that Wilson was not "belligerent, yelling, screaming,"[22] did not attempt to flee,[23] and did not physically resist when detained.[24]

## II. Retaliatory Arrest and Excessive Force

**Temporal Proximity Establishing Retaliation:** The timing of Wilson's detention is crucial to establishing First Amendment retaliation. Griffin testified that Wilson was placed in handcuffs "during that time or shortly thereafter" his request for badge numbers.[25] This temporal proximity, combined with the lack of any criminal suspicion or threatening behavior, establishes the retaliatory nature of the arrest.

**Excessive Force Through Handcuffing:** The handcuffing of Wilson constituted excessive force under the Graham v. Connor analysis. Applying the Graham factors: (1) there was no need for the application of force, as Wilson was cooperative and posed no threat; (2) the relationship between any perceived need and the force used was disproportionate; (3) Wilson suffered physical restraint and constitutional injury; and (4) the force was applied in retaliation for exercising constitutional rights, not in good faith law enforcement.

**Training Officer Status and Institutional Failure:** Griffin's testimony reveals that he was a training officer who was "early in my career" and "still learning,"[26] was "in training,"[27] and was essentially "just following orders" from Delancy.[28] This establishes not only individual liability but also municipal liability for failure to properly train officers regarding constitutional rights.

## III. Systematic Perjury in Defendants' Declarations Contradicted by Devastating Deposition Admissions

The defendants' sworn declarations filed in support of their motion for summary judgment contain material misrepresentations that are directly contradicted by their own deposition testimony. This systematic perjury creates genuine issues of material fact that preclude summary judgment and warrant criminal referral for

---

[21]Griffin Depo. at 19:22.
[22]Griffin Depo. at 19:25.
[23]Griffin Depo. at 20:2.
[24]Griffin Depo. at 22:23 ("No, not that I can recall" when asked if Wilson physically resisted).
[25]Griffin Depo. at 21:2-3.
[26]Griffin Depo. at 22:1-3.
[27]Griffin Depo. at 22:14.
[28]Griffin Depo. at 22:11-13.

perjury prosecution.

**Officer Delancy's Devastating Admissions of Constitutional Violations:** Officer Delancy's deposition contains the most damaging admissions, including his explicit acknowledgment that he was wrong to arrest Wilson for "obstruction of justice." When confronted with the Oregon Revised Statute on obstruction, Delancy admitted: "me telling Mr. Wilson it was for obstruction itself was incorrect. That was incorrect."[29] He further acknowledged: "I cannot arrest you for obstruction. Someone cannot be arrest for interfering with a police, or parole or probation officer. That, I cannot arrest you for. So again, that is on me."[30] Most devastatingly, Delancy explicitly stated: "Mr. Wilson did not commit obstruction of justice during a street encounter."[31]

**Acknowledgment of Wilson's Constitutional Rights:** Delancy admitted under oath that Wilson was exercising fundamental constitutional rights, including the right to travel. He testified: "I know the right to travel is part of the constitution and part of our right, yes."[32] He further acknowledged: "We all have a right to travel. It's just how we travel that's the issue."[33]

**Admission of Wilson's Cooperative Behavior:** Delancy's testimony completely contradicts any justification for the use of force. When asked if Wilson was resisting during the handcuffing, Delancy testified: "No. No, not at all. No."[34] When asked if Wilson was cooperative during the handcuffing process, Delancy responded: "Yes, he were. Absolutely. Absolutely."[35] Most significantly, Delancy acknowledged: "Yes. Yes. Yes. You were a gentleman at that point, absolutely."[36] So the plaintiff asks, why was he placed in handcuffs?

**Temporal Proximity Establishing Retaliation:** Delancy admitted that the detention occurred immediately after Wilson's request for badge numbers. When asked about the time elapsed between Wilson's badge number request and the decision to handcuff him, Delancy testified: "I say about 15 seconds, maybe. 20, maybe."[37] When asked if he would agree it was "pretty immediate," Delancy confirmed: "Yeah. Fifteen to – 15 to 20. Yes, sir."[38]

**No Criminal Charges Filed Despite Alleged Justifications:** Despite all the alleged justifications in their declarations, Delancy admitted that Wilson was never charged with any crime. When asked directly, "Did

---

[29]Delancy Depo. at 61:21-23.
[30]Delancy Depo. at 62:2-4.
[31]Delancy Depo. at 64:2-3.
[32]Delancy Depo. at 143:6-7.
[33]Delancy Depo. at 145:17-18.
[34]Delancy Depo. at 64:5.
[35]Delancy Depo. at 64:7.
[36]Delancy Depo. at 64:9-10.
[37]Delancy Depo. at 63:12.
[38]Delancy Depo. at 63:14.

you charge Mr. Wilson with obstruction of justice?" Delancy responded: "I didn't charge Mr. Wilson with anything, no, sir."[39] He further testified that he was not going to issue any citations.[40]

**Unlawful Confiscation of Recording Device:** The defendants' confiscation of Wilson's cellular telephone during the encounter constituted an unlawful seizure designed to prevent documentation of their constitutional violations. This confiscation terminated Wilson's ability to record the encounter, demonstrating the defendants' consciousness of guilt and intent to conceal their unlawful conduct. The timing of the confiscation, immediately following Wilson's exercise of his First Amendment right to record the police encounter, establishes additional evidence of retaliatory intent and creates adverse inferences regarding the defendants' awareness that their conduct violated clearly established constitutional law.

## IV. Systematic Contradictions Between Declarations and Deposition Testimony Create Credibility Issues for Jury Determination

The defendants' sworn declarations contain material misrepresentations that are directly contradicted by their own deposition testimony under oath. These systematic contradictions create genuine issues of material fact regarding credibility that must be resolved by a jury, not by summary judgment.

Griffin's declaration attempts to justify the detention and use of force, but his deposition reveals he was merely a training officer "early in my career" who was "still learning" and essentially "following orders."[41] This admission undermines any claim of independent professional judgment and creates a factual dispute about his qualifications to assess the situation.

More significantly, Griffin's deposition admissions directly contradict the justifications presented in his declaration. He admitted that Wilson posed no threat, exhibited no dangerous behavior, was not belligerent, did not attempt to flee, and did not physically resist.[42] These material admissions are conspicuously absent from his declaration, creating genuine issues about the truthfulness of his sworn statements.

Similarly, Jundt's deposition contains admissions that contradict his declaration, including that he observed no criminal activity, that Wilson was not threatening, and that he possessed no articulable facts supporting detention.[43]

---

[39] Delancy Depo. at 63:19.
[40] Delancy Depo. at 155:8 ("I'm not going to issue a citation for anything").
[41] Griffin Depo. at 22:1-3, 11-14.
[42] Griffin Depo. at 19:21-22, 24-25; 20:1-2; 22:22-23.
[43] Jundt Depo. at 16:6-11; 21:8-10; 20:16-20.

162    Most devastatingly, Delancy's explicit admission that his obstruction charge was "incorrect" and that

163    Wilson "did not commit obstruction of justice during a street encounter" directly contradicts the justifications

164    in his declaration.[44]

165    These systematic contradictions between sworn declarations and sworn deposition testimony create

166    credibility determinations that are quintessentially jury questions and preclude summary judgment.[45]

## LEGAL ARGUMENT

167

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE

168

## GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING CONSTITUTIONAL

169

## VIOLATIONS

170

### A. First Amendment Retaliation Claim Survives Summary Judgment

171

172    Wilson's First Amendment retaliation claim is supported by overwhelming evidence that defendants retaliated

173    against him for exercising his clearly established right to request badge numbers from police officers. The

174    elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in constitutionally protected

175    activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in

176    that activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.[46]

177    **Protected Activity:** Wilson's request for badge numbers constitutes clearly established First Amendment

178    activity. The right to request identification from police officers is a fundamental aspect of the right to gather

179    information about government officials performing their duties.[47] This right has been clearly established for

180    decades and is essential to democratic accountability.[48]

181    **Chilling Effect:** The defendants' actions would clearly chill a person of ordinary firmness from requesting

182    badge numbers. Being handcuffed and detained immediately after making such a request sends an unmistakable

183    message that exercising this constitutional right will result in arrest and detention.

184    **Substantial or Motivating Factor:** The temporal proximity between Wilson's badge number request and

185    his detention establishes that the protected activity was a substantial motivating factor. Delancy admitted that

---

[44]Delancy Depo. at 61:21-23; 64:2-3.

[45]See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions").

[46]Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019).

[47]Glik v. Cunniffe, 655 F.3d 78, 85 (1st Cir. 2011).

[48]Turner v. Driver, 848 F.3d 678, 688 (5th Cir. 2017).

186 only 15-20 seconds elapsed between the request and the handcuffing.[49]  This immediate retaliation, combined

187 with the lack of any criminal activity or threatening behavior, establishes the retaliatory motive.

188 **Nieves Exception Applies:**  Even if defendants argue that probable cause existed for some traffic violation,

189 the Nieves exception applies because Wilson can demonstrate he was treated differently than similarly situated

190 individuals who did not engage in protected speech.  The evidence shows that the decision to handcuff and

191 detain Wilson was made immediately after his badge number request, not based on any traffic violation.[50]

## B. Fourth Amendment Excessive Force Claim Survives Summary Judgment

193 Wilson's excessive force claim under the Fourth Amendment must be analyzed under the Graham v. Connor

194 objective reasonableness standard.  Applying the Graham factors to the undisputed facts establishes that the

195 force used was objectively unreasonable:

196 **Severity of Crime:**  The alleged "crime" was a minor traffic violation, which Griffin explicitly distinguished

197 from criminal activity.[51]  Traffic violations are among the least serious offenses and do not justify the use of

198 handcuffs absent additional circumstances.

199 **Immediate Threat:**  Wilson posed no immediate threat to officer safety or others.  Griffin testified that he

200 "did not observe dangerous actions" by Wilson,[52] and Delancy confirmed that Wilson was "a gentleman" who

201 was "cooperative" and not "resisting."[53]

202 **Active Resistance or Flight:**  Wilson did not actively resist arrest or attempt to flee.  Griffin confirmed

203 that Wilson did not attempt to flee[54] and did not physically resist.[55]  Delancy similarly testified that Wilson

204 was not resisting and was cooperative during the handcuffing process.[56]

205 The handcuffing of a cooperative individual who posed no threat and was not resisting for a minor traffic

206 violation constitutes excessive force under clearly established Fourth Amendment law.[57]

---

[49]Delancy Depo. at 63:12, 14.

[50]Griffin Depo. at 21:2-3 (confirming handcuffing occurred "during that time or shortly thereafter" the badge request).

[51]Griffin Depo. at 17:13-15.

[52]Griffin Depo. at 19:22.

[53]Delancy Depo. at 64:5, 7, 9-10.

[54]Griffin Depo. at 20:2.

[55]Griffin Depo. at 22:23.

[56]Delancy Depo. at 64:5, 7.

[57]See Graham v. Connor, 490 U.S. 386, 396-97 (1989).

**C. Fourth Amendment Unreasonable Seizure Claim Survives Summary Judgment**

Wilson's detention constituted an unreasonable seizure under the Fourth Amendment because defendants lacked reasonable suspicion of criminal activity. Under Terry v. Ohio, an investigative detention requires reasonable suspicion that the individual has committed, is committing, or is about to commit a crime.[58]

**Lack of Criminal Suspicion:** Griffin explicitly testified that he possessed no reasonable suspicion of criminal activity beyond a traffic violation.[59] He distinguished between traffic violations and criminal activity, confirming that the only basis for contact was "a violation of a traffic statute."[60]

**Traffic Stop vs. Investigative Detention:** This was not a traffic stop, as Wilson's vehicle was already parked and he was walking on a sidewalk.[61] The handcuffing and detention of Wilson transformed what should have been a brief investigative contact into an arrest without probable cause.

**Pretextual Nature of Detention:** The timing of the detention immediately after Wilson's badge number request, combined with the lack of any criminal suspicion, establishes that the detention was pretextual and retaliatory rather than based on legitimate law enforcement concerns.

## II. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials from liability only if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[62] Defendants are not entitled to qualified immunity because they violated clearly established constitutional rights.

## A. Clearly Established First Amendment Rights

The right to request badge numbers from police officers has been clearly established for decades. Courts have consistently held that citizens have a First Amendment right to gather information about government officials, including police officers performing their duties.[63] Retaliating against citizens for exercising this right violates clearly established constitutional law.

---

[58]Terry v. Ohio, 392 U.S. 1, 21 (1968).
[59]Griffin Depo. at 17:5-6.
[60]Griffin Depo. at 17:13-15.
[61]Griffin Depo. at 24:13-15; 25:21-22.
[62]Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
[63]Glik v. Cunniffe, 655 F.3d 78, 85 (1st Cir. 2011); Turner v. Driver, 848 F.3d 678, 688 (5th Cir. 2017).

**B. Clearly Established Fourth Amendment Rights**

The Fourth Amendment rights violated in this case have been clearly established since the Supreme Court's decisions in Terry v. Ohio and Graham v. Connor. The prohibition against excessive force and unreasonable seizures has been clearly established for decades, and no reasonable officer could have believed that handcuffing a cooperative individual who posed no threat for a minor traffic violation was constitutionally permissible.

**C. Defendants' Knowledge of Constitutional Violations**

The defendants' own admissions establish that they knew or should have known that their conduct violated clearly established constitutional rights. Delancy's admission that his obstruction charge was "incorrect"[64] and that Wilson "did not commit obstruction of justice"[65] demonstrates consciousness of the unlawful nature of the detention.

## III. MUNICIPAL LIABILITY UNDER MONELL IS ESTABLISHED

The City of Hood River faces municipal liability under Monell v. Department of Social Services because the constitutional violations resulted from official policy, custom, or practice of the municipality.[66]

**A. Failure to Train**

Municipal liability may be established through deliberate indifference to constitutional rights, including failure to train officers regarding clearly established constitutional law.[67] The evidence establishes that the City failed to adequately train its officers regarding:

1. Citizens' First Amendment rights to request badge numbers and record police encounters

2. Proper application of the Graham factors for use of force decisions

3. Constitutional limitations on investigative detentions under Terry v. Ohio

4. The distinction between traffic violations and criminal activity

---

[64] Delancy Depo. at 61:21-23.
[65] Delancy Depo. at 64:2-3.
[66] Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).
[67] Canton v. Harris, 489 U.S. 378, 388 (1989).

250 **Griffin's Training Deficiencies:** Griffin's testimony reveals fundamental gaps in constitutional training.
251 Despite being designated as a training officer, he admitted he was "early in his career," "still learning," and
252 essentially "following orders" rather than making independent constitutional assessments.[68]

253 **Institutional Pattern:** The systematic nature of the constitutional violations, involving multiple officers
254 who all failed to recognize clearly established constitutional rights, establishes an institutional pattern of
255 deliberate indifference to constitutional training.

## B. Custom or Practice of Constitutional Violations

257 The evidence suggests a custom or practice within the Hood River Police Department of retaliating against
258 citizens who exercise their constitutional rights.  The coordinated nature of the constitutional violations,
259 involving multiple officers acting in concert, suggests an institutional tolerance for such conduct.

## IV. DAMAGES ARE CLEARLY ESTABLISHED

261 Wilson is entitled to both compensatory and punitive damages for the constitutional violations he suffered.

## A. Compensatory Damages

263 Wilson suffered both tangible and intangible injuries as a result of defendants' constitutional violations:

264     1. Physical restraint and discomfort from handcuffing

265     2. Humiliation and embarrassment from public detention

266     3. Constitutional injury from violation of First, Fourth, and Fifth Amendment rights

267     4. Interference with his right to travel and freedom of movement

## B. Punitive Damages

269 Punitive damages are appropriate where defendants acted with reckless or callous indifference to constitutional
270 rights.[69]  The evidence establishes that defendants acted with such indifference:

271     1. Delancy's admission that his obstruction charge was "incorrect" demonstrates knowledge of wrongdoing

---

[68]Griffin Depo. at 22:1-3, 11-14.
[69]Smith v. Wade, 461 U.S. 30, 56 (1983).

272   2. The immediate retaliation following Wilson's badge number request shows callous disregard for First
273      Amendment rights

274   3. The systematic perjury in defendants' declarations demonstrates ongoing indifference to constitutional
275      and legal obligations

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment must be denied in its entirety. The undisputed facts, as established through defendants' own deposition testimony, demonstrate clear constitutional violations that were objectively unreasonable and violated clearly established law. The systematic contradictions between defendants' sworn declarations and their deposition testimony create genuine issues of material fact that must be resolved by a jury.

This case presents a clear example of law enforcement officers who violated clearly established constitutional rights and then attempted to cover up their misconduct through perjurious declarations. Such conduct cannot be tolerated in a constitutional democracy and warrants both civil liability and criminal prosecution.

Plaintiff respectfully requests that this Court:

1. Deny Defendants' Motion for Summary Judgment in its entirety

2. Set this matter for jury trial on all claims

3. Award Plaintiff compensatory and punitive damages

4. Award Plaintiff reasonable litigation fees and costs

5. Refer this matter to appropriate authorities for criminal prosecution of perjury

6. Grant such other relief as the Court deems just and proper

292    Respectfully submitted,

293

294    Executed on September 5, 2025, at Yakima, Washington.

295

296    /s/ Cameron James Wilson

297    Pro Se Plaintiff

298    1312 South 44th Ave

299    Yakima, Washington 98908

300    (503) 496-9239

301    cam@piitp.com


## CERTIFICATE OF SERVICE

303    I hereby certify that on September 5, 2025, I served a true and correct copy of the foregoing PLAINTIFF'S

304    RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR TRIAL

305    upon the following parties by the method indicated:

**Keegan C. Murphy, OSB #194264**

**Kenneth S. Montoya, OSB #064467**

Montoya Law

306    350 Mission St. SE, Suite 202

Salem, OR 97302

Emails: kenny@montoyalaw.org, keegan@montoyalaw.org

Attorneys for Defendants

307    ☐ Electronic filing via CM/ECF


308    /s/Cameron James Wilson

309    Pro Se Plaintiff