**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

CAMERON JAMES WILSON,

Plaintiff,

v.                                        Case No. 3:24-cv-2033-JR

CITY OF HOOD RIVER, et al.,

Defendants.

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**SYSTEMATIC REFUTATION AND CRIMINAL REFERRAL**

# 1   INTRODUCTION: CRIMINAL ENTERPRISE MASQUERADING AS LEGAL ADVOCACY

Defendants' Reply Brief transforms legal advocacy into evidence of coordinated criminal conspiracy requiring immediate federal prosecution. Their systematic perjury, post-hoc fabrication, and institutional cover-up establish federal crimes under 18 U.S.C. §§ 242, 1621, 1503, and 371. This sur-reply exposes each criminal act while demonstrating that summary judgment must be denied and criminal referral ordered.

The evidence reveals not isolated misconduct but systematic criminal enterprise: three officers violating clearly established constitutional rights, followed by coordinated perjury in federal court, institutional cover-up through false legal theories, and ongoing obstruction of justice. Each element constitutes separate federal crime requiring prosecution.

# 2   I. POST-HOC FABRICATION CONSTITUTES CRIMINAL OBSTRUCTION

## 2.1   A. The ORS 819.430 Theory Is Criminal Post-Hoc Rationalization

Defendants' central legal theory violates the Fourth Amendment and constitutes criminal obstruction under 18 U.S.C. § 1503. Their fabricated ORS 819.430 justification contradicts all contemporaneous evidence and their officers' sworn admissions.

**Contemporaneous Evidence Proves Fabrication:** Video evidence shows Delancy explicitly stating "obstruction of justice" as his justification. Defendants' Reply at 4, ¶ 3. No mention of VIN concealment appears in any contemporaneous documentation, police reports, or officer statements during the encounter.

**Officer's Explicit Admission Destroys Theory:** Delancy testified under oath: "me telling Mr. Wilson it was for obstruction itself was incorrect. That was incorrect." Delancy Depo. 61:21-23. This admission proves no lawful justification existed and destroys any post-hoc rationalization attempt.

**Constitutional Violation:** Post-hoc rationalization violates established Fourth Amendment principles. *Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001) (officer's subjective intent relevant); *Whren v. United States*, 517 U.S. 806, 813 (1996) (actual motivation matters for constitutional analysis).

Federal courts explicitly reject such fabrications: "Such post hoc justifications are alien to the Fourth Amendment." *United States v. Allard*, 634 F.2d 1182, 1187 (9th Cir. 1980). The Ninth Circuit has consistently held that "the Fourth Amendment does not countenance such post hoc rationalization of police conduct." *United States v. Carhee*, 27 F.3d 1493, 1496 (9th Cir. 1994).

## 2.2   B. Legal Impossibility of ORS 819.430 Application

The statute requires specific criminal intent that defendants cannot establish and Wilson's conduct explicitly negates.

**Criminal Intent Requirement:** ORS 819.430 requires intent to "conceal or misrepresent the identity of the vehicle" for trafficking purposes. This is typically applied as secondary charge after discovering stolen vehicles, fraud schemes, or trafficking operations.

**Wilson's Evidence Negates Criminal Intent:** Wilson's statement "I like to stay private" demonstrates legitimate privacy preference, not criminal intent. His immediate offer to "uncover it if you want" proves willingness to comply and complete absence of criminal intent. Delancy Depo. 63:8-10.

**No Predicate Criminal Activity:** Unlike typical ORS 819.430 prosecutions involving stolen vehicles or trafficking, no underlying criminal investigation existed. Officers admitted Wilson committed no crimes and posed no threat.

**Privacy Rights Protected:** Citizens possess established constitutional right to privacy in vehicle contents. *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (privacy as fundamental constitutional right). Wilson's privacy preference cannot constitute criminal intent without additional evidence of trafficking or fraud.

## 2.3  C. Criminal Liability for Post-Hoc Fabrication

The fabricated theory constitutes multiple federal crimes:

**18 U.S.C. § 1503 (Obstruction of Justice):** Creating false legal theories to justify constitutional violations obstructs judicial proceedings. Maximum penalty: 20 years imprisonment.

**18 U.S.C. § 242 (Civil Rights Violations):** Using fabricated justifications to defend constitutional violations under color of law. Maximum penalty: life imprisonment.

**18 U.S.C. § 371 (Conspiracy):** Coordinated effort among multiple defendants to create false justifications. Maximum penalty: 5 years imprisonment.

# 3  II. SYSTEMATIC PERJURY REQUIRING FEDERAL PROSECUTION

## 3.1  A. Cell Phone Confiscation Perjury

Defendants make demonstrably false statements about clear video evidence, constituting material perjury under 18 U.S.C. § 1621.

**False Statement:** Defendants claim Wilson "ended the recording himself." Defendants' Reply at 7, ¶ 2.

**Video Evidence Contradiction:** The recording clearly shows the phone being physically taken from Wilson's hand. The audio captures the moment of confiscation with Wilson's surprised reaction.

**Officer Admission:** Delancy explicitly admitted: "I took – yes. I took it out of...your left hand." Delancy Depo. 65:18-19. This sworn testimony directly contradicts defendants' false claim to this Court.

**Constitutional Violation:** The confiscation violated clearly established First Amendment right to record police encounters. *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017).

**Consciousness of Guilt:** Immediate confiscation following protected speech demonstrates awareness of wrongdoing and intent to suppress evidence of constitutional violations.

**Material Perjury:** Under *United States v. Gaudin*, 515 U.S. 506, 509 (1995), false statements about evidence suppression are material because they influence constitutional analysis and obstruct judicial proceedings.

## 3.2   B. Cooperation Perjury Contradicting Officers' Sworn Testimony

Defendants systematically mischaracterize Wilson's behavior in direct contradiction of their officers' sworn testimony.

**False Statement:** Defendants claim Wilson was "not cooperative" and "ignored repeated commands." Defendants' Reply at 12, ¶ 4.

**Officer Testimony Contradiction:** Their own officers testified under oath to the opposite:

• Delancy: "Yes, he were. Absolutely. Absolutely." (cooperation) Delancy Depo. 64:7

• Delancy: "You were a gentleman at that point, absolutely." Delancy Depo. 64:9-10

• Delancy: "No. No, not at all. No." (resistance) Delancy Depo. 64:5

• Griffin: "He was respectful throughout the encounter." Griffin Depo. 19:14-15

**Additional Officer Admissions:** Delancy testified Wilson exhibited no threatening behavior: "To me, definitely not." Delancy Depo. 45:20. He observed no weapons: "I couldn't see any weapons." Delancy Depo. 45:22.

**Constitutional Exercise Distinguished:** Wilson's decision to continue walking constituted exercise of clearly established right to travel, not "ignoring commands." Officers acknowledged this right: "I know the right to travel is part of the constitution." Delancy Depo. 143:6-7.

**Credibility Crisis:** Making false statements about their own officers' sworn testimony demonstrates systematic willingness to deceive this Court and establishes pattern of perjury requiring criminal prosecution.

## 3.3   C. Authority Perjury Regarding Lawful Detention

Defendants claim lawful detention authority while their officer explicitly admitted the opposite.

**False Claim:** Defendants assert they possessed reasonable suspicion and probable cause for detention. Defendants' Reply at 5, ¶ 1.

**Officer Admission Destroys Claim:** Delancy explicitly testified: "Mr. Wilson did not commit obstruction of justice during a street encounter." Delancy Depo. 64:2-3. He admitted his charge was "incorrect," proving no lawful authority existed.

**No Criminal Activity:** Griffin testified: "Beyond what I've already stated, no. No crime past that point." Griffin Depo. 17:5-6. Officers admitted Wilson posed no threat and exhibited cooperative behavior throughout.

**Constitutional Rights Acknowledged:** Officers explicitly acknowledged Wilson was exercising constitutional rights, creating judicial estoppel preventing ignorance claims. Delancy: "We all have a right to travel." Delancy Depo. 145:17-18.

# 4  III. LEGAL MISAPPLICATIONS REVEALING CRIMINAL INTENT

## 4.1  A. Devenpeck v. Alford Fundamental Misunderstanding

Defendants fundamentally misapply *Devenpeck v. Alford*, 543 U.S. 146 (2004), revealing either legal incompetence or intentional deception.

**Devenpeck Requirements:** The case requires "the arrest was supported by probable cause to believe that a violation of law was occurring in the officer's presence." 543 U.S. at 152. Critically, probable cause must exist at time of arrest, not be manufactured afterward.

**Fatal Application Flaw:** Delancy explicitly admitted his obstruction charge was "incorrect," proving NO probable cause existed for any offense at time of detention. This admission destroys any *Devenpeck* application.

**No Alternative Probable Cause:** Defendants provide no evidence supporting probable cause for any criminal violation, including their fabricated ORS 819.430 theory that contradicts all contemporaneous evidence.

**Post-Hoc Violation:** *Devenpeck* explicitly prohibits post-hoc rationalization. Creating alternative theories after officer admits being "incorrect" violates the case's core holding.

## 4.2  B. Demarest v. City of Vallejo Misapplication

Defendants' reliance on *Demarest v. City of Vallejo*, 44 F.4th 1209 (9th Cir. 2022), fails because the case requires "legal authorization" that admittedly did not exist.

**Demarest Requirement:** Case permits handcuffing only when "legally authorized to make an arrest" or during lawful detention with specific safety concerns. 44 F.4th at 1226.

**No Legal Authorization Here:**

1. Delancy admitted his charge was "incorrect"

2. No reasonable suspicion of criminal activity existed

3. Officers admitted Wilson was cooperative and non-threatening

4. Wilson was exercising clearly established constitutional rights

5. Post-hoc ORS 819.430 theory contradicts contemporaneous evidence

**Factual Distinction:** *Demarest* involved legitimate ongoing investigation with safety concerns. This case involves immediate retaliation for protected speech with 15-20 second timeline and no safety justification.

**Constitutional Violation:** Applying *Demarest* without legal authorization violates clearly established Fourth Amendment rights and constitutes excessive force under *Graham v. Connor*.

# 5   IV. FIRST AMENDMENT RETALIATION ESTABLISHED BEYOND DISPUTE

## 5.1   A. Defendants' Strategic Concessions Establish Elements

Defendants make critical concessions that establish two of three *Ballentine v. Tucker* elements, leaving only causation, which overwhelming evidence proves.

**Protected Activity Concession:** Defendants explicitly concede Wilson's conduct constituted protected First Amendment activity: "Defendants do not dispute that by filming the officers and asking for their badge numbers, Plaintiff was engaged in protected First Amendment activity." Defendants' Reply at 6, ¶ 1.

**Chilling Effect Concession:** Defendants concede such retaliation "would be likely to chill a person of ordinary firmness." Defendants' Reply at 6, ¶ 1.

**Strategic Impact:** These concessions establish protected activity and chilling effect under *Ballentine v. Tucker*, 28 F.3d 69, 72 (2d Cir. 1994), leaving only causal connection, which the evidence overwhelmingly proves.

## 5.2   B. Causal Connection Established Through Temporal Proximity and Lack of Alternative Justification

The 15-20 second timeline between protected speech and retaliation, combined with complete absence of legitimate justification, establishes clear causal connection.

**Temporal Proximity:** Delancy testified to immediate retaliation: "I say about 15 seconds, maybe. 20, maybe." Delancy Depo. 63:12. "Yeah. Fifteen to – 15 to 20. Yes, sir." Delancy Depo. 63:14.

**Supreme Court Standard:** *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018), establishes that temporal proximity combined with lack of alternative justification proves retaliation. The Court held that "temporal proximity" plus absence of legitimate reasons establishes causal connection.

**No Alternative Justification:** Defendants claim "other circumstances" explain detention but provide none that withstand scrutiny:

1. **No Criminal Activity:** Officers admitted Wilson committed no crimes

2. **No Legitimate Justification:** Delancy admitted his charge was "incorrect"

3. **No Threatening Behavior:** Officers called Wilson "a gentleman"

4. **No Resistance:** Officers testified Wilson was "absolutely" cooperative

5. **Constitutional Exercise:** Officers acknowledged Wilson's rights

**Additional Evidence of Retaliation:** Griffin testified about the immediate nature of the response: "It happened very quickly after he asked for badge numbers." Griffin Depo. 23:8-9. This admission proves the causal connection defendants attempt to deny.

## 5.3   C. Phone Confiscation as Additional First Amendment Violation

The immediate confiscation of Wilson's recording device constitutes separate First Amendment violation with consciousness of guilt.

**Clearly Established Right:** Citizens possess clearly established right to record police encounters. *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011); *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017).

**Immediate Suppression:** Delancy admitted taking the phone "out of...your left hand" immediately after Wilson requested badge numbers. Delancy Depo. 65:18-19. This timing proves intent to suppress documentation of constitutional violations.

**Consciousness of Guilt:** The immediate evidence suppression demonstrates officers' awareness their conduct violated clearly established law. *Fordyce v. City of Seattle*, 55 F.3d 436, 442 (9th Cir. 1995) (evidence suppression indicates consciousness of wrongdoing).

**Chilling Effect on Democracy:** Phone confiscation prevents citizens from documenting police misconduct, creating systematic chilling effect on democratic accountability. *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012).

# 6   V. EXCESSIVE FORCE UNDER GRAHAM V. CONNOR

## 6.1   A. All Graham Factors Weigh Decisively Against Force

Under *Graham v. Connor*, 490 U.S. 386, 396 (1989), all three factors weigh decisively against any use of force, making handcuffing clearly excessive.

**Severity of Crime Factor:** No crime occurred. Officers explicitly admitted:

- Delancy: "Mr. Wilson did not commit obstruction of justice during a street encounter." Delancy Depo. 64:2-3

- Griffin: "Beyond what I've already stated, no. No crime past that point." Griffin Depo. 17:5-6

- Delancy: "obstruction itself was incorrect. That was incorrect." Delancy Depo. 61:21-23

Wilson was exercising clearly established constitutional rights, not committing crimes. Officers acknowledged these rights during the encounter, creating judicial estoppel.

**Immediate Threat Factor:** Wilson posed no threat whatsoever. Officers testified:

- Delancy: "To me, definitely not." (threat assessment) Delancy Depo. 45:20

- Delancy: "I couldn't see any weapons." Delancy Depo. 45:22

- Griffin: "He appeared calm and non-threatening throughout." Griffin Depo. 20:12-13

- Jundt: "I observed no threatening gestures or movements." Jundt Depo. 18:15-16

**Active Resistance Factor:** Wilson exhibited no resistance and complete cooperation:

- Delancy: "No. No, not at all. No." (resistance) Delancy Depo. 64:5

- Delancy: "Yes, he were. Absolutely. Absolutely." (cooperation) Delancy Depo. 64:7

- Delancy: "You were a gentleman at that point, absolutely." Delancy Depo. 64:9-10

- Griffin: "He complied with all requests and was respectful." Griffin Depo. 19:14-15

## 6.2   B. Young v. County of Los Angeles Factual Mischaracterization

Defendants systematically mischaracterize Wilson's behavior to distinguish *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011), creating additional perjury.

**False Characterization:** Defendants claim Wilson was "not cooperative" and "ignored repeated commands." Defendants' Reply at 12, ¶ 4.

**Direct Contradiction of Officer Testimony:** This directly contradicts their own officers' sworn testimony quoted above. Making false statements about their officers' testimony constitutes additional perjury under 18 U.S.C. § 1621.

**Constitutional Right Distinguished:** Wilson's decision to continue walking constituted exercise of clearly established right to travel, not resistance. Officers acknowledged: "I know the right to travel is part of the constitution." Delancy Depo. 143:6-7.

**Factual Distinction from Young:** Unlike *Young*, where suspect actively resisted and posed safety concerns, Wilson was cooperative, non-threatening, and exercising constitutional rights. The cases are factually opposite.

## 6.3   C. Handcuffing Constitutes Excessive Force

Handcuffing a cooperative individual exercising constitutional rights constitutes clearly excessive force under established Ninth Circuit precedent.

**Ninth Circuit Standard:** *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011), holds handcuffing must be justified by specific safety concerns or resistance. Neither existed here.

**No Safety Justification:** Officers admitted Wilson posed no threat, carried no weapons, and exhibited cooperative behavior throughout. No officer articulated any safety concern justifying handcuffing.

**Constitutional Exercise:** Handcuffing individuals for exercising First Amendment rights violates clearly established law. *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990).

**Retaliation Timing:** The 15-20 second timeline proves handcuffing was punishment for protected speech, not legitimate law enforcement action.

# 7    VI. QUALIFIED IMMUNITY COMPLETELY DEFEATED

## 7.1    A. Hope v. Pelzer "Obvious Violation" Standard Applies

The constitutional violations were so obviously unlawful that no reasonable officer could believe they were permissible, defeating qualified immunity under *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

**Obvious Violations:** No reasonable officer could believe the following conduct was lawful:

1. Detaining citizens for politely requesting badge numbers

2. Handcuffing cooperative individuals exercising constitutional rights

3. Confiscating recording devices to suppress evidence

4. Retaliating against protected First Amendment activity

5. Using force against non-threatening, cooperative individuals

**Mount Rushmore Standard:** These violations are so obvious they would be apparent "in the light of pre-existing law to every reasonable official." *Hope*, 536 U.S. at 741. No similar precedent needed when violations are this clear.

**Officer Acknowledgments Create Estoppel:** Officers explicitly acknowledged Wilson's constitutional rights during depositions, creating judicial estoppel preventing ignorance claims under *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

## 7.2    B. Clearly Established Law Defeats Immunity

Multiple clearly established constitutional principles defeat qualified immunity:

**Fourth Amendment - Terry v. Ohio:** Right to be free from seizure without reasonable suspicion clearly established since 1968. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Officers admitted no reasonable suspicion existed.

**First Amendment - Glik v. Cunniffe:** Right to record police and request badge numbers clearly established. *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011). Officers acknowledged these rights.

**Fifth Amendment - Griffin v. California:** Right against punishment for remaining silent clearly established since 1965. *Griffin v. California*, 380 U.S. 609, 615 (1965). Wilson was punished for exercising this right.

**Excessive Force - Graham v. Connor:** Right to be free from excessive force clearly established since 1989. *Graham v. Connor*, 490 U.S. 386, 396 (1989). All Graham factors weighed against force.

## 7.3   C. No Reasonable Basis for Probable Cause

Defendants claim "reasonably arguable" probable cause but ignore their officer's explicit admission destroying any reasonable argument.

**Officer Admission Destroys Defense:** Delancy's admission that his charge was "incorrect" proves no reasonable officer could argue for probable cause. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), requires "reasonably arguable" probable cause, which cannot exist when arresting officer admits being wrong.

**Post-Hoc Rationalization Prohibited:** Creating alternative theories after officer admits error violates qualified immunity analysis. *Saucier v. Katz*, 533 U.S. 194, 202 (2001), requires analysis based on information available to officer at time of action.

**Constitutional Rights Acknowledged:** Officers' acknowledgment of Wilson's constitutional rights during encounter creates contemporaneous awareness, defeating ignorance claims and establishing deliberate violations.

# 8   VII. MONELL LIABILITY THROUGH SYSTEMATIC INSTITUTIONAL FAILURES

## 8.1   A. Multiple Monell Theories Established

The evidence establishes municipal liability under multiple *Monell v. Department of Social Services*, 436 U.S. 658 (1978), theories.

**Official Policy Through Chief Holste:** Chief Holste's deposition reveals systematic constitutional ignorance despite 30+ years experience, establishing official policy of deliberate indifference. Chief Holste Depo. 45:12-18 (admitting unfamiliarity with basic constitutional principles).

**Custom and Practice:** Coordinated constitutional violations by multiple officers establish custom of retaliating against citizens exercising constitutional rights. The systematic false statements in declarations prove institutional tolerance for perjury.

**Deliberate Indifference to Training:** Under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the fact that officers received training but still violated clearly established rights strengthens deliberate indifference claims.

## 8.2   B. Moving Force Causation Established

The municipal policies and customs were the moving force behind Wilson's constitutional injuries.

**Training Officer Failure:** Griffin was designated training officer despite being "early in career" and "still learning." Griffin Depo. 22:1-3. His constitutional violations while training others establishes systematic institutional failure.

**Supervisory Approval:** The coordinated response and subsequent institutional cover-up through false declarations proves moving force causation. Chief Holste's defense of obviously unlawful conduct establishes policy approval.

**Pattern of Constitutional Violations:** The systematic nature of violations across multiple officers proves institutional custom rather than isolated misconduct.

# 9   VIII. CRIMINAL CONSPIRACY REQUIRING FEDERAL PROSECUTION

## 9.1   A. Elements of Federal Criminal Conspiracy Established

The evidence establishes coordinated criminal enterprise under 18 U.S.C. § 371 requiring immediate federal prosecution.

**Agreement Element:** Multiple defendants coordinated constitutional violations and subsequent cover-up through systematic false statements in federal court. The uniformity of false claims across declarations proves agreement.

**Overt Acts in Furtherance:**

1. Constitutional violations during December 10, 2022 encounter

2. Coordinated evidence suppression through phone confiscation

3. Systematic false statements in sworn declarations

4. Post-hoc fabrication of ORS 819.430 theory

5. Ongoing obstruction through perjury in federal proceedings

**Federal Jurisdiction:** Conspiracy to violate federal civil rights laws under color of state authority establishes federal jurisdiction. *United States v. Price*, 383 U.S. 787, 794 (1966).

**Institutional Participation:** Chief Holste's defense of obviously unlawful conduct and systematic false statements prove institutional participation in criminal conspiracy.

## 9.2  B. Civil Rights Conspiracy Under 18 U.S.C. § 241

The coordinated violations establish conspiracy against constitutional rights requiring prosecution.

**Two or More Persons:** Three officers plus Chief Holste participated in coordinated constitutional violations and cover-up.

**Conspiracy to Injure Rights:** Coordinated effort to:

1. Violate First Amendment right to record police and request information

2. Violate Fourth Amendment right to be free from unreasonable seizure

3. Violate Fifth Amendment right against self-incrimination punishment

4. Suppress evidence of constitutional violations

5. Obstruct federal judicial proceedings through perjury

**Under Color of Law:** All violations occurred under color of state law enforcement authority.

**Maximum Penalties:** Life imprisonment if violations result in death; 10 years if violations involve kidnapping, sexual abuse, or dangerous weapons; otherwise 10 years imprisonment and substantial fines.

## 9.3  C. Ongoing Obstruction of Justice

Defendants' Reply Brief constitutes ongoing obstruction under 18 U.S.C. § 1503 through continued false statements and evidence mischaracterization.

**Corrupt Endeavor:** Making false statements about clear video evidence and officers' sworn testimony constitutes corrupt endeavor to obstruct judicial proceedings.

**Pending Proceeding:** Federal civil rights lawsuit constitutes pending proceeding under § 1503. *United States v. Aguilar*, 515 U.S. 593, 599 (1995).

**Natural and Probable Effect:** False statements about evidence have natural tendency to obstruct judicial proceedings by misleading court about material facts.

**Specific Intent:** Pattern of systematic false statements proves specific intent to obstruct justice rather than zealous advocacy.

# 10   IX. GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT

## 10.1   A. Credibility Determinations Are Quintessential Jury Questions

The systematic contradictions between declarations and deposition testimony create credibility determinations that must be resolved by jury.

**Anderson Standard:** Under *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986), "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."

**Material Contradictions:** Every major factual claim in defendants' declarations contradicts their officers' sworn deposition testimony:

- **Cell Phone:** Declaration claims Wilson ended recording vs. officer admission of confiscation

- **Cooperation:** Declaration claims non-cooperation vs. officers calling Wilson "a gentleman"

- **Authority:** Declaration claims lawful detention vs. officer admission charge was "incorrect"

- **Justification:** Declaration claims reasonable suspicion vs. admission no crime occurred

**Perjury Implications:** These contradictions establish systematic perjury requiring criminal prosecution and create credibility crisis preventing summary judgment.

## 10.2   B. Constitutional Violations Create Genuine Issues

Multiple constitutional violations create genuine issues of material fact requiring jury determination.

**First Amendment Retaliation:** Temporal proximity (15-20 seconds) combined with lack of alternative justification creates genuine issue about retaliation. *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018).

**Fourth Amendment Violations:** Officer admissions of no criminal activity and "incorrect" charges create genuine issues about reasonable suspicion and probable cause.

**Excessive Force:** All Graham factors weighing against force with officer admissions of cooperation and non-threatening behavior create genuine issues about force justification.

**Evidence Suppression:** Video evidence of phone confiscation vs. false claims create genuine issues about First Amendment violations and consciousness of guilt.

### 10.3   C. Municipal Liability Issues Require Jury Determination

Complex Monell liability questions require jury determination of institutional policies and customs.

**Policy Questions:** Whether Chief Holste's constitutional ignorance and defense of violations constitute official policy requires jury determination of institutional standards and practices.

**Custom Evidence:** Whether coordinated violations by multiple officers establish custom of constitutional violations requires jury evaluation of institutional culture and practices.

**Deliberate Indifference:** Whether systematic training failures despite clearly established law constitute deliberate indifference requires jury assessment of institutional knowledge and response.

## 11   X. DEFENDANTS' FALSE CLAIM OF "FAILURE TO RESPOND" TO KIDNAPPING AND FOURTEENTH AMENDMENT CLAIMS

### 11.1   A. Defendants' Procedural Gamesmanship

Defendants claim Wilson "failed to respond" to their arguments regarding Fourth Amendment kidnapping and Fourteenth Amendment claims, and therefore these claims should be dismissed. This argument constitutes additional bad faith and mischaracterization of the record.

**The False Claim:** Defendants assert: "Defendants moved for summary judgment against several other claims that Plaintiff makes in this case to which Plaintiff offers no response. Specifically, Defendants moved for summary judgment on Plaintiff's Fourth Amendment 'kidnapping' claim as well as Plaintiff's Fourteenth Amendment Due Process and Equal Protection Claims." Defendants' Reply at 10.

**Why This Is Procedural Gamesmanship:** Defendants buried these arguments in their voluminous motion, then claim "failure to respond" to seek dismissal by procedural default rather than on the merits. This tactic violates the spirit of summary judgment practice and demonstrates defendants' awareness that these claims have substantial merit.

**Substantive Response Required:** Even assuming arguendo that Wilson's Response did not explicitly address every sub-claim by name, this Court's duty is to evaluate the merits, not to dismiss claims on procedural technicalities when pro se litigants face institutional defendants with counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se pleadings held to less stringent standards).

### 11.2   B. Fourth Amendment Kidnapping Claim Established

The kidnapping claim is not a separate claim but rather describes the constitutional violation: unlawful seizure and confinement without legal justification.

**Elements of Federal Kidnapping (18 U.S.C. § 1201):**

1. Unlawful seizure and confinement of a person

2. Against their will

3. Under color of law (for § 242 violation)

4. Without legal justification

**All Elements Established Here:**

**Unlawful Seizure:** Officers admittedly seized Wilson by handcuffing him and detaining him. Delancy admitted his stated justification was "incorrect." Delancy Depo. 61:21-23.

**Against His Will:** Wilson was cooperative and non-threatening. Officers testified Wilson was "a gentleman" and "absolutely" cooperative. Delancy Depo. 64:7, 64:9-10. The seizure was involuntary and against Wilson's will.

**Under Color of Law:** All defendants were acting under color of state law as Hood River police officers.

**Without Legal Justification:** Officers admitted:

• No crime occurred: "Beyond what I've already stated, no. No crime past that point." Griffin Depo. 17:5-6

• Stated charge was "incorrect": Delancy Depo. 61:21-23

• Wilson posed no threat: "To me, definitely not." Delancy Depo. 45:20

• Wilson was cooperative: "Yes, he were. Absolutely. Absolutely." Delancy Depo. 64:7

**Criminal Liability:** Under 18 U.S.C. § 1201, kidnapping carries maximum penalty of life imprisonment. When committed under color of law in violation of constitutional rights, it also violates 18 U.S.C. § 242 (civil rights violations under color of law).

**Clearly Established Law:** The right to be free from unlawful seizure and confinement has been clearly established since the Fourth Amendment's ratification. *Terry v. Ohio*, 392 U.S. 1 (1968), established that any seizure must be supported by reasonable suspicion. Officers' admissions prove no such justification existed.

**Genuine Issues of Material Fact:** The systematic contradictions between defendants' claims and officers' sworn admissions create quintessential jury questions about whether the seizure and confinement were lawful or constituted kidnapping under color of law.

## 11.3    C. Fourteenth Amendment Due Process Violation Established

The Fourteenth Amendment Due Process claim is substantively identical to the Fourth Amendment claim but provides alternative constitutional basis.

**Substantive Due Process Standard:** The Fourteenth Amendment protects against arbitrary government action that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

**Conduct That Shocks the Conscience:**

1. Detaining citizens for politely requesting badge numbers

2. Handcuffing cooperative, non-threatening individuals exercising constitutional rights

3. Confiscating recording devices to suppress evidence

4. Making false statements in federal court about clear video evidence

5. Coordinating institutional cover-up through perjury

**Deliberate Indifference:** Officers acted with deliberate indifference to Wilson's constitutional rights. They explicitly acknowledged his rights during depositions but violated them anyway, demonstrating conscious disregard. Delancy: "I know the right to travel is part of the constitution." Delancy Depo. 143:6-7.

**Arbitrary and Capricious Action:** The 15-20 second timeline between protected speech and retaliation, combined with officers' admissions of no criminal activity, proves arbitrary government action without legitimate justification.

**Deprivation of Liberty:** Wilson was deprived of liberty through handcuffing and detention without due process. Officers provided no pre-deprivation hearing, no post-deprivation remedy, and no lawful justification.

**Clearly Established Law:** Substantive due process protections against arbitrary government action have been clearly established for decades. *Rochin v. California*, 342 U.S. 165 (1952); *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

## 11.4   D. Fourteenth Amendment Equal Protection Violation Established

The Equal Protection claim addresses selective enforcement and discriminatory application of law.

**Selective Enforcement Standard:** To establish selective enforcement, plaintiff must show: (1) similarly situated individuals were treated differently, and (2) the differential treatment was based on impermissible grounds such as exercise of constitutional rights. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

**Class of One Theory:** Even without showing membership in a protected class, Wilson can prevail under "class of one" theory by showing he was intentionally treated differently from others similarly situated without rational basis. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008).

**Differential Treatment Established:**

**Similarly Situated Individuals:** Other individuals who:

- Exercise First Amendment rights to record police

- Politely request badge numbers

- Cooperate with police during encounters

- Pose no threat or danger

- Commit no crimes

These individuals are not typically handcuffed, detained, and subjected to false criminal charges.

**Impermissible Basis:** The differential treatment was based on Wilson's exercise of clearly established First Amendment rights (recording police and requesting badge numbers). This constitutes impermissible basis for differential treatment.

**Retaliation as Equal Protection Violation:** Retaliating against citizens for exercising constitutional rights violates equal protection by creating two classes: (1) those who exercise rights and face retaliation, and (2) those who do not exercise rights and face no retaliation. This arbitrary classification lacks rational basis.

**Evidence of Discriminatory Intent:** The 15-20 second timeline proves discriminatory intent. Griffin testified: "It happened very quickly after he asked for badge numbers." Griffin Depo. 23:8-9. This temporal proximity proves the differential treatment was intentional and based on protected activity.

**No Rational Basis:** Defendants provide no rational basis for treating Wilson differently from other cooperative, non-threatening individuals. Officers admitted Wilson committed no crimes and posed no threat, destroying any rational basis for differential treatment.

## 11.5   E. Genuine Issues of Material Fact Preclude Summary Judgment

All three claims—kidnapping, due process, and equal protection—present genuine issues of material fact requiring jury determination:

**Credibility Determinations:** Systematic contradictions between defendants' declarations and officers' sworn depositions create credibility issues that only a jury can resolve.

**Intent and Motivation:** Whether officers acted with deliberate indifference, discriminatory intent, or retaliatory motive presents quintessential jury questions.

**Reasonableness:** Whether the seizure and confinement were reasonable under the circumstances requires jury evaluation of all evidence, including officers' admissions and video evidence.

**Constitutional Violations:** Whether defendants' conduct "shocks the conscience" or violates clearly established rights presents mixed questions of law and fact requiring jury determination.

## 11.6   F. Defendants' "Failure to Respond" Argument Fails

Even if Wilson's Response did not explicitly address every claim by name, dismissal is inappropriate for multiple reasons:

**Substantive Overlap:** The kidnapping, due process, and equal protection claims are substantively identical to or overlap with the Fourth Amendment unlawful seizure and First Amendment retaliation claims that Wilson extensively briefed.

**Pro Se Status:** Courts construe pro se pleadings liberally and do not dismiss claims on procedural technicalities. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**Merits Over Procedure:** Summary judgment evaluates the merits of claims, not whether every argument was explicitly addressed. The evidence establishes genuine issues of material fact for all claims.

**Opportunity to Respond:** This sur-reply provides comprehensive response to defendants' arguments, curing any alleged procedural deficiency.

**Bad Faith Argument:** Defendants' attempt to obtain dismissal through procedural gamesmanship rather than on the merits demonstrates bad faith and consciousness that these claims have substantial merit.

## 11.7   G. Conclusion on These Claims

The kidnapping, due process, and equal protection claims are established through:

1. Officers' sworn admissions of no criminal activity and "incorrect" charges

2. Video evidence contradicting defendants' false statements

3. 15-20 second timeline proving retaliatory and arbitrary action

4. Systematic perjury demonstrating consciousness of wrongdoing

5. Clearly established constitutional law

These claims must proceed to jury trial along with all other constitutional claims. Defendants' procedural argument fails and their motion for summary judgment on these claims must be denied.

# 12   XI. CRIMINAL REFERRAL MANDATORY UNDER FEDERAL LAW

## 12.1   A. Court's Duty to Address Criminal Conduct

This Court possesses authority and duty to address clear evidence of federal crimes committed in its proceedings.

**Inherent Authority:** Federal courts possess inherent authority to address criminal conduct occurring in their proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

**Perjury Prosecution Duty:** Courts have duty to refer clear evidence of perjury to appropriate authorities. *United States v. Dyer*, 20 F.3d 212, 216 (5th Cir. 1994).

**Civil Rights Violations:** Pattern of civil rights violations under color of law requires federal intervention to protect constitutional governance.

**Judicial Integrity:** Systematic false statements in federal proceedings threaten judicial integrity and require prosecutorial response.

## 12.2   B. Specific Federal Crimes Requiring Prosecution

The evidence establishes multiple federal crimes requiring immediate prosecution:

**18 U.S.C. § 242 - Civil Rights Violations:** Willful violations of constitutional rights under color of law. Maximum penalty: Life imprisonment. Elements clearly established through officer admissions and constitutional violations.

**18 U.S.C. § 1621 - Perjury:** Material false statements under oath in federal proceedings. Maximum penalty: 5 years imprisonment. Elements established through systematic contradictions between declarations and depositions.

**18 U.S.C. § 1503 - Obstruction of Justice:** Corrupt endeavor to obstruct judicial proceedings through false statements. Maximum penalty: 20 years imprisonment. Elements established through ongoing false statements about clear evidence.

**18 U.S.C. § 371 - Conspiracy:** Agreement to commit federal crimes with overt acts in furtherance. Maximum penalty: 5 years imprisonment. Elements established through coordinated violations and cover-up.

**18 U.S.C. § 241 - Civil Rights Conspiracy:** Conspiracy to violate constitutional rights. Maximum penalty: Life imprisonment. Elements established through coordinated constitutional violations.

**18 U.S.C. § 1201 - Kidnapping:** Unlawful seizure and confinement under color of law. Maximum penalty: Life imprisonment. Elements established through unlawful detention without justification.

## 12.3   C. Prosecutorial Agencies for Referral

Multiple federal agencies possess jurisdiction and should receive criminal referral:

**United States Attorney's Office - District of Oregon:** Primary prosecutorial authority for federal crimes in this jurisdiction.

**FBI Civil Rights Division:** Specialized unit for investigating civil rights violations under color of law.

**Department of Justice Civil Rights Division:** Federal oversight authority for systematic constitutional violations by law enforcement.

**Oregon State Bar:** Professional discipline for attorney defendants participating in systematic perjury and criminal conduct.

# 13    XII. CONCLUSION: CONSTITUTIONAL ACCOUNTABILITY DEMANDS JUSTICE

This case represents systematic attack on constitutional governance requiring comprehensive judicial response. Defendants' conduct transcends civil rights violations to constitute coordinated criminal enterprise threatening democratic institutions.

## 13.1    A. Summary Judgment Must Be Denied and Case Scheduled for Jury Trial

The overwhelming evidence establishes genuine issues of material fact precluding summary judgment:

1. Officer admissions directly contradict defendants' factual claims

2. Constitutional violations are clearly established and obviously unlawful

3. Systematic perjury creates credibility determinations for jury

4. Multiple federal crimes require judicial intervention

5. Municipal liability questions demand jury determination

6. Kidnapping and Fourteenth Amendment claims present genuine factual disputes

No reasonable court could grant summary judgment when defendants make false statements about their own officers' sworn testimony and clear video evidence.

## 13.2    B. Criminal Referral Is Mandatory

The systematic nature of criminal conduct requires immediate federal prosecution:

1. **Constitutional Violations:** Willful violations of clearly established rights under color of law

2. **Systematic Perjury:** Material false statements in federal proceedings

3. **Obstruction of Justice:** Ongoing false statements and evidence mischaracterization

4. **Criminal Conspiracy:** Coordinated violations and institutional cover-up

5. **Judicial Integrity:** Protection of federal court proceedings from criminal conduct

6. **Kidnapping:** Unlawful seizure and confinement without legal justification

This Court's referral will send clear message that systematic constitutional violations and perjury in federal proceedings will not be tolerated.

## 13.3   C. Constitutional Significance

This case represents test of constitutional governance and rule of law. When law enforcement officers violate clearly established rights and make false statements in federal court, judicial accountability becomes essential for democratic survival.

The evidence establishes not isolated misconduct but systematic criminal enterprise requiring comprehensive response. Only through criminal prosecution and civil accountability can constitutional governance be preserved and citizens' rights protected.

**WHEREFORE**, Wilson respectfully requests this Honorable Court:

**A.** DENY defendants' motion for summary judgment in its entirety as to all claims, including Fourth Amendment unlawful seizure, Fourth Amendment excessive force, Fourth Amendment kidnapping, First Amendment retaliation, Fifth Amendment violations, Fourteenth Amendment Due Process, Fourteenth Amendment Equal Protection, and Monell municipal liability;

**B.** SCHEDULE this matter for JURY TRIAL on all claims to allow a jury of Wilson's peers to determine liability, damages, and accountability;

**C.** ORDER immediate criminal referral to the United States Attorney's Office for the District of Oregon, FBI Civil Rights Division, and Department of Justice Civil Rights Division for prosecution under 18 U.S.C. §§ 242, 1621, 1503, 371, 241, and 1201;

**D.** ORDER criminal referral to Oregon State Bar for professional discipline of attorney defendants participating in systematic perjury and bad faith litigation tactics;

**E.** PRESERVE all claims for jury determination, including compensatory damages, punitive damages, declaratory relief, injunctive relief, and attorney's fees under 42 U.S.C. § 1988;

**F.** ORDER such other relief as this Court deems just and proper to protect constitutional governance and judicial integrity.

Respectfully submitted,


/s/ Cameron James Wilson

Pro Se Plaintiff

1312 South 44th Avenue

Yakima, Washington [98908]

503-496-9239

cam@piitp.com


**CERTIFICATE OF SERVICE**

I hereby certify that on October 28th, 2025, I served a true and correct copy of the foregoing PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT upon all parties of record by the method(s) indicated below:

Electronic filing via CM/ECF system

**Counsel for Defendants:**

Kenneth S. Montoya, OSB No. 064467

Keegan C. Murphy

Montoya Law

350 Mission St. SE, Suite 202

Salem, OR 97302

Email: kenny@montoyalaw.org; keegan@montoyalaw.org


/s/ Cameron James Wilson

Pro Se Plaintiff