Kenneth S. Montoya, OSB #064467
*kenny@montoyalaw.org*
Keegan C. Murphy
*keegan@montoyalaw.org*
Montoya Law
350 Mission St. SE, Suite 202
Salem, OR 97302
   Telephone: (503) 990-8436
   Fax: (503) 878-8598
    Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CAMERON WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF HOOD RIVER, a municipal corporation; OFFICER EMELIKE DELANCY, in his individual capacity; OFFICER AUSTIN GRIFFIN, in his individual capacity; OFFICER RYAN JUNDT, in his individual capacity,<br><br>    Defendants. | Case No. 3:24-cv-2033-JR<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

    In his second sur-response opposing Defendants' Motion for Summary Judgment ("Second Sur-Response"), Plaintiff only repeats the same arguments that Defendants' prior three briefs have soundly refuted. As explained in further detail below, Plaintiff's claims still fail as a matter of law such that summary judgment is appropriate.

Page 1 – **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I.      UNLAWFUL ARREST CLAIM

    A.      "Post-Hoc Rationalization"

Plaintiff's first argument remains that Defendants' asserted justification for his detention in handcuffs—that Defendants had probable cause to believe Plaintiff had violated ORS 819.430 by concealing his VIN number—is a supposedly impermissible post-hoc justification. In previous briefing, Defendants pointed out that Sergeant Delancy, in fact, specifically mentioned the VIN issue during the stop—objective evidence that he was considering the issue at the time of detention. Defendants' Response to Sur-Reply in Support of Motion for Summary Judgment at 2 (ECF No. 45). Now, however, Plaintiff apparently argues that Sergeant Delancy did not mention the VIN issue early enough. Plaintiff points out that he was detained in handcuffs prior to Sergeant Delancy's mention of his VIN, a fact which he claims is the smoking gun supposedly revealing that Sergeant Delancy's suspicions regarding the VIN were developed as an after-the-fact justification for the detention. The only crucial information that Plaintiff's timeline leaves out is the timestamps.

On Sergeant Delancy's body worn camera footage, he begins the process of taking Plaintiff into custody and reading him his *Miranda* rights at 1:01. Declaration of Sergeant Delancy in Support of Motion for Summary Judgment ("Delancy Decl.") Ex. A at 1:01. After finishing the handcuffing process 25 seconds later, the *very first thing* Sergeant Delancy says is that "[Plaintiff's] vehicle does not have registration. The VIN is covered up. That you cannot do." Delancy Decl. Ex. A at 1:26. There is no evidence or other rational reason for Plaintiff to assert—or a reasonable trier of fact to believe—that in those 25 seconds Sergeant Delancy went from having no basis of any kind for the detention to suddenly having somehow invented a

reason. Officers are not required to articulate every thought or suspicion they might have that justifies a detention at any point during an encounter, much less prior to placing an individual in handcuffs. *Devenpeck v. Alford*, 543 U.S. 146, 155, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) ("While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required."). That Sergeant Delancy followed that rule and did not vocalize his concerns regarding the concealed VIN until after Plaintiff was in handcuffs does not lend any support to Plaintiff's contention that this was somehow a post-hoc rationalization for his arrest.

However, even if Sergeant Delancy had not been considering ORS 819.430 at the time of the detention, that still would not have been unlawful. Try as Plaintiff might, he cannot evade the well-settled law: "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996). "[An officer's] subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153. "The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* Plaintiff claims that Defendants misapply *Whren* and *Devenpeck* but does not appear to dispute the rule that those cases articulate. *See* Second Sur-Response at 3 ("*Devenpeck* requires that objective probable cause must have existed for *some* crime at the time of the arrest."). Thus, whether and when Sergeant Delancy subjectively considered ORS 819.430 has no part to play in the analysis—all

Page 3 –   DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

that matters is whether he had objective probable cause to believe Plaintiff had violated some criminal law at the time of detention.

### B. Probable Cause

Plaintiff argues that Sergeant Delancy lacked probable cause to arrest him for violating ORS 819.430. In his Second Sur-Response, Plaintiff sets out the four different elements of ORS 819.430: (1) possession of a vehicle, (2) a covered VIN number, (3) knowledge of concealment, and (4) that the purpose of concealment is to conceal the vehicle's identity. Second Sur-Response at 4-5. Plaintiff's Second Sur-Response expressly concedes that elements (1) and (3) are satisfied here as he possessed his car and knew the VIN number was covered. Second Sur-Response at 4-5. Moreover, in conceding that he knew the VIN was covered in element (3), Plaintiff's response appears to also concede that the VIN itself was actually covered as required for element (2). Second Sur-Response at 5. Accordingly, the issue of probable cause in this case turns on whether there was a "fair probability" that Plaintiff's purpose in covering the VIN was to conceal his vehicle's identity. *See Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) ("probable cause" means that there must be a "'fair probability' that a crime was committed").

As Defendants have previously argued, there is substantial evidence to support Sergeant Delancy's belief that Plaintiff was attempting to conceal his vehicle's identity. In addition to seeing the covered VIN, Sergeant Delancy observed that Plaintiff had removed the license plates from his vehicle, attempted to leave the scene of the traffic stop, and refused to return to the vehicle where Plaintiff likely knew his registration would be checked. Motion for Summary Judgment at 9. In his Second Sur-Response, Plaintiff attempts to break these facts down individually and point out that each one could have innocuous explanations unrelated to concealing the vehicle's identity. Second Sur-Response at 5-6. As the Ninth Circuit has explained, that sort of "divide-and-conquer analysis" of the facts in a probable cause determination is improper. *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013).

Page 4 –  DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Viewed independently, it is common for the individual acts that support probable cause to have one or more possibly benign explanations. *Id.* However, "taken together they [may] warrant [] further investigation." *Id.* That is why probable cause is determined based on the totality of the circumstances. *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 966 (9th Cir. 2001).

Here, the totality of the circumstances presented to Sergeant Delancy was a vehicle with all external means of identification removed and a suspect who had immediately attempted to walk away from the traffic stop, refusing to return where he would be expected to provide the information necessary to confirm the vehicle's identity. Taken together, it was reasonable for Sergeant Delancy to conclude based on this information that there was at least a fair probability that the suspect was attempting to prevent the vehicle's identity from being discovered, including by covering the VIN number. That is sufficient to give rise to probable cause as a matter of law and defeats Plaintiff's Fourth Amendment unlawful arrest claim.

    C.    *Qualified Immunity*

Even if Plaintiff were correct that Sergeant Delancy lacked probable cause to believe he violated ORS 819.430, his Fourth Amendment unlawful arrest claim would fail due to qualified immunity. In the context of a claim that the plaintiff was arrested without probable cause, qualified immunity applies unless the plaintiff can show that "all reasonable officers would agree that there was no probable cause in this instance." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1078 (9th Cir. 2011). If it can even be reasonably argued that probable cause existed—that is, if any reasonable officer would argue that there was probable cause—then Plaintiff's claim necessarily must fail. *Johnson v. Barr*, 79 F.4th 996, 1005 (9th Cir. 2023). Here, even if the facts cited in the previous section fall short of actual probable cause, Defendants' argument is still reasonable such that qualified immunity applies and they are entitled to summary judgment. Defendants are aware of no case law addressing a similar situation in which the court held that the officer's actions were unlawful. Moreover, Sergeant Delancy's belief that he had probable

Page 5 –    **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

cause is hardly unreasonable, much less so unreasonable that *all* reasonable officers would necessarily have to disagree with him.

Notably, Plaintiff devotes a considerable portion of his Second Sur-Response to the argument that the doctrine of qualified immunity is fundamentally flawed and should be overturned. While Plaintiff may feel that way, it does not change the fact that qualified immunity is the current law as established by the United States Supreme Court. This Court lacks the authority to overturn or ignore the Supreme Court's decisions and therefore must reject Plaintiff's argument. *See Johnson v. O'Malley*, No. 23-CV-481 JLS (AHG), 2024 U.S. Dist. LEXIS 104797, at *12 (S.D. Cal. June 11, 2024) (rejecting plaintiff's argument that court should overturn doctrine of sovereign immunity because "[w]ithout exception, federal district courts are bound by Supreme Court precedent").

## II.     EXCESSIVE FORCE CLAIM

Plaintiff next argues that the use of handcuffs was excessive force because there was not probable cause to arrest him and, even if there was, the factors outlined in *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989), still do not support the use of handcuffs. Second Sur-Response at 9. As has already been briefed here and in previous responses, Defendants had probable cause to arrest Plaintiff and are protected by qualified immunity in doing so. That alone is dispositive, as regardless of however Plaintiff may analyze the *Graham* factors, the Ninth Circuit has concluded as a matter of law that the Fourth Amendment permits the use of handcuffs when making a valid arrest. *Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022) ("[a] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest." (quoting *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002))).

Additionally, handcuffs were permitted here as a function of the officers' authority to control Plaintiff's movements during a traffic stop during the stop when he was uncooperative.

This issue has been briefed several times, so rather than repeat those arguments again here Defendants would instead refer the Court back to those sections. *See* Defendants' Motion for Summary Judgment at 7 (ECF No. 30); Defendants' Reply in Support of Motion for Summary Judgment at 4 (ECF No. 39); Defendants' Response to Plaintiff's Sur-Reply in Support of Motion for Summary Judgment at 4 (ECF No. 44). Accordingly, summary judgment is appropriate.

## III.     FIRST AMENDMENT CLAIM

Plaintiff claims that Defendants misread and misapply *Nieves v. Bartlett*, 587 U.S. 391, 404, 407, 139 S. Ct. 1715, 204 L.Ed.2d 1 (2019), but again he does not appear to advance a different interpretation. To prevail on a First Amendment retaliatory arrest claim, *Nieves* requires that a plaintiff either (1) prove that there was not probable cause for his arrest, or (2) prove that Defendants arrested only Plaintiff and not other similarly situated individuals. *Id.* As has been briefed extensively now, Sergeant Delancy had probable cause to arrest Plaintiff. Moreover, Plaintiff offers no evidence of similar situated individuals who were not arrested. That alone defeats his retaliatory arrest claim.

Additionally, even if Plaintiff could clear the *Nieves* hurdle by proving the absence of probable cause or differential treatment, he still does not offer sufficient evidence to create an issue for trial regarding whether the officers' intentions in detaining him were retaliatory. In his Second Sur-Response, Plaintiff maintains that his case as to causation is "not mere 'temporal proximity'" but rather a "direct, causal link." Second Sur-Response at 10. However, the only actual evidence Plaintiff cites to is temporal proximity—the approximately 15 second timeframe between when he asked for the officers' badge numbers and them placing him under arrest. Second Sur-Response at 10. As has been previously briefed, that temporal proximity is not sufficient standing alone to create a triable issue of fact when Defendants have articulated other

legitimate reasons for the detention.  Defendants' Response to Plaintiff's Sur-Reply in Support of Motion for Summary Judgment at 6 (ECF No. 44).

Lastly, as to Plaintiff's alternative theory that Defendants violated his First Amendment rights by terminating Plaintiff's video recording of the encounter, Plaintiff argues that "the video record shows that when Delancy took the phone from Plaintiff's hand, the recording stopped." Second Sur-Response at 13.  That is inaccurate.  As Defendants previously briefed in greater detail in their original reply in support of summary judgment, Plaintiff's cell phone recording stops after the word "be" in Sergeant Delancy's statement that "Sir. Okay. You're going to be detained right now."  Reply in Support of Motion for Summary Judgment (ECF No. 39) at 8; Declaration of Keegan Murphy in Support of Reply in Support of Motion for Summary Judgment (ECF No. 40) Ex A at 0:50.  The interaction is viewable on the officers' body worn camera footage, which plainly reflects that at that exact moment Sergeant Delancy tells Plaintiff that he is "going to be detained right now" the cell phone is in Plaintiff's hand, not any of the officers' hands:



Page 8 –   **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Declaration of Officer Austin Griffin in Support of Motion for Summary Judgment Ex A at 5:19. It is not possible that the officers were the ones to stop the recording and, as a result, there is no triable question of fact regarding whether the officers directly interfered with Plaintiff's recording of the encounter.

## IV.   JUDICIAL ESTOPPEL

Plaintiff argues that several Defendants took positions during their depositions that are inconsistent with their position now on summary judgment such that they should be estopped from changing them under the doctrine of judicial estoppel. Second Sur-Response at 14. As a preliminary matter, it is unclear to Defendants whether the doctrine of judicial estoppel even applies to deposition testimony inconsistent with a later position taken before the court. However, far more importantly, none of the statements Plaintiff references are inconsistent with Defendants' later positions on summary judgment.

Plaintiff first points out that Sergeant Delancy admitted during depositions that Plaintiff has a right to record the police and request badge numbers. Second Sur-Response at 10. Sergeant Delancy was correct to do so because Plaintiff does indeed have those rights. Defendants have never maintained differently—in fact, they expressly acknowledged as much in prior briefing. Defendants' Reply in Support of Motion for Summary Judgment at 6 (ECF No. 39) ("Defendants do not dispute that by filming the officers and asking for their badge numbers, Plaintiff was engaged in protected First Amendment activity.").

Plaintiff next claims that Sergeant Delancy "admitted that Plaintiff was cooperative and posed no threat." Second Sur-Response at 10. Plaintiff offers no specific citations to Sergeant Delancy's deposition, but as best Defendants can tell he is referring to Sergeant Delancy's statements on pages 45 and 64 of his deposition transcript respectively that Plaintiff did not pose any threat of physical harm to him and that Plaintiff was cooperative during the handcuffing process. Delancy Dep. 45:18-24 ("Q: Did Mr. Wilson appear to pose any immediate threat to

Page 9 –   **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

you or other officers? A: To me, definitely not."); 64:6-7 (Q: Was Mr. Wilson cooperative during the handcuffing process? A: Yes, he were [*sic*]. Absolutely. Absolutely."). Again, Defendants have not taken a position contrary to either of these statements. Defendants have not argued at any point that Plaintiff threatened Sergeant Delancy's safety during the encounter. Moreover, although Defendants do argue that Plaintiff was uncooperative with officers' commands to return to his vehicle prior to his detention, Sergeant Delancy's statement concerns the handcuffing process which Defendants have never argued Plaintiff was uncooperative during.

Plaintiff argues that Sergeant Delancy admitted Plaintiff could not be arrested for obstruction of justice. Delancy Dep. 49:25-50:3. That is correct. However, once again, Defendants have not taken a contrary position on summary judgment and, indeed, affirmatively admitted the point in prior briefing. Defendants' Reply in Support of Motion for Summary Judgment at 3 (ECF No. 39) ("It is true that there is no obstruction of justice statute in Oregon, nor would the closest analog—the interfering with a peace officer statute, ORS 162.247—have applied in this case. Sergeant Delancy readily admitted this mistake during his deposition.").

Finally, Plaintiff argues that Officer Griffin admitted during his deposition that Plaintiff "committed no crime past that point." Second Sur-Response at 14. The exchange Plaintiff appears to have been referencing appears on page 18 of Officer Griffin's deposition, wherein Plaintiff asks Officer Griffin if he "possess[ed] reasonable suspicion that Mr. Wilson had committed, was committing, or was about to commit a crime? Yes or no?" Griffin Dep. 18:2-4. Officer Griffin responded that "[b]eyond what I've already stated, no. No crime past that point." Griffin Dep. 18:5-6. As Defendants have previously addressed, it is unsurprising that Officer Griffin would answer that he did not have reasonable suspicion of a crime as he was not the officer who observed Plaintiff's concealed VIN. *See* Reply in Support of Summary Judgment (ECF No. 39) at 3. Plaintiff cannot attempt to impute Officer Griffin's statement that he did not

have reasonable suspicion of a crime to Sergeant Delancy, who observed an entirely different set of facts and circumstances and formed his own conclusions.

## V. MONELL CLAIM

Plaintiff argues that he has produced evidence giving rise to a triable issue of fact about whether the City of Hood River had an official policy of violating individuals' constitutional rights. Second Sur-Response at 17. Specifically, Plaintiff claims that Chief Holste created official policy sanctioning the alleged violation of Plaintiff's constitutional rights by choosing not to discipline the officers involved after the fact. Second Sur-Response at 17. There are many problems with this theory, including that it is well established that a final policymaker's "mere failure to discipline" an employee falls short of establishing official policy for purposes of *Monell* as a matter of law. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022). However, most problematic is that Plaintiff's argument mixes up the timeline and causation here. The City's failure to discipline the individually named defendants after the fact for allegedly violating Plaintiff's constitutional rights cannot have been the cause of the supposed violations themselves. By the time that the City is reviewing Defendants' conduct and deciding whether to discipline, the individual Defendants' conduct and the alleged constitutional violations have already occurred. Because the municipal policy at issue must be the "moving force behind the constitutional violation," Plaintiff's failure to discipline theory fails as a matter of law. *Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020).

Plaintiff next argues that his claim can also succeed on a "pattern or practice" theory under *Monell* because he has "provided evidence of a pattern and practice of retaliation against citizens who exercise their First Amendment rights." Second Sur-Response at 17. However, it is entirely unclear what evidence Plaintiff is referring to because his Second Sur-Response does not cite to it. Plaintiff vaguely references some deposition testimony where one or more unnamed officers supposedly testified that they "view requests for badge numbers as a form of

insubordination that must be punished." Second Sur-Response at 17. However, Plaintiff provides no supporting citation to the deposition transcript because none of the officers ever testified to anything even remotely like that. Plaintiff also argues that "[t]he speed with which [the officers] moved from Plaintiff's request [for badge numbers] to his arrest . . . demonstrates that this was not an isolated incident." Second Sur-Response at 17. As previously briefed, no rational trier of fact could conclude from the timeframe alone between Plaintiff's request for badge numbers and his detention that the officers' actions were retaliatory, much less infer from it that a pattern of other similar instances of retaliation must have occurred. To prevail on a pattern or practice claim, Plaintiff must actually produce evidence of other similar instances sufficient to show a "practice[ ] of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Gordon v. Cty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). Because he has not done so here, his claim must be dismissed.

Finally, regarding Plaintiff's failure to train theory, he argues that he has stated a claim for trial because "[t]he officers in this case demonstrated a fundamental ignorance of basic constitutional law." Second Sur-Response at 18. Plaintiff claims that the officers "believed they could arrest someone for asking for a badge number," "believed they could fabricate charges and change their justifications after the fact," and "believed they could confiscate a phone to stop a citizen from recording." Second Sur-Response at 18. From this, Plaintiff evidently infers that the City must have failed to adequately train the officers. Second Sur-Response at 18.

Defendants strongly dispute Plaintiff's claims. There is no evidence here that any Defendant believed they could lawfully arrest Plaintiff for requesting a badge number, fabricate charges, or confiscate Plaintiff's cell phone just because they wanted him to stop recording. However, that is ultimately unimportant. Even if Defendants had believed those things and violated Plaintiff's constitutional rights, that would still fail to make out a viable failure to train claim as a matter of law. It is well established that "an inadequate training policy itself cannot be

inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022). "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Here, Plaintiff's argument asks this Court to do exactly what *Hyde* forbids and infer a deficient training policy based solely on a single contact during which Defendants supposedly violated his rights. Accordingly, his claim necessarily fails and Defendants are entitled to summary judgment.

## VI. FOURTEENTH AMENDMENT CLAIMS

### A. *Substantive Due Process*

Plaintiff argues that Defendants violated his substantive due process rights by "engag[ing] in a campaign of perjury and fabrication designed to cover up their unlawful arrest of Plaintiff." Second Sur-Response at 19. Notably, this formulation of the claim appears to be directed toward Defendants' actions during the process of defending this lawsuit, accusing them of "[lying] about the basis for the arrest," "[lying] about the phone confiscation," and "[lying] about Plaintiff's cooperation." Second Sur-Response at 19. Unsurprisingly, given that it concerns actions taken after this case was filed rather than during Plaintiff's encounter with Defendants, this theory does not appear anywhere in Plaintiff's Amended Complaint. The Amended Complaint alleges only a violation of Plaintiff's substantive due process rights based on "Defendants' disregard for Plaintiff's stated position and his disability-related needs, specifically the need to adjust his prosthetic limb," that "effectively denied [Plaintiff] a reasonable accommodation." Amended Complaint at 14 (¶14) (ECF No. 13). This new theory also differs from the argument that Plaintiff previously advanced in his first sur-response that Defendants violated his substantive due process rights by allegedly detaining him and confiscating his cell phone unlawfully. Plaintiff's Sur-Reply in Opposition to Defendants' Motion for Summary Judgment at 16 (ECF No. 44). Plaintiff is not free to change the nature of

Page 13 – **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

the claim asserted against Defendants as the moment may suit him. Rather, he must rely on the theories he has asserted in his pleadings. *La Asociacion De Trabajadores De Lake v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("[Plaintiff] may not effectively amend [the] Complaint by raising a new theory . . . in its response to a motion for summary judgment."). That alone is fatal to his argument.

However, even if this theory of the claim was properly before the court, it would still fail as a matter of law. Although Plaintiff's responses repeatedly assert his belief that Defendants lied during this case about what happened during various parts of the encounter, they provide no actual evidence to back up Plaintiff's accusations. For instance, Plaintiff asserts his belief that that Defendants lied about the basis for his arrest, yet Defendants have presented evidence that they were considering the VIN issue at the time of the arrest. *See* Defendants' Response to Plaintiff's Sur-Reply in Support of Motion for Summary Judgment at 2 (ECF No. 44). In response, Plaintiff has offered no actual evidence to call Defendants' position into question. Similarly, Plaintiff claims that Defendants lied about his phone having been confiscated and the recording terminated, yet Plaintiff has presented no evidence responding to the breakdown of the video that Defendants have offered that shows the phone in Plaintiff's hand at the precise moment the recording stopped. *See* Reply in Support of Motion for Summary Judgment at 8 (ECF No. 39). Plaintiff's beliefs standing alone do not make an issue for trial.

Lastly, even if Plaintiff had presented some sort of evidence to create a dispute as to the truth of Defendants' statements, it is not even clear then that he would have a viable claim for trial. Plaintiff cites no legal authority which holds that the due process clause protects him against false statements made by government agents in the course of defending themselves in a civil proceeding. To be sure, it is well-established that the government violates an individual's due process rights when it uses false evidence to deprive them of life, liberty, or property in a proceeding against that individual, such as a criminal prosecution or juvenile dependency

Page 14 –  **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

proceeding.  *See Rieman v. Vazquez*, 96 F.4th 1085, 1093 (9th Cir. 2024).  However, Defendants are aware of no legal authority that applies that principle in reverse to a proceeding in which the government acts as defendant and is not attempting to deprive the Plaintiff of life, liberty, or property.

In sum, Plaintiff's substantive due process claim fails because his theory is unpled, because Plaintiff has failed to raise a genuine issue of fact for trial, and because the law does not permit Plaintiff to recover on the theory he presents.  Accordingly, Defendants are entitled to summary judgment on this claim.

      B.     *Procedural Due Process*

In his Amended Complaint, Plaintiff asserts a claim that Defendants "deprived Plaintiff of his liberty without affording him procedural safeguards required by the Fourteenth Amendment" such as a "lawful justification or hearing mechanism for the detention."  Amended Complaint at 14 (¶13) (ECF No. 13).  In their reply to Plaintiff's first sur-response, Defendants pointed out that there is no authority requiring that Plaintiff receive a pre-detention hearing before an arrest.  Defendants' Response to Sur-Reply in Support of Motion for Summary Judgment at 11 (ECF No. 45).  Now, leaning more on the "lawful justification" part, Plaintiff argues that his procedural due process claim was never about a hearing and is instead about the officers allegedly lacking probable cause, reasonable suspicion, or other justification for detaining him.  Second Sur-Response at 19.

Even if Plaintiff were correct that the officers lacked probable cause or other lawful justification for the detention, he provides no authority suggesting that those issues would be a violation of his procedural due process rights.  The only case that Plaintiff cites to in his argument, *Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L.Ed.2d 662 (1986), is about whether negligent conduct can violate the due process clause.  It has nothing to do with whether an arrest allegedly unsupported by probable cause, reasonable suspicion, or any other

basis violates procedural due process. Indeed, no case that Defendants can find or that Plaintiff has cited to endorses the idea that a detention unsupported by probable cause or reasonable suspicion violates the Due Process Clause. Interpreting the Due Process Clause that way would be redundant, as those issues are already covered by the Fourth Amendment's prohibition on unreasonable seizures. There is no basis for expanding the Due Process Clause to duplicate the Fourth Amendment's protections and, as a result, Defendants are entitled to summary judgment on this claim.

### C. "Class of One" Claim

Finally, regarding his "class of one" equal protection claim, Plaintiff acknowledges in his Second Sur-Response that he is required to provide evidence of a comparator similarly situated "in all material respects" and that the comparator must be real, rather than hypothetical. Second Sur-Response at 20; *see also SmileDirectClub, Ltd. Liab. Co. v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022) ("We join our sister circuits in holding that a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects."). However, Plaintiff maintains that his proposed comparator—"every other citizen who exercises his First Amendment right to record the police and ask for badge numbers"—is not hypothetical; Plaintiff is just unable to identify the class members individually. Second Sur-Response at 20. Regardless of how Plaintiff may characterize the problem, it is still fatal to his claim.

"An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (internal quotation marks omitted). This is because generically grouping all non-injured people into a comparator class fails to ensure an adequate degree of similarity between plaintiff and the allegedly preferred class members. Without proof that comparators are similarly situated to the plaintiff in all material respects, the fact that they were treated differently says nothing about the defendant's reasons for doing so. *See Furnace v.*

*Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) ("The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified.").

Here, Plaintiff's proposed comparator class of "everyone else who has recorded police or asked for a badge number" is far too broad to enable any meaningful comparison. That group encompasses an extremely wide range of individuals in different circumstances interacting with officers other than defendants. Plaintiff offers no evidence of any other individuals who defendants did not detain despite them driving a vehicle without license plates and a concealed VIN, attempting to leave the scene of the traffic stop, and refusing to cooperate with the officers' order to return to the vehicle. The fact that other unspecified individuals may have recorded or requested the badge numbers of other officers and were not detained during the course of the encounter says nothing about Defendants' motivations and falls well short of Plaintiff's burden to produce a comparator similar in "all material respects." Accordingly, Defendants are entitled to summary judgment on this claim.

## CONCLUSION

In sum, Plaintiff's repetition of the same arguments and incendiary accusations cannot make up for the flaws in his claims that Defendants have repeatedly pointed out. Plaintiff was validly detained based on both the officers' probable cause to believe he had committed a crime and their authority to control his movements when he failed to cooperate with lawful orders to return to his vehicle. Despite Plaintiff's best efforts to twist that simple truth into something more—be it retaliation for exercising his First Amendment rights, kidnapping, unconstitutional discrimination, or a coverup conspiracy—the evidence simply fails to bear out his claims. Because Plaintiff fails to produce evidence sufficient to give rise to a genuine issue of material fact for trial, Defendants respectfully request that this Court grant summary judgment and dismiss all claims against them.

DATED this 17th Day of December, 2025.

                                                   Keegan C. Murphy, OSB #194264
                                                   Kenneth S. Montoya, OSB #064467
                                                   Attorneys for Defendants

Page 18 –  **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANTS' REPLY TO PLAINTIFF'S SECOND SUR-RESPONSE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on:

> Cameron Wilson
> 1312 South 44th Avenue
> Yakima, Washington 98908
>     Pro Se

by the following indicated method or methods:

☒   by **electronic means through the Court's Case Management/Electronic Case File system** on the date set forth below;

☐   by **emailing** a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;

☐   by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to plaintiff's last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below.

DATED this 17th day of December, 2025.

_____
Keegan C. Murphy, OSB #194264
Kenneth S. Montoya, OSB #064467
Attorneys for Defendants