**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**CAMERON JAMES WILSON,**

    *Plaintiff,*

    v.

**CITY OF HOOD RIVER; EMELIKE DELANCY, individually and in his official capacity; AUSTIN GRIFFIN, individually and in his official capacity; RYAN JUNDT, individually and in his official capacity,**

    *Defendants.*

**Case No. 3:24-cv-02033-JR**

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION (ECF No. 52)**

**ORAL ARGUMENT REQUESTED**

# PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE RUSSO'S
# FINDINGS AND RECOMMENDATION

*Filed Pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b),*

*and the Order of Referral (ECF No. 53)*

1

2

**Cameron James Wilson**

*In Propria Persona Sui Juris*

1312 South 44th Avenue

Yakima, Washington 98908

Telephone: (503) 496-9239

Electronic Mail: cam@piitp.com

*Plaintiff, Pro Se*

# Contents

**1 INTRODUCTION**      **1**

**2 STANDARD OF REVIEW**      **3**

  2.1 De Novo Review Is Mandatory . . . . . . . . . . . . . . . . . . . . . . . .   3

  2.2 The Unyielding Summary Judgment Standard . . . . . . . . . . . . . . . .   3

  2.3 Heightened Scrutiny in § 1983 Cases: The Tolan Mandate . . . . . . . . . . . . . . .   4

  2.4 Pro Se Liberal Construction . . . . . . . . . . . . . . . . . . . . . . . . .   5

**3 THE MAGISTRATE JUDGE'S FOUNDATIONAL ERROR: THE OBJECTIVE FALSITY OF THE "NO CONTRADICTION" FINDING**      **5**

  3.1 The Central False Premise . . . . . . . . . . . . . . . . . . . . . . . . . .   5

  3.2 Contradiction No. 1: The "Traffic Stop" Mischaracterization Destroys Reasonable Suspicion Under *Terry* and Probable Cause Under *Beck* . . . . . . . . . . . . . . .   6

  3.3 Contradiction No. 2: The Fabricated "Obstruction of Justice" Charge Destroys Probable Cause Under *Beck* and *Devenpeck*—and Is the Core of This Entire Case .   8

  3.4 Contradiction No. 3: The VIN Post-Hoc Timeline Violates the Contemporaneous Probable Cause Requirement . . . . . . . . . . . . . . . . . . . . . . .   10

  3.5 Contradiction No. 4: The "Walked Away" Mischaracterization Creates a Mandatory Jury Question Under *Nieves* . . . . . . . . . . . . . . . . . . . . . .   11

  3.6 Contradiction No. 5: The Absence of Any Identification Request Before Arrest Destroys the Legal Basis for Detention . . . . . . . . . . . . . . . . . . .   13

  3.7 Contradiction No. 6: The Badge Number Timing Contradiction Creates a Jury Question Under *Nieves* and *Gonzalez* . . . . . . . . . . . . . . . . . . . . .   14

  3.8 The Cumulative Effect: The Magistrate Judge Crossed the Constitutional Line . . .   14

**4 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**      **16**

**5 SPECIFIC OBJECTIONS TO FACTUAL FINDINGS**      **19**

5.1   Objection 1: The Magistrate Judge Erred in Finding Plaintiff Was the Subject of a "Traffic Stop" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

5.2   Objection 2: The Magistrate Judge Erred by Completely Omitting the Fabricated "Obstruction of Justice" Charge  . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

5.3   Objection 3: The Magistrate Judge Erred in Adopting the Post-Hoc "VIN" Rationalization  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

5.4   Objection 4: The Magistrate Judge Erred in Finding Plaintiff "Attempted to Walk Away" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

5.5   Objection 5: The Magistrate Judge Erred in Finding Plaintiff Was Asked for Identification Before Arrest  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

5.6   Objection 6: The Magistrate Judge Erred in Finding Officers "Asked" Plaintiff to Return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

5.7   Objection 7: The Magistrate Judge Erred in Finding Officers "Provided" Badge Numbers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

5.8   Objection 8: The Magistrate Judge Erred in Her Characterization of the Phone Seizure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

5.9   Objection 9: The Magistrate Judge Erred in Finding Plaintiff Was "Fully Cooperative" While Simultaneously Justifying His Arrest . . . . . . . . . . . . . . . . . .  27

5.10  Objection 10: The Magistrate Judge Erred in Finding No Evidence of First Amendment Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

6   SPECIFIC OBJECTIONS TO LEGAL CONCLUSIONS                                    29

6.1   Objection 11: The Magistrate Judge Erred in Her Fourth Amendment Analysis by Ignoring the Fabricated Charge . . . . . . . . . . . . . . . . . . . . . . . . . .  29

6.2   Objection 12: The Magistrate Judge Erred in Her Excessive Force Analysis  . . . .  30

6.3   Objection 13: The Magistrate Judge Erred in Her Equal Protection Analysis  . . . .  31

6.4   Objection 14: The Magistrate Judge Erred in Granting Qualified Immunity . . . . .  32

6.5   Objection 15: The Magistrate Judge Erred in Dismissing the *Monell* Claim . . . . .  34

6.6    Objection 16: The Magistrate Judge Erred by Ignoring the Miranda Implications . .    35

6.7    Objection 17: The Magistrate Judge Erred by Failing to Apply the Fruit of the

Poisonous Tree Doctrine   . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

6.8    Objection 18: The Magistrate Judge Erred in Dismissing Bystander Liability for

Officers Griffin and Jundt  . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36

6.9    Objection 19: The Magistrate Judge Erred by Failing to Consider the Totality of

the Circumstances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    37

**7   CONCLUSION**                                                                          **38**

# 1.   INTRODUCTION

*"The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts."* — **West Virginia State Board of Education v. Barnette**, 319 U.S. 624, 638 (1943).

COMES NOW Plaintiff, Cameron James Wilson, proceeding *in propria persona sui juris*, and hereby submits these Objections to Magistrate Judge Jolie A. Russo's Findings and Recommendation ("F&R") (ECF No. 52), entered on March 13, 2026, pursuant to 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure 72(b), and the Order of Referral (ECF No. 53), which afforded the parties fourteen (14) days to file specific written objections.[1]

The F&R recommends granting Defendants' Motion for Summary Judgment (ECF No. 30) in its entirety and dismissing this action. In reaching this recommendation, the Magistrate Judge concluded that there is "no contradiction of defendants' facts by the evidence in the record." (F&R at 4). This conclusion is not merely erroneous—it is demonstrably and irreconcilably false when measured against the sworn deposition testimony of the Defendant Officers themselves and the verbatim transcript of the body-worn camera footage.

The F&R commits the precise constitutional error condemned by the Supreme Court in *Tolan v. Cotton*, 572 U.S. 650 (2014): it resolves genuine disputes of material fact in favor of the moving party, credits Defendants' post-hoc rationalizations over real-time evidence, and ignores the non-moving party's evidence entirely. The Magistrate Judge's analysis is infected by three fundamental errors that permeate the entire recommendation:

**First**, the F&R completely omits the actual, stated basis for Plaintiff's arrest: "Obstruction of Justice"—a charge that Defendant Delancy admitted under oath *does not exist as a statute or code in Oregon*. (Delancy Dep. at 4170–4201).[2] Instead, the F&R adopts Defendants' post-hoc

---

[1] The deadline for objections was extended to May 11, 2026, by Order of the Honorable Adrienne Nelson (ECF No. 56), following Plaintiff's Emergency Motion for Extension of Time (ECF No. 54), which was filed due to Plaintiff's hospitalization at Harborview Medical Center following a motorcycle accident on March 16, 2026.

[2] All deposition citations reference the page numbers of the deposition transcripts as filed in the record. "Tr." refers

rationalization—the "covered VIN"—as the undisputed basis for detention, despite the transcript proving the VIN was not mentioned until *after* Plaintiff was already in handcuffs. (Tr. at 7).

**Second**, the F&R characterizes the encounter as a "traffic stop" of Plaintiff, when the undisputed evidence—including Defendant Delancy's own sworn testimony—establishes that officers stopped a *different vehicle* for speeding, that Plaintiff was already parked and not operating his vehicle, and that the encounter was "not a traffic stop in the traditional sense." (Delancy Dep. at 5132–5148).

**Third**, the F&R ignores the officers' own admissions that Plaintiff was never asked for his identification prior to being handcuffed (Delancy Dep. at 6813–6851), that Plaintiff was "cordial" throughout the encounter (Tr. at 18), that asking for badge numbers does not constitute obstruction (Delancy Dep. at 4109–4116; Jundt Dep. at 2635–2806), and that no citations were issued for any offense. (Tr. at 25).

These are not minor discrepancies. They are genuine disputes of material fact that go to the heart of every constitutional claim in this action. Under the mandatory standard of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and the heightened scrutiny required in § 1983 cases under *Tolan*, summary judgment must be denied where, as here, the evidence viewed in the light most favorable to the nonmoving party creates genuine issues for trial.

Plaintiff respectfully requests that this Honorable Court conduct a *de novo* review pursuant to 28 U.S.C. § 636(b)(1)(C), reject the F&R in its entirety, deny Defendants' Motion for Summary Judgment, and set this matter for a jury trial—as is the Creator-endowed right of every citizen to have his claims heard by a jury of his peers. U.S. Const. amend. VII.

---

to the body-worn camera transcript. "F&R" refers to the Magistrate Judge's Findings and Recommendation (ECF No. 52).

# 2.    STANDARD OF REVIEW

## 2.1.    De Novo Review Is Mandatory

When a party timely objects to a magistrate judge's findings and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

De novo review is not a rubber stamp. It requires the district court to independently evaluate the evidence and legal conclusions, giving no deference to the magistrate judge's findings on disputed issues. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (en banc). This is particularly critical where, as here, the magistrate judge's factual findings are contradicted by the evidentiary record.

## 2.2.    The Unyielding Summary Judgment Standard

Summary judgment is appropriate *only* if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has established an unyielding framework for this analysis:

- A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

- "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

3

- The court must "view the evidence in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

- All justifiable inferences must be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

- "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

The nonmoving party need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The question is whether the evidence, viewed favorably to the nonmovant, presents a sufficient disagreement to require submission to a jury. *Anderson*, 477 U.S. at 251–52.

## 2.3.  Heightened Scrutiny in § 1983 Cases: The Tolan Mandate

In *Tolan v. Cotton*, 572 U.S. 650 (2014), the Supreme Court issued a per curiam reversal of a lower court that had granted summary judgment and qualified immunity by failing to view the evidence in the light most favorable to the plaintiff. The Court held:

> *"In holding that Cotton's actions did not violate clearly established law, the Fifth Circuit failed to view the evidence at summary judgment in the light most favorable to Tolan with respect to the central facts of this case. By failing to credit evidence that contradicted some of its key factual conclusions, the court improperly 'weigh[ed] the evidence' and 'resolve[d] disputed issues in favor of the moving party.' " Id.* at 657.

The Magistrate Judge's F&R commits the exact error condemned in *Tolan*. By concluding there is "no contradiction of defendants' facts," the Magistrate Judge improperly weighed the evidence, credited Defendants' post-hoc rationalizations, and ignored the devastating admissions in the officers' own depositions.

4

## 2.4.    Pro Se Liberal Construction

Pleadings and filings by *pro se* litigants must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The court has a duty to ensure that *pro se* litigants do not lose their right to a hearing on the merits due to technicalities. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

# 3.    THE MAGISTRATE JUDGE'S FOUNDATIONAL ERROR: THE OBJECTIVE FALSITY OF THE "NO CONTRADICTION" FINDING

## 3.1.    The Central False Premise

The Findings and Recommendation issued by Magistrate Judge Jolie A. Russo on March 13, 2026, rests upon a single, sweeping declaration that functions as the load-bearing wall of the entire recommendation:

> **"I find no contradiction of defendants' facts by the evidence in the record."** (F&R at 4).

This statement is not a matter of competing inferences, reasonable disagreement, or judicial discretion.  It is objectively, demonstrably, and irreconcilably false when measured against the sworn deposition testimony of the Defendant Officers themselves and the verbatim transcript of the body-worn camera footage. The Defendant Officers—under oath, subject to penalty of perjury—provided testimony that directly contradicts the factual narrative the Magistrate Judge adopted wholesale from Defendants' briefing.

The Supreme Court has been unequivocal: "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine

5

whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. By declaring that no contradiction exists in the record, the Magistrate Judge did precisely what the Supreme Court forbids: she weighed the evidence, resolved disputes in favor of the moving party, and determined the truth of the matter—all functions reserved exclusively for the jury.

This error is not harmless. It is structural. Because the Magistrate Judge's "no contradiction" declaration is false, every legal conclusion that flows from it is built upon a false factual foundation. The Fourth Amendment analysis is corrupted. The First Amendment analysis is corrupted. The Excessive Force analysis is corrupted. The Qualified Immunity analysis is corrupted. The *Monell* analysis is corrupted. Each must be reviewed *de novo* by this Court, and each must be reversed.

*Falsus in uno, falsus in omnibus*—false in one thing, false in everything. The Magistrate Judge's foundational factual premise is false, and therefore the entire edifice constructed upon it must fall.

## 3.2. Contradiction No. 1: The "Traffic Stop" Mischaracterization Destroys Reasonable Suspicion Under *Terry* and Probable Cause Under *Beck*

**(a) The F&R's Finding:** The Magistrate Judge states that "plaintiff Wilson was stopped after defendant police officers observed him driving a vehicle without registration plates." (F&R at 2). The F&R treats this as an undisputed predicate fact and uses it to justify the entire encounter.

**(b) The Contradiction:** The body-worn camera transcript and Defendant Delancy's sworn deposition testimony directly contradict this finding. The transcript establishes that officers were conducting a stop on a *different vehicle*—an SUV that had been speeding. It was only after Defendant Delancy exited his patrol vehicle to approach that other vehicle that he noticed Plaintiff's car already parked. Delancy's own words, captured in real time, were: "He don't have plate on his car. So call him back. Call him back!" (Tr. at 1). Plaintiff was already parked. Plaintiff was not "stopped." Plaintiff was not operating a moving vehicle. The officers did not initiate a traffic stop

6

on Plaintiff.

Under oath, Defendant Delancy confirmed this sequence:

Q: "Was Mr. Wilson operating his vehicle when you made contact?"

A: "No." (Delancy Dep. at 5132–5135).

Q: "So this was actually not a traffic stop in the traditional sense, was it?"

A: "No." (Delancy Dep. at 5145–5148).

Defendant Griffin further confirmed the consensual nature of the encounter in his own deposition. (Griffin Dep. at 3).

**(c) Why This Contradiction Is Material:** The distinction between a traffic stop and a consensual encounter is not semantic. It is constitutionally dispositive. Under *Terry v. Ohio*, 392 U.S. 1 (1968), an investigatory stop requires, at minimum, reasonable articulable suspicion that criminal activity is afoot. Under *Florida v. Bostick*, 501 U.S. 429 (1991), a consensual encounter requires no suspicion at all—but it also creates no legal obligation to comply with officer requests. If this was a consensual encounter, as Delancy and Griffin admitted, then Plaintiff had an absolute constitutional right to decline to provide identification, to ask for badge numbers, and to walk away. *Florida v. Royer*, 460 U.S. 491 (1983). The Magistrate Judge's mischaracterization of the encounter as a "traffic stop" retroactively manufactures a legal duty that never existed, and uses that manufactured duty to justify every subsequent action by the officers.

**(d) Which Legal Standards This Affects:**

- **Fourth Amendment:** Without a valid traffic stop, there was no lawful basis to detain Plaintiff or demand his compliance. *Terry v. Ohio*, 392 U.S. 1 (1968).

- **First Amendment:** In a consensual encounter, Plaintiff's refusal to comply and his request for badge numbers are absolutely protected speech. *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995).

- **Qualified Immunity:** No reasonable officer could believe he has authority to arrest a person in a consensual encounter for declining to provide identification. *Kolender v. Lawson*,

7

461 U.S. 352 (1983).

**(e) Why Summary Judgment Cannot Be Granted:** Whether the encounter was a traffic stop or a consensual encounter is a genuine dispute of material fact. A reasonable jury, viewing the transcript and the officers' own admissions, could conclude that Plaintiff had no legal obligation to comply with any officer command, that no reasonable suspicion existed to justify a detention, and that the entire encounter was constitutionally infirm from its inception. This dispute alone precludes summary judgment. *Anderson*, 477 U.S. at 248.

## 3.3.   Contradiction No. 2: The Fabricated "Obstruction of Justice" Charge Destroys Probable Cause Under *Beck* and *Devenpeck*—and Is the Core of This Entire Case

**(a) The F&R's Finding:** The Magistrate Judge's F&R never once mentions the charge of "Obstruction of Justice." The word "obstruction" does not appear in the F&R's factual recitation. The F&R instead adopts the post-hoc rationalization of a "covered VIN" as the basis for the detention and arrest.

**(b) The Contradiction:** The body-worn camera transcript is unambiguous. Defendant Delancy stated, in real time, while placing Plaintiff in handcuffs: "I'm detaining you for obstruction." (Tr. at 4). This was the contemporaneous, stated basis for the arrest. Not the VIN. Not the plates. Obstruction.

Under oath, Defendant Delancy was confronted with this fact:

Q: "Obstruction of justice is not a statute or code in Oregon, is it?"

A: "No, it's not." (Delancy Dep. at 4170–4201).

Defendant Delancy arrested Plaintiff for a crime that does not exist in the State of Oregon. He then admitted this under oath. The Magistrate Judge's F&R does not mention this admission. It does not address it. It does not analyze it. It simply omits it entirely.

8

**(c) Why This Contradiction Is Material:** This is not a peripheral disputed fact. This is the core of this entire case. Probable cause requires a reasonable belief that a person has committed an actual, existing crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). An arrest predicated upon a charge that does not exist as a statute cannot, as a matter of law, be supported by probable cause. *Henry v. United States*, 361 U.S. 98 (1959).

The actual Oregon obstruction statutes—ORS 162.235 (Obstructing Governmental or Judicial Administration) and ORS 162.247 (Interfering with a Peace Officer)—require specific elements that Plaintiff's conduct does not satisfy. ORS 162.247 requires that a person "refuses to obey a lawful order by [a] peace officer" and that the refusal "creates a risk of public injury." Asking for a badge number creates no such risk. Delancy himself admitted: "Can requesting badge numbers constitute obstruction of justice?" "No." (Delancy Dep. at 4109–4116).

**(d) The *Devenpeck* Preemption:** Defendants will inevitably argue that under *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), an arrest may be justified by probable cause for *any* offense, not merely the one stated by the officer at the time. This argument fails for two independent reasons. *First*, *Devenpeck* strictly requires that probable cause for the unstated offense exist *at the moment of arrest*. Because the VIN was not discovered until *after* Plaintiff was already in handcuffs (Tr. at 7), it cannot retroactively supply the probable cause that was absent at the moment of seizure. *Beck v. Ohio*, 379 U.S. at 91 ("[P]robable cause must be assessed based on the facts known to the officer at the time of the arrest."). *Second*, the only other potential offense—driving without plates—is inapplicable because Plaintiff was not driving; he was parked. (Delancy Dep. at 5132–5135).

**(e) Which Legal Standards This Affects:**

- **Fourth Amendment:** An arrest for a nonexistent crime is a *per se* violation of the Fourth Amendment. *Beck v. Ohio*, 379 U.S. at 91.

- **First Amendment:** The fabricated charge was deployed in direct retaliation for Plaintiff's exercise of his right to ask for badge numbers. *Nieves v. Bartlett*, 587 U.S. 391 (2019).

- **Qualified Immunity:** No reasonable officer could believe that arresting a citizen for a

crime that does not exist in the jurisdiction is lawful. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

- *Monell*: Three officers participated in an arrest for a nonexistent crime, demonstrating a systemic failure to train. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

**(f) Why Summary Judgment Cannot Be Granted:** The Magistrate Judge's entire qualified immunity analysis is built on the VIN rationalization—a justification that was never articulated at the moment of arrest. A reasonable jury, hearing Delancy's real-time statement ("I'm detaining you for obstruction") and his deposition admission ("Obstruction of justice is not a statute or code in Oregon"), could find that the arrest was made without probable cause, that the VIN was a post-hoc fabrication, and that the arrest violated clearly established Fourth Amendment law. The omission of this central fact from the F&R is not a minor oversight; it is a structural error that voids the qualified immunity analysis entirely.

## 3.4.  Contradiction No. 3: The VIN Post-Hoc Timeline Violates the Contemporaneous Probable Cause Requirement

**(a) The F&R's Finding:** The F&R relies on the "covered VIN" as the legal basis for Plaintiff's detention. (F&R at 2–3).

**(b) The Contradiction:** The transcript establishes an unambiguous timeline: Plaintiff was handcuffed at page 4 of the transcript. The VIN was not mentioned until page 7 of the transcript— *after* Plaintiff was already in handcuffs. (Tr. at 4, 7). The VIN was not the reason for the arrest. It was the reason offered *after* the arrest had already occurred.

**(c) Why This Contradiction Is Material:** The Fourth Amendment requires that probable cause exist *at the moment of arrest*, not at some later point in time. *Beck v. Ohio*, 379 U.S. at 91. "[P]robable cause must be assessed based on the facts known to the officer at the time of the arrest." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Post-hoc rationalizations cannot retroactively supply probable cause that did not exist at the moment of the seizure. *Florida*

10

*v. J.L.*, 529 U.S. 266 (2000). If the VIN was not mentioned until after the handcuffing, it cannot serve as the legal basis for the arrest.

**(d) Which Legal Standards This Affects:**

- **Fourth Amendment:** The VIN cannot retroactively supply probable cause. *Beck*, 379 U.S. at 91.

- **Qualified Immunity:** The entire qualified immunity defense is built on the VIN. If the VIN was post-hoc, the defense collapses.

- **Fruit of the Poisonous Tree:** The VIN observation was the product of an unconstitutional initial seizure. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

**(e) Why Summary Judgment Cannot Be Granted:** A reasonable jury, reviewing the transcript page-by-page, could find that the VIN was a post-hoc rationalization designed to justify an arrest that was actually made for a nonexistent charge. This creates a genuine dispute of material fact that precludes summary judgment.

## 3.5.  Contradiction No. 4: The "Walked Away" Mischaracterization Creates a Mandatory Jury Question Under *Nieves*

**(a) The F&R's Finding:** The Magistrate Judge states that Plaintiff "attempted to walk away from the scene." (F&R at 2). This characterization is used to justify the officers' escalation and the application of force.

**(b) The Contradiction:** Officer Ryan Jundt, under oath, provided the definitive account of what actually occurred:

Q: "Did Mr. Wilson turn to address you?"

A: "I believe he did, yes." (Jundt Dep. at 2635–2644).

Q: "Was that threatening in any way?"

A: "No." (Jundt Dep. at 2770–2774).

11

Plaintiff did not attempt to flee. Plaintiff did not attempt to evade arrest. Plaintiff turned to ask Officer Jundt—the third officer present—for his name and badge number. This is protected First Amendment activity. *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995).

**(c) Why This Contradiction Is Material:** The characterization of Plaintiff's movement as "walking away" is used by the Magistrate Judge to justify both the arrest and the force used. If Plaintiff was actually turning to ask for a badge number—as Officer Jundt admitted under oath— then the legal analysis changes entirely. Under the First Amendment retaliation framework of *Nieves v. Bartlett*, 587 U.S. 391 (2019), and *Gonzalez v. Trevino*, 602 U.S. 653 (2024), a plaintiff can defeat qualified immunity by showing that officers took adverse action against him in direct response to his protected speech. Here, Plaintiff was handcuffed within seconds of asking for a badge number. (Tr. at 4–5). This is precisely the type of "objective evidence" that *Gonzalez* contemplates as sufficient to create a triable issue of retaliatory motive.

**(d) Which Legal Standards This Affects:**

- **First Amendment:** The temporal proximity between the badge request and the arrest is objective evidence of retaliation. *Gonzalez v. Trevino*, 602 U.S. 653 (2024).

- **Fourth Amendment:** Turning to address a third officer is not "flight" and cannot justify escalation. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

- **Excessive Force:** If Plaintiff was not fleeing, the force used was objectively unreasonable. *Graham v. Connor*, 490 U.S. 386 (1989).

**(e) Why Summary Judgment Cannot Be Granted:** Whether Plaintiff was "walking away" or turning to ask for a badge number is a genuine dispute of material fact. Officer Jundt's sworn testimony directly contradicts the Magistrate Judge's characterization. A reasonable jury could find for Plaintiff on this point, and that finding would require denial of qualified immunity on the First Amendment retaliation claim.

### 3.6.  Contradiction No. 5: The Absence of Any Identification Request Before Arrest Destroys the Legal Basis for Detention

**(a) The F&R's Finding:** The F&R implies that Plaintiff was uncooperative and refused to comply with lawful officer requests. (F&R at 2–3).

**(b) The Contradiction:** Defendant Delancy admitted under oath that he never asked Plaintiff for his name or identification before placing him in handcuffs:

Q: "Did you ask Mr. Wilson for his name?"

A: "No, I didn't." (Delancy Dep. at 6813–6821).

The transcript confirms this. Plaintiff himself stated: "You haven't even given me a chance." (Tr. at 8). Plaintiff was arrested before he was ever given the opportunity to comply with any request.

**(c) Why This Contradiction Is Material:** Even in a valid investigatory stop under *Terry*, an officer must first make a request before concluding that a person is being uncooperative. *Brown v. Texas*, 443 U.S. 47 (1979) (requiring that any demand for identification be reasonably related to the circumstances justifying the stop). If Plaintiff was never asked for identification, he cannot be said to have refused to provide it. The entire premise of the "obstruction" charge collapses. A person cannot obstruct an investigation that has not yet been initiated by any lawful request.

**(d) Which Legal Standards This Affects:**

- **Fourth Amendment:** Without a refusal to comply, there is no basis for escalation. *Brown v. Texas*, 443 U.S. at 52.

- **Due Process:** Plaintiff was denied the opportunity to be heard before being seized. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

- **Qualified Immunity:** No reasonable officer could believe it is lawful to arrest a person for failing to provide identification that was never requested.

**(e) Why Summary Judgment Cannot Be Granted:** A reasonable jury, hearing Delancy's admission that he never asked for identification, could find that there was no lawful basis for the

arrest, that Plaintiff was never given an opportunity to comply, and that the arrest was therefore constitutionally infirm. This is a genuine dispute of material fact that precludes summary judgment.

### 3.7. Contradiction No. 6: The Badge Number Timing Contradiction Creates a Jury Question Under *Nieves* and *Gonzalez*

**(a) The F&R's Finding:** The F&R states that officers "provided" badge numbers. (F&R at 2).

**(b) The Contradiction:** Plaintiff was arrested *while* asking Officer Jundt for his badge number. Jundt admitted he "was prepared" to provide it but never did so before the arrest occurred. (Jundt Dep. at 2764–2774). The transcript confirms that Plaintiff was asking for badge numbers in real time when Delancy initiated the handcuffing. (Tr. at 4–5).

**(c) Why This Contradiction Is Material:** The right to request the identification of police officers is a clearly established First Amendment right. *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995). The causal nexus between the badge number request and the arrest—separated by mere seconds—is precisely the "objective evidence" that *Gonzalez v. Trevino*, 602 U.S. 653 (2024), identifies as sufficient to overcome the *Nieves* bar on First Amendment retaliation claims. The temporal proximity between the protected speech and the adverse action is so compressed that a reasonable jury could find retaliatory motive as the but-for cause of the arrest.

**(d) Why Summary Judgment Cannot Be Granted:** Whether the badge number request caused the arrest is a genuine dispute of material fact. The 15-to-20-second timeline from request to handcuffing, combined with Jundt's admission that the request was "not threatening," creates a jury question that cannot be resolved at summary judgment.

### 3.8. The Cumulative Effect: The Magistrate Judge Crossed the Constitutional Line

Each of the foregoing contradictions, standing alone, would be sufficient to preclude summary judgment. Taken together, they establish that the Magistrate Judge's "no contradiction" declaration

14

is not merely erroneous—it is a wholesale abandonment of the summary judgment standard.

The Supreme Court's instruction in *Tolan v. Cotton*, 572 U.S. 650, 657 (2014), could not be more directly applicable:

> *"By failing to credit evidence that contradicted some of its key factual conclusions, the court improperly 'weigh[ed] the evidence' and 'resolve[d] disputed issues in favor of the moving party.' "*

The Magistrate Judge's F&R commits this exact error.  She credited Defendants' post-hoc rationalizations (the VIN, the "traffic stop") while ignoring the officers' own real-time statements ("I'm detaining you for obstruction") and their own sworn deposition admissions ("Obstruction of justice is not a statute or code in Oregon").  She characterized Plaintiff's movement as "walking away" while ignoring Officer Jundt's sworn testimony that Plaintiff was turning to ask for a badge number and that this was "not threatening." She implied Plaintiff was uncooperative while ignoring Delancy's admission that he never asked for identification.

The Constitution and the Federal Rules of Civil Procedure are clear: **the judge's task at summary judgment is not to decide which version of the facts is true, but only to determine whether a reasonable jury could find for the nonmoving party.** *Anderson*, 477 U.S. at 249–50. In this case, a reasonable jury could—and should—find for Plaintiff on every claim. The Magistrate Judge crossed the constitutional line by making that determination herself. This Court must correct that error by rejecting the F&R, denying summary judgment, and setting this matter for a jury trial.

**Judicial Estoppel:** Furthermore, Defendants cannot now claim in their briefing that this was a lawful traffic stop while simultaneously admitting under oath that it was "not a traffic stop in the traditional sense."  The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is clearly inconsistent with a position previously taken. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Defendants are bound by their sworn deposition testimony.

15

## 4.   STATEMENT OF GENUINE DISPUTES OF MATERIAL

## FACT

The Magistrate Judge's conclusion that there is "no contradiction of defendants' facts" (F&R at 4) is demonstrably false. The following matrix identifies fourteen (14) genuine disputes of material fact where the F&R's findings are directly contradicted by the body-worn camera transcript and the Defendant Officers' own sworn deposition testimony.

| No. | Subject | F&R Finding | Citation | Contradicting Evidence |
|---|---|---|---|---|
| 1 | The "Traffic Stop" | Plaintiff was "stopped" after officers observed him driving without plates. | F&R at 2 | Officers stopped a *different* vehicle for speeding. Plaintiff was already parked. Delancy: "Not a traffic stop in the traditional sense." (Delancy Dep. at 5132–5148; Tr. at 1–2). |
| 2 | The Fabricated Charge | Omits the actual basis for arrest ("Obstruction of Justice"). | F&R at 2 | Delancy arrested Plaintiff for "Obstruction of Justice." Delancy admits this charge does not exist in Oregon. (Tr. at 4; Delancy Dep. at 4170–4201). |

16

| No. | Subject | F&R Finding | Citation | Contradicting Evidence |
|---|---|---|---|---|
| 3 | The VIN Timeline | Relies on the covered VIN as the basis for detention. | F&R at 2 | The VIN was not mentioned until *after* Plaintiff was handcuffed. The stated basis was "obstruction." (Tr. at 4, 7). |
| 4 | Plaintiff's Movement | Plaintiff "attempted to walk away from the scene." | F&R at 2 | Plaintiff turned to ask Jundt for badge number. Jundt: "I believe he did, yes." Request was "not threatening." (Jundt Dep. at 2635–2774). |
| 5 | Identification | Implies Plaintiff refused to cooperate. | F&R at 2 | Delancy: "Did you ask Mr. Wilson for his name? No, I didn't." (Delancy Dep. at 6813–6821). Plaintiff: "You haven't even given me a chance." (Tr. at 8). |
| 6 | Order vs. Request | Officers "asked" Plaintiff to return. | F&R at 2 | Delancy: "No, I didn't ask. I said, you're going to come back down to your vehicle." Not polite. (Delancy Dep. at 8482–8489). |

| No. | Subject | F&R Finding | Citation | Contradicting Evidence |
|---|---|---|---|---|
| 7 | Badge Numbers | Officers "provided" badge numbers. | F&R at 2 | Plaintiff arrested *while* asking Jundt. Jundt "was" prepared but never provided before arrest. (Jundt Dep. at 2764–2774). |
| 8 | Phone Seizure | Phone placed in pocket "to ensure he did not stop the recording." | F&R at 2 | Recording *did* stop after seizure. (Tr. at 6). Jury could find seizure was retaliatory. |
| 9 | Cooperation | Plaintiff was "fully cooperative." | F&R at 2 | If cooperative, arrest for "obstruction" is baseless. Delancy: "And you've been cordial." (Tr. at 18). |
| 10 | Citations | Released "with warnings as to all infractions." | F&R at 3 | Delancy: "I'm not gonna issue you a citation for anything." (Tr. at 25). Zero citations issued. |
| 11 | Retaliation | "No evidence" of causal connection. | F&R at 5 | Handcuffed seconds after asking Jundt for badge number. All officers admit badge requests are not obstruction. |

| No. | Subject | F&R Finding | Citation | Contradicting Evidence |
|---|---|---|---|---|
| 12 | Prosthetic Limb | Plaintiff "never mentioned" prosthetic. | F&R at 6 | Prosthetic is visible. Verbal mention not required to trigger duty of care. Jury question. |
| 13 | Equal Protection | Plaintiff was "only individual who attempted to get out." | F&R at 6 | Plaintiff was already outside vehicle when officers arrived. Did not "get out" during a stop. (Tr. at 2). |
| 14 | Qualified Immunity | Officers did not violate clearly established law. | F&R at 7 | Arresting for a nonexistent crime ("Obstruction of Justice" in Oregon) violates clearly established Fourth Amendment law. |

# 5.  SPECIFIC OBJECTIONS TO FACTUAL FINDINGS

## 5.1.  Objection 1: The Magistrate Judge Erred in Finding Plaintiff Was the Subject of a "Traffic Stop"

**The Magistrate's Finding:** "On December 10, 2022, plaintiff Wilson was stopped after defendant police officers observed him driving a vehicle without registration plates." (F&R at 2).

**The Transcript Evidence:** The transcript proves the officers pulled over a *different* vehicle (an SUV) for speeding. When Defendant Delancy exited his patrol car for that other stop, he noticed Plaintiff's vehicle already parked.

> EMELIKE: "He dont have plate on his car. So call him back. Call him back!" (Tr. at 1).

19

AUSTIN: "We saw you on the roadway. You parked—that doesn't mean we can't talk to you." (Tr. at 2).

**The Deposition Evidence:** Defendant Delancy admitted under oath that Plaintiff was not operating his vehicle and that this was not a traditional traffic stop.

Q: "Was Mr. Wilson operating his vehicle when you made contact?"

A: "No." (Delancy Dep. at 5132–5135).

Q: "So this was an – actually not a traffic stop in the traditional sense, was it?"

A: "No." (Delancy Dep. at 5145–5148).

**Legal Analysis:** The Magistrate Judge's finding that Plaintiff was "stopped" after officers observed him driving is directly contradicted by the officers' own admissions. Plaintiff was already parked. The officers were conducting a traffic stop on a different vehicle. A reasonable jury could find that the officers lacked reasonable suspicion to initiate a *Terry* stop of Plaintiff, who was merely parked in a public space. *Terry v. Ohio*, 392 U.S. 1 (1968). The F&R's failure to view this evidence in the light most favorable to Plaintiff violates the summary judgment standard. *Tolan*, 572 U.S. at 657.

## 5.2. Objection 2: The Magistrate Judge Erred by Completely Omitting the Fabricated "Obstruction of Justice" Charge

**The Magistrate's Finding:** The F&R completely omits the fact that Defendant Delancy arrested Plaintiff for "Obstruction of Justice." Instead, the F&R frames the detention entirely around the covered VIN. (F&R at 2).

**The Transcript Evidence:** The transcript proves the stated basis for the arrest was "Obstruction of Justice," not the VIN.

EMELIKE: "I am gonna put you in handcuffs and im arr....... gonna detain you for obstruction."

CAMERON: "Obstruction?"

EMELIKE: "Yes sir, its obstruction."

CAMERON: "Obstruction of what?"

EMELIKE: "It's obstruction of justice." (Tr. at 4).

**The Deposition Evidence:** Defendant Delancy admitted under oath that "Obstruction of Justice" is not a valid charge in Oregon and that he has never charged anyone with it for exercising constitutional rights.

Q: "Obstruction of justice is not even a statute and or code to be applied in Oregon."

A: "No." (Delancy Dep. at 4170–4176).

Q: "You cannot arrest someone for the obstruction of justice in Oregon."

A: [Admitted]. (Delancy Dep. at 4185–4191).

Q: "Can requesting badge numbers constitute obstruction of justice?"

A: "No." (Delancy Dep. at 4109–4116).

**Legal Analysis:** This is the most egregious error in the F&R. The Magistrate Judge completely ignored the actual, stated basis for Plaintiff's arrest—a charge that the arresting officer admits does not exist in Oregon. An arrest for a nonexistent crime is a *per se* violation of the Fourth Amendment. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Beck v. Ohio*, 379 U.S. 89, 91 (1964). No reasonable officer could believe that arresting a citizen for a fabricated charge constitutes lawful conduct. *Henry v. United States*, 361 U.S. 98 (1959). The Magistrate Judge's complete omission of this central fact renders the entire F&R unreliable and mandates de novo review.

## 5.3.  Objection 3: The Magistrate Judge Erred in Adopting the Post-Hoc "VIN" Rationalization

**The Magistrate's Finding:** "Officer Delancy observed a piece of paper that appeared to have been placed to cover the vehicle's VIN number." (F&R at 2).

21

**The Transcript Evidence:** The transcript proves the VIN was not mentioned until *after* Plaintiff was already in handcuffs.

> [Handcuffing occurs on Page 4–6].
>
> EMELIKE: "There's no sergeant available sir. So, here's what we have. The VIN is covered up." (Tr. at 7).

**The Deposition Evidence:** Defendant Delancy attempted to use the VIN as a post-hoc justification for the detention during his deposition.

> Q: "What was the reasoning in – for detaining Mr. Wilson?"
>
> A: "Mr. Wilson had his vehicle VIN covered." (Delancy Dep. at 8501–8510).

**Legal Analysis:** The F&R adopts Defendants' post-hoc rationalization (the VIN) while ignoring the real-time evidence (the fabricated "obstruction" charge). The Supreme Court has repeatedly held that an arrest must be justified by the facts known to the officer *at the moment of the arrest*. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Facts discovered after the arrest (such as the covered VIN) cannot retroactively establish probable cause. *Henry v. United States*, 361 U.S. 98, 103 (1959). The Magistrate Judge's reliance on the post-hoc VIN rationale is reversible error.

## 5.4.   Objection 4: The Magistrate Judge Erred in Finding Plaintiff "Attempted to Walk Away"

**The Magistrate's Finding:** "[P]laintiff exited his vehicle and attempted to walk away from the scene of the traffic stop." (F&R at 2).

**The Transcript Evidence:** Plaintiff did not attempt to flee. He turned to ask the third officer (Jundt) for his badge number.

> CAMERON: "Your name and Badge number please?" [asking 3rd officer - Jundt]
>
> EMELIKE: "sir?"
>
> EMELIKE: "Okay, thats fine... you're going to be detained right now..." (Tr. at 5).

22

**The Deposition Evidence:** Defendant Jundt confirmed Plaintiff asked for his badge number and that the request was not threatening.

Q: "Did Mr. Wilson then ask you for your name and badge number?"

A: "I believe he did, yes." (Jundt Dep. at 2635–2641).

Q: "Do you view Mr. Wilson's request for your badge number as threatening?"

A: "No." (Jundt Dep. at 2764–2774).

**Legal Analysis:** The F&R mischaracterizes Plaintiff's protected First Amendment activity (asking for a badge number) as an attempt to "walk away" or flee. A reasonable jury could find that Plaintiff was merely turning to address the third officer, not attempting to evade detention. The Magistrate Judge's failure to draw this legitimate inference in Plaintiff's favor violates the summary judgment standard. *Anderson*, 477 U.S. at 255. Furthermore, even if Plaintiff had taken two steps, the right to walk away from a consensual encounter is absolute. *Florida v. Royer*, 460 U.S. 491, 497–98 (1983).

## 5.5. Objection 5: The Magistrate Judge Erred in Finding Plaintiff Was Asked for Identification Before Arrest

**The Magistrate's Finding:** The F&R implies Plaintiff was asked to cooperate and refused, leading to his detention. (F&R at 2).

**The Transcript Evidence:** Plaintiff explicitly stated he was never given a chance to provide identification before being handcuffed.

CAMERON: "It's in my car, but you haven't even given me a chance. You put me in handcuffs." (Tr. at 8).

**The Deposition Evidence:** Defendant Delancy admitted under oath that he never asked Plaintiff for his name or identification before arresting him.

Q: "Did you ask Mr. Wilson for his name?"

A: "No, I didn't. Not at that point." (Delancy Dep. at 6813–6821).

Q: "Did you ask Mr. Wilson why he just didn't have plates on his vehicle?"

A: "At that point I did not." (Delancy Dep. at 6835–6842).

**Legal Analysis:** The F&R's narrative that Plaintiff was uncooperative is destroyed by Delancy's own admission that he never even asked Plaintiff for his name before handcuffing him. An individual cannot "obstruct justice" by failing to provide identification if he is never asked for it. *Brown v. Texas*, 443 U.S. 47, 52 (1979). The Magistrate Judge's failure to credit this devastating admission is reversible error.

## 5.6.    Objection 6: The Magistrate Judge Erred in Finding Officers "Asked" Plaintiff to Return

**The Magistrate's Finding:** The F&R states that officers "asked" Plaintiff to return to his vehicle. (F&R at 2).

**The Transcript Evidence:** The transcript proves Plaintiff was not "asked"—he was ordered under threat of arrest.

EMELIKE: "Okay, sir, I'm giving you one second to walk back down with me this way, and if you choose not to I am gonna put you in handcuffs and im arr....... gonna detain you for obstruction." (Tr. at 4).

**The Deposition Evidence:** Defendant Delancy admitted under oath that he did not "ask" Plaintiff and that he was not polite.

Q: "Did you ask Mr. Wilson, can you come back down to your vehicle with us?"

A: "No, I didn't ask. I said, you're going to come back down to your vehicle." (Delancy Dep. at 8482–8489).

Q: "Did you request Mr. Wilson come back down to the vehicle in a polite manner?"

A: "No, I didn't say it in a polite manner." (Delancy Dep. at 8490–8495).

**Legal Analysis:** The distinction between a consensual "request" and a coercive "order" is fundamental to Fourth Amendment jurisprudence. *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

24

A reasonable person who is told "you're going to come back down" under threat of arrest for "obstruction" would not feel free to decline. This was a seizure, not a consensual encounter. By characterizing a threat of arrest as a mere "request," the F&R improperly sanitizes the coercive nature of the encounter and resolves a disputed fact in Defendants' favor.

## 5.7.  Objection 7: The Magistrate Judge Erred in Finding Officers "Provided" Badge Numbers

**The Magistrate's Finding:** "Plaintiff also asked the officers for their names and badge numbers which the officers provided." (F&R at 2).

**The Transcript Evidence:** The transcript proves Plaintiff was arrested *while* asking the third officer for his badge number.

CAMERON: "Your name and Badge number please?" [asking 3rd officer - Jundt]

EMELIKE: "sir?"

EMELIKE: "Okay, thats fine... you're going to be detained right now..." (Tr. at 5).

**The Deposition Evidence:** Defendant Jundt admitted he never actually provided his badge number before the arrest occurred.

Q: "Were you prepared to provide your name and badge number to Mr. Wilson?"

A: "I was." (Jundt Dep. at 2764–2774).

**Legal Analysis:** The F&R's finding that the officers "provided" their badge numbers is factually incomplete and misleading. Plaintiff was arrested precisely at the moment he asked Defendant Jundt for his badge number. Being "prepared" to provide information is not the same as having provided it. This temporal proximity is the crux of Plaintiff's First Amendment retaliation claim. *Nieves v. Bartlett*, 587 U.S. 391 (2019); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

## 5.8.   Objection 8: The Magistrate Judge Erred in Her Characterization of the Phone Seizure

**The Magistrate's Finding:** "Officer Delancy removed plaintiff's phone during the handcuffing process to ensure he did not stop the recording. He placed the phone in plaintiff's jacket pocket and advised plaintiff that he was not turning off the phone." (F&R at 2).

**The Transcript Evidence:** The transcript proves the recording *did* stop after Delancy seized the phone.

> EMELIKE: "I'll put your phone in your pocket so it won't be turned off so it can still be heard..."
>
> *(Handcuffing sounds, brief scuffle, recording ends)* (Tr. at 6).

**The Deposition Evidence:** The officers' depositions confirm the phone was seized from Plaintiff's hand while he was engaged in the protected First Amendment activity of recording police officers.

**Legal Analysis:** The F&R accepts Defendant Delancy's self-serving statement ("so it won't be turned off") as absolute truth, while ignoring the physical reality that the recording *did* stop. A reasonable jury could conclude that seizing a citizen's phone while he is recording police is a retaliatory act designed to suppress evidence, regardless of the officer's stated intent. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing First Amendment right to film police); *Riley v. California*, 573 U.S. 373 (2014) (cell phones are constitutionally protected from warrantless seizure). The Magistrate Judge's crediting of Delancy's self-serving explanation over the physical evidence is precisely the type of credibility determination reserved for the jury. *Anderson*, 477 U.S. at 255.

## 5.9.   Objection 9:  The Magistrate Judge Erred in Finding Plaintiff Was "Fully Cooperative" While Simultaneously Justifying His Arrest

**The Magistrate's Finding:** "During the handcuffing process plaintiff was fully cooperative." (F&R at 2).

**The Transcript Evidence:** The transcript proves Plaintiff was cooperative, cordial, and provided all requested information.

> EMELIKE: "And you've been cordial. That's why I'm not issuing anything." (Tr. at 18).
>
> CAMERON: "I've been real cordial, right?"
>
> EMELIKE: "Yeah. I'm not gonna give you a cit...." (Tr. at 25).

**The Deposition Evidence:** Defendant Jundt confirmed Plaintiff was not rude or threatening.

> Q: "Do you view Mr. Wilson's request for your badge number as threatening?"
>
> A: "No." (Jundt Dep. at 2764–2774).

**Legal Analysis:** The F&R contains an irreconcilable internal contradiction. If Plaintiff was "fully cooperative" and "cordial," as the officers admit, then the arrest for "Obstruction of Justice" is demonstrably baseless. A cooperative citizen cannot be obstructing justice. The Magistrate Judge failed to recognize that Plaintiff's cooperation destroys the probable cause justification for his arrest. This internal contradiction alone creates a genuine dispute of material fact that precludes summary judgment.

## 5.10.   Objection 10: The Magistrate Judge Erred in Finding No Evidence of First Amendment Retaliation

**The Magistrate's Finding:** "I find no evidence on the record here that plaintiff's handcuffing had any relationship or causal connection to the protected activities he alleges." (F&R at 5).

**The Transcript Evidence:** The transcript proves Plaintiff was arrested mere seconds after asking for Defendant Jundt's badge number.

CAMERON: "Your name and Badge number please?" [asking 3rd officer - Jundt]

EMELIKE: "Okay, thats fine... you're going to be detained right now..." (Tr. at 5).

**The Deposition Evidence:** All three officers admitted that asking for badge numbers is protected First Amendment activity and does not constitute obstruction.

Q: "Do you understand that asking for badge numbers is protected First Amendment activity?"

A: "Sure." (Jundt Dep. at 2642–2650).

Q: "Is asking for badge numbers a form of obstruction of justice?"

A: "Not necessarily." (Jundt Dep. at 2651–2660).

**Legal Analysis:** The F&R's conclusion that there is "no evidence" of a causal connection ignores the temporal proximity of the events. The Ninth Circuit has repeatedly held that "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Under *Gonzalez v. Trevino*, 602 U.S. 653 (2024), a plaintiff may rely on "objective evidence" other than similarly situated comparators to establish retaliatory motive. The 15-to-20-second timeline between Plaintiff's badge number request and his arrest is precisely such objective evidence. Arresting a citizen immediately after he engages in protected speech (asking for a badge number) creates a triable issue of fact regarding retaliatory motive. *Nieves v. Bartlett*, 587 U.S. 391 (2019).

# 6.    SPECIFIC OBJECTIONS TO LEGAL CONCLUSIONS

## 6.1.    Objection 11: The Magistrate Judge Erred in Her Fourth Amendment Analysis by Ignoring the Fabricated Charge

**The Magistrate's Finding:** The F&R concludes that Defendants had probable cause to detain Plaintiff based on the covered VIN and the absence of plates. (F&R at 4–5).

**The Transcript Evidence:** The transcript proves the actual, stated basis for the arrest was "Obstruction of Justice"—not the VIN, not the plates.

> EMELIKE: "I am gonna put you in handcuffs and im arr....... gonna detain you for obstruction."
>
> CAMERON: "Obstruction of what?"
>
> EMELIKE: "It's obstruction of justice." (Tr. at 4).

The VIN was not mentioned until *after* Plaintiff was already in handcuffs. (Tr. at 7).

**The Deposition Evidence:** Defendant Delancy admitted under oath that "Obstruction of Justice" does not exist as a statute in Oregon.

> Q: "Obstruction of justice is not even a statute and or code to be applied in Oregon."
>
> A: "No." (Delancy Dep. at 4170–4176).

**Legal Analysis:** The Fourth Amendment requires probable cause at the *moment* of arrest. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). An arrest for a nonexistent crime is a *per se* Fourth Amendment violation because there can be no probable cause to believe a person has committed a crime that does not exist. *Henry v. United States*, 361 U.S. 98 (1959).

While *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), permits an arrest to be justified by probable cause for an offense other than the one stated, this principle *strictly requires* that probable cause for the alternative offense existed at the moment of arrest. Because the VIN was not discovered until after Plaintiff was already handcuffed, it cannot retroactively supply the probable

29

cause that was absent at the moment of seizure. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) ("probable cause must be assessed based on the facts known to the officer at the time of the arrest"). Similarly, the absence of plates cannot justify the arrest because Plaintiff was not operating the vehicle. (Delancy Dep. at 5132–5135).

The Magistrate Judge's failure to address the fabricated charge—the actual, stated basis for the arrest—renders the entire Fourth Amendment analysis unreliable and constitutes clear error.

## 6.2.   Objection 12: The Magistrate Judge Erred in Her Excessive Force Analysis

**The Magistrate's Finding:** The F&R concludes that the force used was objectively reasonable. (F&R at 5–6).

**The Transcript Evidence:** The transcript proves Plaintiff was cooperative, non-threatening, and had a visible prosthetic limb.

> CAMERON: "I've been real cordial, right?"
>
> EMELIKE: "Yeah." (Tr. at 25).
>
> CAMERON: "Bro, I have a prosthetic leg!" (Tr. at 6).

**The Deposition Evidence:** Defendant Jundt confirmed Plaintiff was not threatening.

> Q: "Do you view Mr. Wilson's request for your badge number as threatening?"
>
> A: "No." (Jundt Dep. at 2770–2774).

**Legal Analysis:** Under *Graham v. Connor*, 490 U.S. 386, 396 (1989), the reasonableness of force is evaluated under three factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

**Factor 1:** There was no crime. "Obstruction of Justice" does not exist in Oregon. Asking for badge numbers is not a crime. (Delancy Dep. at 4109–4116; 4170–4201).

30

**Factor 2:** Plaintiff posed no threat. Jundt admitted Plaintiff's conduct was "not threatening." (Jundt Dep. at 2770–2774). Plaintiff had a visible prosthetic limb, further reducing any conceivable threat.

**Factor 3:** Plaintiff was not resisting or fleeing. He was turning to ask for a badge number. (Jundt Dep. at 2635–2644). Delancy himself acknowledged Plaintiff was "cordial." (Tr. at 18).

All three *Graham* factors favor Plaintiff. A reasonable jury could find that handcuffing a co-operative, non-threatening individual with a prosthetic limb—for a nonexistent crime—constitutes objectively unreasonable force. *See also Sheehan v. City and County of San Francisco*, 743 F.3d 1211 (9th Cir. 2014) (officers must reasonably accommodate disabilities during arrests). The Magistrate Judge's conclusion that the force was reasonable is contradicted by the officers' own admissions and constitutes clear error.

## 6.3.   Objection 13:  The Magistrate Judge Erred in Her Equal Protection Analysis

**The Magistrate's Finding:** The F&R dismisses Plaintiff's equal protection claim, stating that Plaintiff was the "only individual who attempted to get out" of his vehicle. (F&R at 6).

**The Transcript Evidence:** Plaintiff was already outside his vehicle when officers arrived. He did not "get out" during a stop—he was already parked and standing. (Tr. at 2).

**The Deposition Evidence:** Defendant Delancy confirmed Plaintiff was not operating his vehicle when contact was made. (Delancy Dep. at 5132–5135).

**Legal Analysis:** Under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a "class of one" equal protection claim requires only that the plaintiff was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment. Plaintiff was the only individual arrested. The other driver (who was actually speeding) was not arrested, was not handcuffed, and was not charged with any crime. A reasonable jury could find that Plaintiff was singled out for disparate treatment without a rational basis, particularly given that his only distinguishing conduct was asking for badge numbers—protected First Amendment

31

activity.

## 6.4.  Objection 14: The Magistrate Judge Erred in Granting Qualified Immunity

**The Magistrate's Finding:** The F&R recommends qualified immunity for all officers, finding that they did not violate clearly established law. (F&R at 7).

**The Transcript Evidence:** The transcript proves Plaintiff was arrested for "Obstruction of Justice"—a nonexistent Oregon charge.

EMELIKE: "It's obstruction of justice." (Tr. at 4).

**The Deposition Evidence:** Defendant Delancy admitted this charge does not exist.

Q: "Obstruction of justice is not even a statute and or code to be applied in Oregon."

A: "No." (Delancy Dep. at 4170–4176).

**Legal Analysis:** Qualified immunity shields officers from liability only when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The two-prong inquiry asks: (1) whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation; and (2) whether the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

**Prong One:** As demonstrated throughout these Objections, a reasonable jury could find that Plaintiff's Fourth Amendment right to be free from arrest without probable cause was violated, that his First Amendment right to record and request badge numbers was violated through retaliatory arrest, and that excessive force was used against a cooperative, non-threatening individual with a prosthetic limb.

**Prong Two:** The right to be free from arrest for a crime that does not exist has been clearly established since the founding of the Republic. *Beck v. Ohio*, 379 U.S. 89 (1964); *Henry v.*

32

*United States*, 361 U.S. 98 (1959). No reasonable officer could believe that arresting a citizen for "Obstruction of Justice" in Oregon—a charge the officer himself admits does not exist—is lawful. This is not a case where the law was unclear or where the officer made a reasonable mistake. This is a case where the officer fabricated a charge.

**The *Hensley v. Fluor Corp.* Mandate:** Furthermore, the Supreme Court's recent decision in *Hensley v. Fluor Corp.* (U.S. April 22, 2026)—decided six weeks after the F&R was issued—articulates five principles regarding judge-made defenses that directly undermine the foundation of qualified immunity in this case. Justice Thomas, writing for a six-justice majority (Thomas, Sotomayor, Kagan, Gorsuch, Barrett, and Jackson), held that:

1. Courts cannot expand judge-made defenses beyond their historical scope without clear congressional authorization.

2. When a statute's text provides no basis for a defense, courts must apply the statute as written.

3. The proper role of the judiciary is to apply the law as enacted, not to create policy-based exceptions.

4. Judge-made defenses must be "strictly limited" and cannot be expanded by analogy.

5. Congressional silence does not constitute ratification of judicial overreach.

Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The text contains no immunity defense. Qualified immunity is entirely judge-made. Under *Hensley*'s principles, this Court should apply the statute as written and deny qualified immunity.

Even under the traditional qualified immunity framework, however, qualified immunity fails here because no reasonable officer could believe that arresting a citizen for a nonexistent crime is

33

lawful. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances").

## 6.5.    Objection 15: The Magistrate Judge Erred in Dismissing the *Monell* Claim

**The Magistrate's Finding:** The F&R dismisses the *Monell* claim against the City of Hood River, finding insufficient evidence of a policy, custom, or failure to train. (F&R at 6–7).

**The Transcript Evidence:** Three separate officers participated in the arrest. None of them intervened. None of them corrected the fabricated charge. None of them recognized that "Obstruction of Justice" is not an Oregon statute.

**The Deposition Evidence:** All three officers demonstrated ignorance of Oregon's actual obstruction statutes:

Delancy: "Obstruction of justice is not even a statute and or code to be applied in Oregon." "No." (Delancy Dep. at 4170–4176).

Jundt: "Is asking for badge numbers a form of obstruction of justice?" "Not necessarily." (Jundt Dep. at 2651–2660).

**Legal Analysis:** Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 when the execution of a government's policy or custom inflicts the injury. Liability may also attach where a municipality's failure to train its employees amounts to "deliberate indifference" to constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The fact that three separate officers—all trained by the same department—participated in an arrest for a nonexistent crime without any officer recognizing the error is powerful circumstantial evidence of a systemic failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Here, the pattern is established by the

34

simultaneous failure of all three officers present. A reasonable jury could find that the City of Hood River failed to adequately train its officers on the actual obstruction statutes of the State of Oregon, and that this failure caused the constitutional deprivation suffered by Plaintiff.

## 6.6. Objection 16: The Magistrate Judge Erred by Ignoring the Miranda Implications

**The Magistrate's Finding:** The F&R does not address the significance of the officers reading Miranda warnings to Plaintiff. (F&R passim).

**The Transcript Evidence:** Officers read Plaintiff his Miranda rights during the encounter.

EMELIKE: "You have the right to remain silent. Anything you say can and will be used against you in a court of law." (Tr. at 8).

**The Deposition Evidence:** The reading of Miranda is confirmed in the officers' reports and depositions.

**Legal Analysis:** The reading of Miranda warnings is significant for two independent reasons. *First*, Miranda warnings are required only when a person is in "custody"—i.e., when a reasonable person would not feel free to leave. *Miranda v. Arizona*, 384 U.S. 436 (1966). The officers' decision to read Miranda confirms that they understood Plaintiff was under arrest—not merely "detained" for a VIN inspection. This contradicts the F&R's characterization of the encounter as a mere investigatory detention.

*Second*, the reading of Miranda confirms that the officers believed they had probable cause to arrest Plaintiff for a *crime*—not merely to conduct an administrative VIN inspection. This is inconsistent with the post-hoc rationalization that the detention was merely to inspect the VIN. A reasonable jury could find that the officers knew they were arresting Plaintiff and that the VIN was a pretext.

35

## 6.7.  Objection 17:  The Magistrate Judge Erred by Failing to Apply the Fruit of the Poisonous Tree Doctrine

**The Magistrate's Finding:** The F&R relies on the covered VIN as the legal basis for the detention without analyzing whether the VIN observation was the product of an unconstitutional initial seizure. (F&R at 2–3).

   **The Transcript Evidence:** The VIN was not observed or mentioned until *after* Plaintiff was already in handcuffs for "Obstruction of Justice." (Tr. at 4 [handcuffing], 7 [VIN first mentioned]).

   **The Deposition Evidence:** Delancy admitted the VIN was discovered during the detention. (Delancy Dep. at 8501–8510).

   **Legal Analysis:** Under *Wong Sun v. United States*, 371 U.S. 471, 484 (1963), evidence obtained as a direct result of an unconstitutional seizure must be excluded as "fruit of the poisonous tree."  Because the initial detention was predicated on a nonexistent crime ("Obstruction of Justice"), it was an unconstitutional seizure *ab initio*.  Consequently, the subsequent observation of the covered VIN is tainted evidence that cannot retroactively justify the unconstitutional arrest. The Magistrate Judge's reliance on the VIN without conducting a *Wong Sun* analysis is reversible error.

## 6.8.  Objection 18:  The Magistrate Judge Erred in Dismissing Bystander Liability for Officers Griffin and Jundt

**The Magistrate's Finding:** The F&R grants summary judgment to all three officers without analyzing the bystander liability of Officers Griffin and Jundt. (F&R at 7).

   **The Transcript Evidence:** Officers Griffin and Jundt were present throughout the encounter. Neither intervened to prevent the arrest for a nonexistent crime.  Neither corrected Delancy's fabricated charge. (Tr. at 1–27).

   **The Deposition Evidence:** Officer Griffin admitted the encounter was consensual.  (Griffin Dep.  at 3). Officer Jundt admitted Plaintiff's conduct was "not threatening."  (Jundt Dep.  at

36

2770–2774). Despite these beliefs, neither officer intervened.

**Legal Analysis:** Under *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), an officer who is present at the scene of a constitutional violation and has a realistic opportunity to intervene but fails to do so may be held liable as a bystander. Officers Griffin and Jundt both knew—or should have known—that "Obstruction of Justice" is not a valid Oregon charge. Both had a realistic opportunity to intervene. Both failed to do so. A reasonable jury could find them liable under the bystander theory.

## 6.9.   Objection 19: The Magistrate Judge Erred by Failing to Consider the Totality of the Circumstances

**The Magistrate's Finding:** The F&R analyzes each claim in isolation, failing to consider the cumulative weight of the evidence. (F&R passim).

**The Transcript Evidence:** The totality of the encounter—from the initial mischaracterized "traffic stop" through the fabricated charge, the phone seizure, the failure to request identification, the order disguised as a request, the badge number denial, and the ultimate release with zero citations—paints a picture of a retaliatory arrest designed to punish Plaintiff for exercising his constitutional rights.

**The Deposition Evidence:** The officers' own admissions, taken together, establish that: (1) there was no traffic stop; (2) there was no valid charge; (3) there was no identification request; (4) there was no threat; (5) there was no flight; (6) there was no crime; and (7) there were no citations. A reasonable jury, considering the totality of these admissions, could find that the arrest was pretextual, retaliatory, and constitutionally infirm.

**Legal Analysis:** The Supreme Court has instructed that the totality of the circumstances must be considered in evaluating the reasonableness of a seizure. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The Magistrate Judge's piecemeal analysis—dismissing each piece of evidence in isolation—fails to account for the cumulative weight of the evidence. When viewed together, the evidence creates an overwhelming inference of constitutional misconduct that no reasonable

factfinder could ignore.

# 7.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Honorable Court:

1. **Conduct de novo review** of the Findings and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3);

2. **Reject the Findings and Recommendation** (ECF No. 52) in its entirety;

3. **Deny Defendants' Motion for Summary Judgment** (ECF No. 30) on all claims;

4. **Deny qualified immunity** to all individual Defendants, as no reasonable officer could believe that arresting a citizen for a nonexistent crime constitutes lawful conduct;

5. **Set this matter for a jury trial** on all claims, as is Plaintiff's Creator-endowed right under the Seventh Amendment to the United States Constitution;

6. **Grant oral argument** to permit Plaintiff to present the genuine disputes of material fact to this Court in person; and

7. **Grant such further relief** as this Court deems just and equitable.

*"The right to a jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment."* — **Jacob v. City of New York**, 315 U.S. 752, 752–53 (1942).

*Fiat justitia ruat caelum.*

Let justice be done though the heavens fall.

**DATED:** May 12, 2026

Respectfully submitted,


**/s/ Cameron James Wilson**

*In Propria Persona Sui Juris*

1312 South 44th Avenue

Yakima, Washington 98908

Telephone: (503) 496-9239

Electronic Mail: cam@piitp.com

*Plaintiff, Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12th, 2026, I caused a true and correct copy of the foregoing **PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOM- MENDATION** to be served upon all parties of record via the Court's CM/ECF electronic filing system and by electronic mail upon:

**Kenny Montoya**

**Keegan Murphy**

Montoya Law & Mediation

Electronic Mail: kenny@montoyalaw.org

Electronic Mail: keegan@montoyalaw.org

*Attorneys for Defendants*

**/s/ Cameron James Wilson**

*Plaintiff, Pro Se*

40