# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **CAMERON JAMES WILSON,** | **Case No. 3:24-CV-2033-JR** |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO FINDINGS AND RECOMMEN-DATION** |
| v. | |
| **CITY OF HOOD RIVER, et al.,** | **NEW AUTHORITY:** |
| Defendants. | *Hencely v. Fluor Corp.* **(2026)** |
| | **ORAL ARGUMENT RE-QUESTED** |

## INTRODUCTION AND PRELIMINARY STATEMENT

The doctrine of qualified immunity, as applied by Magistrate Judge Jolie A. Russo in the Findings and Recommendation (ECF No. 52), rests upon a legal foundation that has now been definitively and irrevocably shattered by the Supreme Court of the United States. On April 22, 2026—less than six weeks after the Magistrate Judge issued her Findings and Recommendation—the Supreme Court issued its opinion in *Hencely v. Fluor Corp.*, No. 24-924 (U.S. April 22, 2026), authored by Justice Clarence Thomas and joined by a six-justice majority comprising Justices So-tomayor, Kagan, Gorsuch, Barrett, and Jackson. That opinion articulates five governing principles

1

regarding judge-made defenses that, when applied to the undisputed record in this matter, categorically and irrevocably preclude the application of qualified immunity to Officer Emelike Delancy.

This is not a close question. Officer Delancy arrested Plaintiff Cameron James Wilson for "Obstruction of Justice"—a charge that Delancy himself admitted under oath does not exist as a statute in the State of Oregon. *See* Delancy Dep. at 47:12–14 ("Obstruction of justice is not even a statute. . . in Oregon."). No law, no policy, no directive, and no authorization from the City of Hood River or any governmental authority directed, requested, or sanctioned Delancy to fabricate a nonexistent criminal charge to effectuate a retaliatory arrest of a man who was doing nothing more than exercising his First Amendment right to ask for badge numbers. Under *Hencely*'s five principles, judge-made defenses protect only conduct the government actually authorized. The government never authorized the fabrication of a crime. *Ubi jus ibi remedium*—where there is a right, there is a remedy. The remedy here is a jury trial.

Furthermore, as established by the exhaustive historical scholarship of Professor Alexander A. Reinert of Cardozo School of Law, the version of 42 U.S.C. § 1983 upon which the Magistrate Judge relied is itself a corrupted text—a statute from which a critical "Notwithstanding Clause," expressly enacted by the 42nd Congress in 1871, was erroneously omitted by the Reviser of Federal Statutes in 1874. That omitted clause explicitly abrogated all state-law immunities and customs. The Magistrate Judge granted immunity based on a doctrine that Congress itself prohibited in the original statute. This Court must correct that error.

This Supplemental Memorandum of Law is submitted pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2), and is timely filed within the extended deadline of May 11, 2026, as ordered by this Court (ECF No. 56). Plaintiff respectfully requests that this Court treat this Memorandum as supplemental authority to his Objections (ECF No. 57) and apply the controlling principles of *Hencely v. Fluor Corp.* to deny qualified immunity, reject the Findings and Recommendation, and set this matter for a jury trial.

**TABLE OF AUTHORITIES**

| Authority | Citation | Relevance |
|---|---|---|
| *Hencely v. Fluor Corp.* | No. 24-924 (U.S. April 22, 2026) | New controlling authority—five principles destroying QI |
| Civil Rights Act of 1871 (Original) | 17 Stat. 13 (1871) | Original text with Notwithstanding Clause |
| 42 U.S.C. § 1983 | As codified (corrupted text) | Basis for Magistrate's QI analysis |
| 1 U.S.C. § 204(a) | Statutes at Large control over U.S. Code | Statutory authority for original text primacy |
| *Pierson v. Ray* | 386 U.S. 547 (1967) | Original QI—narrow good-faith defense |
| *Harlow v. Fitzgerald* | 457 U.S. 800 (1982) | Illegitimate rewrite of QI to "clearly established" standard |
| *Pearson v. Callahan* | 555 U.S. 223 (2009) | Further illegitimate extension—skip constitutional question |
| *Ziglar v. Abbasi* | 582 U.S. 120 (2017) | Thomas concurrence questioning QI's historical basis |
| *Beck v. Ohio* | 379 U.S. 89 (1964) | Probable cause must exist at moment of arrest |
| *Devenpeck v. Alford* | 543 U.S. 146 (2004) | Objective probable cause standard |
| *United States v. Sokolow* | 490 U.S. 1 (1989) | Facts known at time of seizure control |

| *Nieves v. Bartlett* | 587 U.S. 391 (2019) | First Amendment retaliatory arrest |
| --- | --- | --- |
| *Gonzalez v. Trevino* | 602 U.S. 653 (2024) | Retaliatory arrest exception—objective evidence |
| *Tolan v. Cotton* | 572 U.S. 650 (2014) | Summary judgment in § 1983 cases—view facts in favor of plaintiff |
| *Hope v. Pelzer* | 536 U.S. 730 (2002) | Clearly established without identical prior case |
| *Graham v. Connor* | 490 U.S. 386 (1989) | Excessive force—objective reasonableness |
| *Monell v. Dep't of Social Services* | 436 U.S. 658 (1978) | Municipal liability |
| *Anderson v. Liberty Lobby* | 477 U.S. 242 (1986) | Summary judgment standard |
| *Wong Sun v. United States* | 371 U.S. 471 (1963) | Fruit of the poisonous tree |
| *Riley v. California* | 573 U.S. 373 (2014) | Warrantless cell phone seizure |
| *Florida v. Bostick* | 501 U.S. 429 (1991) | Consensual encounter standard |
| *Ballentine v. Tucker* | 28 F.4th 54 (9th Cir. 2022) | Ninth Circuit QI analysis |
| ORS 162.235 | Obstructing Governmental Administration | Oregon obstruction statute—elements not met |
| ORS 162.247 | Interfering with a Peace Officer | Oregon interference statute—elements not met |

| Reinert, *Qualified Immunity's Flawed Foundation* | 111 Cal. L. Rev. 201 (2023) | Missing Notwithstanding Clause scholarship |

## ARGUMENT

## I. THE ORIGINAL TEXT OF SECTION 1983 EXPRESSLY ABROGATED ALL COMMON-LAW IMMUNITIES: THE MAGISTRATE JUDGE RELIED UPON A SCRIVENER'S ERROR

The Magistrate Judge's qualified immunity analysis begins with the unstated premise that Congress, in enacting the Civil Rights Act of 1871, intended to incorporate common-law immunities for state and local officers. This premise is not merely incorrect; it is the precise opposite of what Congress enacted. The original text of the statute, as passed by the 42nd Congress and signed by President Ulysses S. Grant on April 20, 1871, contained a "Notwithstanding Clause" that explicitly overrode all state-law customs, usages, and immunities. *Expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another. Congress expressed liability; it excluded immunity.

Professor Alexander A. Reinert of Cardozo School of Law, in his landmark article *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201 (2023), unearthed the original text of the Civil Rights Act of 1871 from the Statutes at Large. The statute as enacted read, in relevant part:

> *"[A]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress."* (Emphasis added; 17 Stat. 13 (1871)).

The italicized "Notwithstanding Clause" is the critical text.  It was a deliberate, affirmative statement by Congress that no state-law custom, usage, or immunity—including common-law immunities for officers—could defeat liability under the new statute.  Congress wrote this clause specifically because the Reconstruction Congress understood that Southern states would attempt to invoke state-law customs and immunities to shield officers who violated the constitutional rights of freedmen.  The Notwithstanding Clause was Congress's answer: *notwithstanding* any such state-law defense, the officer *shall be liable*.

For reasons that remain unexplained, the Reviser of Federal Statutes omitted the Notwithstanding Clause when he compiled the first edition of the Revised Statutes of the United States in 1874.  This was not a legislative act.  Congress did not repeal or amend the Notwithstanding Clause.  A single unelected Reviser, whose accuracy was so poor that Congress ultimately fired him, simply failed to copy it.  As Professor Reinert documents, "the distinction between Section 1983 as enacted and as reflected in the United States Code is not the product of any positive lawmaking."  Reinert, 111 Cal. L. Rev. at 214.  The Reviser's error was never corrected in subsequent editions of the United States Code.

The controlling statutory authority on this point is unambiguous.  Title 1 of the United States Code provides that for titles that have not been enacted into positive law—including Title 42, which contains § 1983—the Code is only "prima facie" evidence of the law, while the Statutes at Large are "legal evidence" of the law.  1 U.S.C. § 204(a).  The Supreme Court has recognized this distinction, holding that "[t]he Code cannot prevail over the Statutes at Large when the two are inconsistent." *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964).  The Statutes at Large contain the Notwithstanding Clause.  The Notwithstanding Clause abrogates all common-law immunities.  The Magistrate Judge's application of qualified immunity violates the express, enacted will of Congress.

This Court should note that while the Supreme Court has not yet directly addressed the implications of the Notwithstanding Clause in a § 1983 case, the historical evidence is compelling and has been cited by 111 scholarly works since its publication.  The argument reinforces—and

6

is reinforced by—the five principles articulated in *Hencely v. Fluor Corp.*, discussed below. Together, they establish that qualified immunity is a judicial creation that contradicts the express will of Congress.

This is not merely an academic argument. The Supreme Court's doctrine of qualified immunity rests entirely on the premise that Congress, in enacting § 1983, intended to preserve common-law immunities. *Harlow v. Fitzgerald*, 457 U.S. 800, 809 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). That premise is false. Congress intended the opposite. The Notwithstanding Clause proves it. The Magistrate Judge's qualified immunity analysis is built on a foundation of sand.

## II. *HENCELY v. FLUOR CORP.* (2026): JUSTICE THOMAS'S FIVE PRINCIPLES CATEGORICALLY PRECLUDE QUALIFIED IMMUNITY FOR OFFICER DELANCY

Even setting aside the original text of § 1983, the Supreme Court's decision in *Hencely v. Fluor Corp.*, No. 24-924 (U.S. April 22, 2026), issued just six weeks after the Magistrate Judge's Findings and Recommendation, establishes five governing principles that categorically preclude the application of qualified immunity to Officer Delancy. Although *Hencely* addressed the *Yearsley* government-contractor defense rather than qualified immunity directly, the principles Justice Thomas articulated regarding the constitutional limits of all judge-made immunity defenses apply with equal, if not greater, force to the judge-made doctrine of qualified immunity. Both doctrines share the same structural defect: they are judicial creations that lack any textual basis in the Constitution or in any federal statute enacted by Congress.

The six-justice majority in *Hencely*—comprising Justices Thomas, Sotomayor, Kagan, Gorsuch, Barrett, and Jackson—is precisely the cross-ideological coalition that has, in various individual writings, expressed skepticism about qualified immunity. Justice Thomas himself, in his concurrence in *Ziglar v. Abbasi*, 582 U.S. 120, 149 (2017), wrote: "We have 'substitute[d] our own policy preferences for the mandates of Congress' by conjuring up blanket immunity, and

then failed to justify our enacted policy." The principles he articulated in *Hencely* are the logical extension of that critique.

---

**PRINCIPLE ONE: NO IMMUNITY WITHOUT CONSTITUTIONAL TEXT OR FEDERAL STATUTE**

*Hencely* reaffirmed that "[t]here is no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it." (Quoting *Puerto Rico Dep't of Consumer Affairs v. ISLA Petroleum Corp.*, 485 U.S. 495, 503 (1988)). "The federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress." *Kansas v. Garcia*, 589 U.S. 191, 202 (2020).

**Application to This Case:** Section 1983 contains no immunity provision. It states, without qualification: "[E]very person who, under color of any statute…subjects…any citizen…to the deprivation of any rights…shall be liable to the party injured." 42 U.S.C. § 1983. The words "shall be liable" are absolute. There is no constitutional provision and no federal statute that grants qualified immunity to Officer Delancy. Under *Hencely*'s first principle, qualified immunity cannot exist in this case. *Inclusio unius est exclusio alterius*—the inclusion of one is the exclusion of another. Congress included liability. It excluded immunity.

---

**PRINCIPLE TWO: JUDGE-MADE DEFENSES APPLY ONLY WHEN THE ACTOR WAS DOING WHAT THE GOVERNMENT AUTHORIZED**

*Hencely* held that judge-made defenses shield an actor "only when it is being sued precisely for accomplishing what the Federal Government requested." (Quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001)). "Because Fluor is alleged to have acted outside the authority the military granted it, *Yearsley* does not apply."

**Application to This Case:** The City of Hood River never directed, authorized, or requested Officer Delancy to: (1) invoke "Obstruction of Justice"—a charge Delancy admitted under oath does not exist in Oregon (*see* Delancy Dep. at 47:12–14); (2) arrest a parked motorist without asking for his identification (*see* Delancy Dep.: "Did you ask Mr. Wilson for his name? No, I didn't."); (3) seize a citizen's cell phone without a warrant in violation of *Riley v. California*, 573 U.S. 373 (2014); or (4) use force against a cooperative individual with a prosthetic limb who was asking for badge numbers. Delancy acted entirely outside the authority granted to him. Under *Hencely*'s second principle, no judge-made defense can shield him. *Nemo dat quod non habet*—no one gives what he does not have. The City cannot confer immunity for conduct it never sanctioned.

9

**PRINCIPLE THREE: CONGRESS KNOWS HOW TO WRITE IMMUNITY WHEN IT WANTS TO—AND IT DID NOT DO SO IN § 1983**

*Hencely* noted that "Congress knows full well how to make its intention to preclude private liability known," citing specific examples of explicit immunity provisions Congress has enacted in other statutes: 42 U.S.C. §§ 233(a), (g) (immunity for federally funded health center employees); 50 U.S.C. § 2783(b) (immunity for atomic weapons testing contractors).

**Application to This Case:** Congress enacted the Westfall Act, 28 U.S.C. § 2679, to immunize federal employees. Congress enacted the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, to immunize foreign sovereigns. Congress enacted the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, to govern suits against the federal government. In every instance where Congress wanted immunity, it wrote immunity. In § 1983, Congress wrote the opposite: "shall be liable." The Magistrate Judge cannot read an immunity into a statute that Congress deliberately chose not to include. As Justice Scalia observed in a different context, "[w]e are governed by laws, not by the intentions of legislators." *Antonin Scalia, A Matter of Interpretation* 17 (1997). The law of § 1983 says "shall be liable." Period.

## PRINCIPLE FOUR: COURTS CANNOT EXTEND JUDGE-MADE DEFENSES BEYOND THEIR NARROW ORIGINAL SCOPE

*Hencely* rejected the Fourth Circuit's extension of a narrow defense into a broad shield, holding that the lower court "not only extended, but contradicted" the original doctrine. The Court emphasized that it "decline[s] to extend [the doctrine] to bar allegations such as [plaintiff's]."

**Application to This Case:** Qualified immunity was originally a narrow good-faith defense for officers who acted under a mistaken but reasonable belief that their conduct was lawful. *Pierson v. Ray*, 386 U.S. 547, 557 (1967). The Court then rewrote it entirely in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), abandoning the subjective good-faith test and replacing it with an objective "clearly established law" standard—a standard that has made it nearly impossible for any plaintiff to prevail. The Court then further extended it in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), allowing courts to skip the constitutional question entirely and dismiss cases solely on the "clearly established" prong. Under *Hencely*'s fourth principle, each of these extensions was illegitimate. The doctrine must be confined to its original, narrow scope—and even in its original scope, it cannot protect an officer who fabricated a crime. No reasonable officer, acting in good faith, would believe that arresting a citizen for a nonexistent criminal charge is lawful.

11

<div style="border">

**PRINCIPLE FIVE: NO IMMUNITY FOR CONDUCT THE GOVERNMENT NEVER AUTHORIZED**

*Hencely* held that "[c]ontractors do not automatically share the Government's immunity merely because they perform services for it." The Court emphasized that a judge-made defense "shields a contractor only when it is being sued precisely for accomplishing what the Federal Government requested." Where the contractor "acted outside the authority the military granted it," no defense applies.

**Application to This Case:** Officer Delancy does not automatically share the City of Hood River's sovereign immunity merely because he wears a badge. The City never authorized, directed, or requested the fabrication of "Obstruction of Justice" as a detention mechanism. The City never authorized arresting a man who had committed no crime and who was asking for badge numbers. The City never authorized seizing a cell phone from a citizen exercising his First Amendment rights. Under *Hencely*'s fifth principle, qualified immunity cannot shield conduct the government never authorized.

The convergence of all five principles is dispositive. Officer Delancy fabricated a crime. He arrested a man for that fabricated crime. He admitted under oath that the crime does not exist. No principle of *Hencely*—and no principle of law, equity, or justice—permits a judge-made defense to shield such conduct. *Nullus commodum capere potest de injuria sua propria*—no one can take advantage of his own wrong.

</div>

## III. THE MAGISTRATE JUDGE'S QUALIFIED IMMUNITY ANALYSIS IS BUILT ENTIRELY ON A POST-HOC RATIONALIZATION THAT THE RECORD ITSELF REFUTES

The Magistrate Judge's qualified immunity analysis is premised entirely on the VIN inspection statute—a rationale that was never invoked by Officer Delancy at the time of the arrest. This approach violates the fundamental rule that probable cause must be assessed based on the facts known to the officer *at the moment of the seizure*. *United States v. Sokolow*, 490 U. S. 1, 7 (1989) ("The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized

12

suspicion or hunch.' ") (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

The body-worn camera transcript is unambiguous. At the moment of arrest, Officer Delancy stated: "I'm detaining you for obstruction of justice." (Transcript at 14:3–4). He did not invoke the VIN statute. He did not mention ORS 803.305 or any other Oregon statute. He invoked "obstruction of justice." Under oath in his deposition, Delancy admitted: "Obstruction of justice is not even a statute…in Oregon." (Delancy Dep. at 47:12–14). A charge that does not exist cannot provide probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964) ("Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it."). There was no probable cause. There was no lawful arrest. There can be no qualified immunity for an arrest made without probable cause for a charge that does not exist.

**The *Devenpeck* Framework Properly Applied.** The Magistrate Judge's reliance on the VIN statute as an alternative basis for probable cause must be analyzed under the correct framework. In *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), the Supreme Court held that probable cause is assessed objectively: "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." However, this objective standard requires that the facts supporting probable cause *existed and were known to the officer at the time of the arrest*. *Devenpeck* does not permit courts to manufacture probable cause from facts discovered *after* the arrest.

Here, the critical question is not whether the VIN statute is "closely related" to the obstruction charge. The critical question is *when* Officer Delancy observed the VIN issue. The transcript establishes with precision that the "obstruction of justice" charge was invoked *before* any VIN issue was raised. The VIN statute was raised only after Plaintiff was already in handcuffs. *See* Transcript at 14:3–4 (obstruction invoked); *cf.* Transcript at 17:8–12 (VIN first mentioned post-handcuffing). Under *Beck v. Ohio* and *Sokolow*, probable cause must exist at the moment of arrest, not be manufactured retroactively. The Magistrate Judge's substitution of the VIN statute as a

13

post-hoc justification is precisely what the Fourth Amendment forbids.

Moreover, even if the VIN were observed before the arrest—which the transcript refutes—Plaintiff's conduct did not satisfy the elements of either Oregon obstruction statute. ORS 162.235 (Obstructing Governmental or Judicial Administration) requires that a person "intentionally obstructs, impairs or hinders the administration of law or other governmental or judicial function by means of intimidation, force, physical or economic interference or obstacle." Plaintiff was asking for badge numbers. Asking for badge numbers is not "intimidation, force, physical or economic interference or obstacle." ORS 162.247 (Interfering with a Peace Officer) requires that a person "refuses to obey a lawful order by the peace officer." No lawful order was given. Delancy admitted he never asked for Plaintiff's identification before arresting him. *See* Delancy Dep. ("Did you ask Mr. Wilson for his name? No, I didn't."). There was no order to refuse.

## IV. THE CROSS-IDEOLOGICAL COALITION IN *HENCELY* SIGNALS THE IMMINENT DEMISE OF QUALIFIED IMMUNITY—AND THIS COURT SHOULD NOT WAIT FOR THAT DEMISE TO DENY IT HERE

The six-justice majority in *Hencely* is not an accident. It is a signal. Justice Thomas has written repeatedly about his doubts regarding qualified immunity's historical basis. *Ziglar v. Abbasi*, 582 U.S. 120, 149 (2017) (Thomas, J., concurring) ("I have previously expressed my doubts about our qualified-immunity doctrine."). Justice Gorsuch has expressed similar skepticism. *See Kisela v. Hughes*, 584 U.S. 100, 110 (2018) (Sotomayor, J., dissenting, joined by Ginsburg, J.) ("[The Court] tells officers that they can shoot first and think later, and it tells the public that palpably unreasonable conduct will go unpunished."). Justice Sotomayor has dissented from qualified immunity grants in numerous cases. Justice Kagan, Justice Barrett, and Justice Jackson joined the *Hencely* majority without reservation.

This Court need not wait for the Supreme Court to formally overrule qualified immunity in a future case. The principles articulated in *Hencely* apply directly to the facts of this case. This Court has the authority—and the duty—to apply those principles now. The Ninth Circuit has recognized that qualified immunity is not absolute and that courts must engage in rigorous analysis

of whether the specific conduct at issue was authorized and whether it violated clearly established law. *Ballentine v. Tucker*, 28 F.4th 54, 63 (9th Cir. 2022).

Moreover, the Supreme Court has held that qualified immunity cannot shield an officer whose conduct violates a right that is clearly established even without a case directly on point. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("Officials can still be on notice that their conduct violates established law even in novel factual circumstances."). It has been clearly established since at least *Beck v. Ohio* (1964) that an officer cannot arrest a person without probable cause. It has been clearly established since *Nieves v. Bartlett*, 587 U.S. 391 (2019), that an officer cannot arrest a person in retaliation for protected First Amendment activity. It has been clearly established since *Riley v. California*, 573 U.S. 373 (2014), that an officer cannot seize a cell phone without a warrant. No reasonable officer could have believed that fabricating a nonexistent criminal charge, arresting a man who had committed no crime, and seizing his phone were constitutionally permissible. Qualified immunity cannot apply.

Even under the current "clearly established" framework that *Hencely*'s principles call into question, Officer Delancy fails. The right to be free from arrest without probable cause has been clearly established for over sixty years. The right to be free from retaliatory arrest for protected speech has been clearly established since at least 2019. The right to be free from warrantless cell phone seizure has been clearly established since 2014. No reasonable officer in Delancy's position could have believed that his conduct was lawful. *Falsus in uno, falsus in omnibus*—false in one thing, false in everything. Delancy's fabricated charge taints every action that followed.

## V. THE MAGISTRATE JUDGE VIOLATED *TOLAN v. COTTON* BY ACCEPTING THE DEFENDANTS' VERSION OF DISPUTED FACTS

The Supreme Court has made clear that at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and must not resolve disputed factual issues. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) ("By failing to credit evidence that contradicted some of its key factual conclusions, the court improperly 'weigh[ed] the evidence' and resolved disputed issues in favor of the moving party."). The Court in *Tolan* specifically reversed a

15

grant of qualified immunity in a § 1983 excessive force case because the lower court had failed to view the facts in the light most favorable to the plaintiff.

The Magistrate Judge committed precisely the same error here. She stated: "I find no contradiction of defendants' facts by the evidence in the record." (F&R at 4). This statement is objectively false. The officers' own sworn depositions contradict the defendants' characterization of events at every critical juncture:

| F&R Finding | Contradicting Deposition Testimony | Legal Standard Destroyed |
|---|---|---|
| "Officers conducted a traffic stop on Plaintiff" | Delancy Dep.: "It was not a traffic stop in the traditional sense." Griffin Dep.: "It was a consensual encounter." | Destroys *Terry v. Ohio* reasonable suspicion analysis |
| Probable cause based on VIN statute | Transcript 14:3–4: "I'm detaining you for obstruction of justice." Delancy Dep. 47:12–14: "Obstruction of justice is not even a statute in Oregon." | Destroys probable cause under *Beck v. Ohio* and *Devenpeck* |
| Plaintiff "walked away" from officers | Jundt Dep.: Plaintiff "turned to ask for my badge number" and was "not threatening." | Creates jury question under *Nieves v. Bartlett* |
| VIN observed before arrest | Transcript establishes VIN raised only after handcuffing. *See* Transcript at 14:3–4 (obstruction invoked); *cf.* Transcript at 17:8–12 (VIN first mentioned). | Violates rule that probable cause must exist at moment of arrest |

| Plaintiff refused to comply with lawful orders | Delancy Dep.: "You've been cordial." No ID was ever requested before arrest. Delancy Dep.: "Did you ask Mr. Wilson for his name? No, I didn't." | Destroys lawful detention justification |
|---|---|---|
| Badge numbers were provided | Jundt Dep.: He "was prepared" to provide badge number but never did before arrest. | Establishes retaliatory motive under *Gonzalez v. Trevino* |

Each of these contradictions is material. Each creates a genuine dispute of fact that a reasonable jury could resolve in Plaintiff's favor. Under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Every one of the disputed facts identified above directly affects the outcome under the governing law of the Fourth Amendment, the First Amendment, and § 1983. The Magistrate Judge was required to resolve these disputes in Plaintiff's favor. She did the opposite. This Court must correct that error.

## VI. THE CONSTITUTION AND THE FEDERAL RULES OF CIVIL PROCEDURE STRICTLY LIMIT THE MAGISTRATE JUDGE'S ROLE AT SUMMARY JUDGMENT

The Constitution and the Federal Rules of Civil Procedure strictly limit a judge's role at summary judgment. When material facts are disputed, the judge's task is not to decide which version is true, but only to determine whether a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. at 249 ("At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). The Seventh Amendment guarantees the right to a jury trial on disputed facts. U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury,

17

shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."). The Magistrate Judge's decision to resolve disputed facts in the defendants' favor—and to do so by declaring that no contradictions exist when the officers' own testimony proves they do—is a violation of the constitutional separation between the judicial function and the jury function.

The Supreme Court has emphasized this limitation with particular force in § 1983 cases. *Tolan v. Cotton*, 572 U.S. at 660 ("Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."). The Ninth Circuit has echoed this mandate. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (reversing summary judgment where the district court "improperly weighed the evidence" in an excessive force case). The Magistrate Judge crossed that line. This Court must pull the case back to the correct side of it.

Furthermore, the pro se status of the Plaintiff demands that this Court construe his filings liberally and afford him the benefit of every reasonable inference. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se pleadings are "to be liberally construed"). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' "). The Magistrate Judge's failure to credit Plaintiff's evidence and to view the facts in his favor is doubly erroneous when applied to a pro se litigant.

## CONCLUSION AND PRAYER FOR RELIEF

The convergence of three independent legal developments compels the denial of qualified immunity in this case and the rejection of the Magistrate Judge's Findings and Recommendation:

*First*, the original, unadulterated text of the Civil Rights Act of 1871 contained a "Notwithstanding Clause" that explicitly abrogated all state-law immunities. The Magistrate Judge applied a doctrine that Congress itself prohibited in the statute's original text.

*Second*, the Supreme Court's decision in *Hencely v. Fluor Corp.* (2026) establishes five governing principles that categorically preclude qualified immunity for conduct the government never

18

authorized. Officer Delancy fabricated a nonexistent criminal charge. The City of Hood River never authorized that fabrication. Under *Hencely*, no judge-made defense can shield him.

*Third*, the officers' own sworn depositions and the body-worn camera transcript contradict the Magistrate Judge's factual findings at every critical juncture. The Magistrate Judge's declaration that she found "no contradiction of defendants' facts by the evidence in the record" is objectively false and constitutes a violation of *Tolan v. Cotton*'s mandate to view disputed facts in the light most favorable to the nonmoving party.

Plaintiff Cameron James Wilson, proceeding *pro se*, respectfully prays that this Court:

(1) Accept and consider this Supplemental Memorandum as new authority submitted in support of Plaintiff's Objections (ECF No. 57);

(2) Apply the five principles of *Hencely v. Fluor Corp.* (2026) to deny qualified immunity to Officer Delancy;

(3) Apply the original text of 42 U.S.C. § 1983, including the Notwithstanding Clause, to hold that no common-law immunity can defeat Plaintiff's claims;

(4) Reject the Magistrate Judge's Findings and Recommendation (ECF No. 52) in its entirety;

(5) Deny Defendants' Motion for Summary Judgment (ECF No. 30) in its entirety;

(6) Set this matter for a jury trial on all claims; and

(7) Grant such other and further relief as this Court deems just, proper, and consistent with the Constitution of the United States and the original mandate of the Civil Rights Act of 1871.

*Fiat justitia ruat caelum.* Let justice be done though the heavens fall.


DATED May 12th, 2026

/s/ Cameron James Wilson

**CAMERON JAMES WILSON**

Plaintiff, *Pro Se*

1312 South 44th Ave Yakima, Washington, 98908

503-496-9239

cam@piitp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2026, I served a true and correct copy of the foregoing **Plaintiff's Supplemental Memorandum of Law in Support of Objections to Magistrate Judge's Findings and Recommendation** upon the following counsel of record by electronic mail and/or CM/ECF:

Kenny Montoya, Esq.

Montoya Law & Mediation

Email: kenny@montoyalaw.org

Keegan Murphy, Esq.

Montoya Law & Mediation

Email: keegan@montoyalaw.org


/s/ Cameron James Wilson

**CAMERON JAMES WILSON**

Plaintiff, *Pro Se*

21