Kenneth S. Montoya, OSB #064467
*kenny@montoyalaw.org*
Keegan C. Murphy
*keegan@montoyalaw.org*
Montoya Law
350 Mission St. SE, Suite 202
Salem, OR 97302
    Telephone: (503) 990-8436
    Fax: (503) 878-8598
    Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CAMERON WILSON,                                    Case No. 3:24-cv-2033-JR

                Plaintiff,

        v.                                         **DEFENDANTS' RESPONSE TO
                                                   PLAINTIFF'S OBJECTIONS TO
                                                   FINDINGS AND
                                                   RECOMMENDATIONS**
CITY OF HOOD RIVER, a municipal
corporation; OFFICER EMELIKE
DELANCY, in his individual capacity;
OFFICER AUSTIN GRIFFIN, in his
individual capacity; OFFICER RYAN
JUNDT, in his individual capacity,

                Defendants.

_____

Page 1 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND
DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

**TABLE OF CONTENTS**

I.      Response to Sections 3.2 and 5.1 – Nature of the Stop ......................................................6

II.     Response to Sections 3.3, 3.4, 5.2, 5.3, and 6.1 – Basis for Detention in Handcuffs..........8

III.    Response to Section 3.5 and 5.4 – First Amendment Claim and "Walking Away"..........12

IV.     Response to Section 3.6 and 5.5 – Request for Identification ..........................................13

V.      Response to Sections 3.7 and 5.10 – Retaliation for Badge Number Request ..................14

VI.     Response to Section 5.6 – Asking vs. Ordering Plaintiff to Return ..................................15

VII.    Response to Section 5.7 – Providing Badge Numbers ......................................................16

VIII.   Response to Section 5.8 – Phone Recording ....................................................................17

IX.     Response to Section 5.9 – Plaintiff's Cooperation ...........................................................19

X.      Response to Section 6.2 – Excessive Force......................................................................19

XI.     Response to Section 6.3 – Equal Protection .....................................................................20

XII.    Response to Section 6.4 – Qualified Immunity .................................................................21

XIII.   Response to Section 6.5 – Monell Claim...........................................................................27

XIV.    Response to Section 6.6 – Miranda Warnings...................................................................27

XV.     Response to Section 6.7 – Fruit of the Poisonous Tree .....................................................28

XVI.    Response to Section 6.8 – Bystander Liability ..................................................................28

XVII.   Response to Section 6.9 – Totality of the Circumstances..................................................29

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ......................................22

*City of Canton, Ohio v. Harris*,
    489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ................................................27

*Devenpeck v. Alford*,
    543 U.S. 146, 125 S. Ct. 588, 160 L. Ed. 2d. 537 (2004) ............................................8, 23

*District of Columbia v. Wesby*,
    583 U.S. 48, 138 S. Ct. 577, 199 L.Ed.2d 453 (2018) ................................... 8, 10, 22-23

*Graham v. Connor*,
    490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) ........................................... 19-20

*Harlow v. Fitzgerald*,
    457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) .....................................................23

*Hencely v. Fluor Corp.*,
    ___ U.S. ___, 146 S. Ct. 1086, 224 L.Ed.2d 560 (2026) ........................................... 25-26

*Hope v. Pelzer*,
    536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002) ........................................... 24-25

*Mullenix v. Luna*,
    577 U.S. 7, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) .....................................................22

*Nieves v. Bartlett*,
    587 U.S. 391, 139 S. Ct. 1715, 204 L.Ed.2d 1 (2019) ................................................15, 17

*Reichle v. Howards*,
    566 U.S. 658, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012) ................................................22

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) ......................................... 20-21

*Whren v. United States*,
    517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ........................................8, 11, 23

**United States Court of Appeal for the Fourth Circuit**

*Brown v. Gilmore*,
    278 F.3d 362, 369 (4th Cir. 2002) ...................................................................................20

**United States Court of Appeals for the Ninth Circuit**

*Ashford v. City of Brownsville*,
    No. 23-2804, 2024 U.S. App. LEXIS 30877, at *3 (9th Cir. Dec. 6, 2024) .....................21

*C.V. v. City of Anaheim*,
    823 F3d 1252 (9th Cir 2016) ..........................................................................................19

*Demarest v. City of Vallejo*,
    44 F.4th 1209 (9th Cir. 2022) .........................................................................................20

*Evans v. Skolnik*,
    997 F.3d 1060 (9th Cir. 2021) ........................................................................................22

*Est. of Hernandez v. City of Los Angeles*,
    96 F.4th 1209 (9th Cir. 2024) .........................................................................................22

*Gordon v. Cty. of Orange*,
    6 F.4th 961 (9th Cir. 2021) .............................................................................................22

*Hernandez v. Skinner*,
    969 F.3d 930 (9th Cir. 2020) ........................................................................................9, 27

*Hyde v. City of Willcox*,
    23 F.4th 863 (9th Cir. 2022) ...........................................................................................27

*Johnson v. Barr*,
    79 F.4th 996 (9th Cir. 2023) ...........................................................................................24

*Lingo v. City of Salem*,
    832 F.3d 953 (9th Cir. 2016) ..........................................................................................28

*Morales v. Fry*,
    873 F.3d 817 (9th Cir. 2017) ..........................................................................................22

*Pratt v. Rowland*,
    65 F.3d 802 (9th Cir. 1995) ............................................................................................14

*Rosenbaum v. Washoe Cty.*,
 663 F.3d 1071 (9th Cir. 2011) ........................................................................24

*SmileDirectClub, LLC v. Tippins*,
 31 F.4th 1110, 1123 (9th Cir. 2022) ...............................................................21

*United States v. Bautista*,
 684 F.2d 1286 (9th Cir. 1982) ........................................................................28

*United States v. Hylton*,
 30 F.4th 842, 847 (9th Cir. 2022) ...................................................................10

*United States v. In*,
 124 F.4th 790 (9th Cir. 2024) ....................................................................10, 23

*United States v. Parkins*,
 92 F.4th 882 (9th Cir. 2024) ...........................................................................28

*United States v. Williams*,
 419 F.3d 1029 (9th Cir. 2005) .......................................................................9, 23

*Washington v. Lambert*,
 98 F.3d 1181, 1185 (9th Cir. 1996) .................................................................10

**United States District Courts**

*Bernier v. Rodriguez*,
 No. 1:18-cv-1131 JLT SKO, 2022 U.S. Dist. LEXIS 12811 (E.D. Cal. Jan. 21, 2022) ...12

*Hunter v. Boylan*,
 No. 3:24-cv-05267-RSM-DWC, 2024 U.S. Dist. LEXIS 214493 (W.D. Wash. Oct. 31, 2024) ............................................................................14

*Johnson v. O'Malley*,
 No. 23-CV-481 JLS (AHG), 2024 U.S. Dist. LEXIS 104797 (S.D. Cal. June 11, 2024) ............................................................................26

**RESPONSE**

In his objections to the magistrate judge's findings and recommendations (ECF No. 57) ("Objections"), Plaintiff identifies twenty-five different ways in which he claims the magistrate judge erred in recommending that summary judgment be granted and this case be dismissed.  As explained section by section below, none of Plaintiff's objections have merit.  The magistrate judge reasonably concluded for a multitude of reasons that Plaintiff's claims fail as a matter of law and must be dismissed.  Defendants now ask this Court to adopt those conclusions and dismiss this action with prejudice.

## I.   Response to Sections 3.2 and 5.1 – Nature of the Stop

Plaintiff first argues that the magistrate erred by accepting as an undisputed fact that Plaintiff had been the subject of a valid traffic stop.  Objections at 6, 19.  Plaintiff notes that there is evidence in the record that the officers stopped another nearby vehicle for speeding but claims that the officers had no basis for conducting a traffic stop on his vehicle and did not in fact do so.  Objections at 6, 19-20.  Consequently, Plaintiff claims, Sergeant Delancy admitted during his deposition that this was a consensual encounter rather than a traffic stop.  Objections at 7, 20.

Plaintiff greatly mischaracterizes both the record and Officer Delancy's deposition testimony.  The evidence in the record is uncontroverted.  Plaintiff admits that he was driving his vehicle through the City of Hood River before he parked, got out, and began walking down the sidewalk.  *See* Declaration of Cameron Wilson ("Wilson Decl.") ¶ 6-7.  Officers observed Plaintiff's vehicle when it passed them, including the notice reading "Private Automobile Not for Hire TRAVELER" affixed to the vehicle instead of the license plate as required by ORS 803.540.  Declaration of Sergeant Emelike Delancy ("Delancy Decl.") ¶ 4, Ex. A at 3:14 (describing observing Plaintiff driving without license plates and showing on video that notice

Page 6 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

was posted on Plaintiff's vehicle during encounter).  The officers initiated a stop of both Plaintiff's vehicle as well as another nearby vehicle for speeding and observed Plaintiff exit and begin walking down the sidewalk.  Delancy Decl. ¶ 6-7; Declaration of Officer Austin Griffin ("Griffin Decl.") Ex. A at 0:32 (showing Plaintiff leaving vehicle and walking away down sidewalk).  They then called out to Plaintiff and told him to stop because he did not have a license plate on his vehicle as required by state law.  Griffin Decl. Ex. A at 1:15.  On those facts, Plaintiff was validly stopped for a traffic violation of ORS 803.540.

To the extent Plaintiff claims Sergeant Delancy testified differently during his deposition, he is incorrect.  Plaintiff both misquotes the portion of Sergeant Delancy's deposition that he cites on page 7 of his objections and omits critical context necessary to understand it.  The full exchange occurred as follows:

Q. Okay. Was Mr. Wilson operating his vehicle when you made contact?

A. When I made contact, Mr. Wilson was standing on the sidewalk with Officer Griffin.

Q. Okay. Was Mr. Wilson operating his vehicle when you made contact? Yes or no?

A. No.

Q. So this was an -- actually not a traffic stop in the traditional sense, was it?

A. Was it a traffic stop in the traditional sense as my car [*sic*]? No. No.

Q. What specific traffic violation did you observe Mr. Wilson commit?

A. No registration plates or trip permit.

Q. And that would be involving traffic, correct?

A. Yes.

Deposition of Sergeant Emelike Delancy ("Delancy Dep.") 36:5-20.  Sergeant Delancy's testimony was that the encounter was not a traffic stop in the "traditional sense"—meaning it was not normal for a traffic stop because Plaintiff had already gotten out of his vehicle at the time Sergeant Delancy made contact with him.  Sergeant Delancy never testified that he believed

Page 7 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

he lacked a lawful basis for the stop or that the encounter was purely consensual—quite the opposite, as in the line immediately following the quoted section he testified that he observed Plaintiff commit the traffic violation of not displaying a license plate.  In short, Plaintiff points to nothing which undermines or calls into question the magistrate's conclusion that Plaintiff was validly stopped for a traffic offense.

## II. Response to Sections 3.3, 3.4, 5.2, 5.3, and 6.1 – Basis for Detention in Handcuffs

Plaintiff argues over a large portion of his objections that he could not legitimately be arrested for obstruction of justice because that is not a crime in the State of Oregon and that the magistrate judge was incorrect to conclude that the officers had probable cause to arrest Plaintiff for violating ORS 819.430 by possessing a vehicle with a concealed VIN number.  Objections at 8-10, 20-21, 29.  There are several layers to unpack in this argument.

Beginning with Sergeant Delancy's statement that he would arrest Plaintiff for obstruction of justice if he did not return to his vehicle, Plaintiff makes much out of the fact that "obstruction of justice" is not the name of a crime in Oregon and that the closest analog, interfering with a peace officer under ORS 162.247, would not apply to this situation.  Objections at 9-10, 20-21, 29.  However, it is well established that the statute cited by an officer at the time of arrest has no constitutional significance. *See Devenpeck v. Alford*, 543 U.S. 146, 155, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) ("While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required.").  Indeed, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).  "An arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2, 138 S. Ct. 577, 199 L.Ed.2d 453 (2018); *see also Devenpeck*, 543 U.S. at 153 ("[An officer's] subjective reason for making the arrest need

Page 8 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

not be the criminal offense as to which the known facts provide probable cause.").  Accordingly, it does not matter what Sergeant Delancy said, only that there was some objectively lawful basis for placing Plaintiff in handcuffs here.

Before the magistrate judge, Defendants asserted two different lawful bases which justified placing Plaintiff in handcuffs: (1) that the officers had authority to order Plaintiff to return to his vehicle as a function of their authority to control a suspect's movements during a traffic stop and detain him in handcuffs when he refused to comply, and (2) that, in the alternative, Defendants had probable cause to arrest Plaintiff for violating ORS 819.430.  *See* Reply in Support of Summary Judgment ("Reply") at 2-4.  Plaintiff claims that the magistrate judge incorrectly accepted the second of those two argument and found that there was probable cause to believe he violated ORS 819.430.  Objections at 8, 21-22, 29.  However, that conclusion appears nowhere in the findings and recommendations.  The magistrate judge never addressed or ruled on the second argument, because the first was dispositive.  Findings and Recommendations ("F&R") at 4-5.  That conclusion was correct.

Under prevailing Ninth Circuit case law, officers have broad authority to "control all movements in a traffic encounter" as necessary to "reasonably control the situation."  *United States v. Williams*, 419 F.3d 1029, 1032-34 (9th Cir. 2005).  This authority specifically includes ordering a suspect who has exited a vehicle during a stop to return to it.  *Id.* at 1034 ("We hold that under the Fourth Amendment it is reasonable for an officer to order a passenger back into an automobile that he voluntarily exited because . . . the need for officers to exercise control over individuals encountered during a traffic stop[ ] outweigh[s] the marginal intrusion on the passenger's liberty interest.") (Emphasis added). Additionally, during a *Terry* stop, police have limited authority in certain circumstances to use handcuffs to detain a person without escalating that stop into an arrest.  *Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) ("handcuffing

as a means of detaining an individual does not automatically escalate a stop into an arrest.").[1] Importantly, those circumstances include "where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight." *United States v. In*, 124 F.4th 790, 795 (9th Cir. 2024); *see also Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) ("[W]e have held that while certain police actions constitute an arrest in certain circumstances, e.g., where the 'suspects' are cooperative, those *same* actions may *not* constitute an arrest where the suspect is uncooperative or the police have specific reasons to believe that a serious threat to the safety of the officers exists.").

Here, the officers ordered Plaintiff on multiple occasions to return to his vehicle so that they could do a routine check of his license, registration, and insurance. *See* Griffin Decl. Ex. A at 3:30; Delancy Decl. Ex. A at 0:08, 0:35. They also advised Plaintiff that if he failed to comply and return to his vehicle, he would be detained in handcuffs. Delancy Decl. Ex. A at 0:08. Despite those warnings, Plaintiff not only refused to return to his vehicle but actually took a step away down the street in the opposite direction. Under those circumstances, the magistrate judge correctly concluded that it was reasonable for the officers to believe that Plaintiff was acting uncooperatively and use handcuffs to detain him temporarily so that they could complete the traffic stop.

However, even if that conclusion was incorrect, the use of handcuffs was still justified by probable cause to believe that Plaintiff had intentionally concealed his vehicle's VIN. Under ORS 819.430, it is a misdemeanor offense for a person to "knowingly . . . ha[ve] in the person's possession any vehicle . . . from which the vehicle identification number has been . . . covered . . . for the purpose of concealing or misrepresenting the identity of the vehicle." ORS 819.430. "Probable cause is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57. As Sergeant

---

[1]    Although a traffic stop is not exactly the same as a *Terry* stop, the Supreme Court and Ninth Circuit have recognized that the two are analogous in previous cases concerning officers' authority to detain a driver. *United States v. Hylton*, 30 F.4th 842, 847 (9th Cir. 2022).

Delancy explained in his declaration, when he passed Plaintiff's vehicle on the way to contact him for the first time he saw that a piece of paper appeared to have been deliberately placed to cover the VIN. Delancy Decl. ¶ 12.[2] Delancy also noted that that Plaintiff had removed the other identifying information on the vehicle by replacing the license plates. Delancy Decl. ¶ 17. Combined with the fact that Plaintiff attempted to walk away from the scene of the traffic stop and resisted officers' commands to return to the vehicle where he knew his license, registration, and insurance would be checked, Sergeant Delancy began to believe that Plaintiff was likely covering the VIN in an attempt to conceal the vehicle's identity. Delancy Decl. ¶ 17. That amounted to probable cause.

Plaintiff points out that Sergeant Delancy did not state his belief about the concealed VIN aloud until Plaintiff had already been placed in handcuffs, however his accusation that this rationale was fabricated later as a post-hoc rationalization for the detention is baseless. After completing the process of placing Plaintiff in handcuffs, the very first thing that Sergeant Delancy did was say that he believed Plaintiff had unlawfully covered his VIN number. Delancy Decl. Ex. A at 1:31 ("Your vehicle does not have registration. Your VIN is covered up. That you cannot do."). It is plainly apparent that Officer Delancy was considering the VIN issue at the time of handcuffing Plaintiff. More to the point though, as previously noted probable cause under the Fourth Amendment is a purely objective determination, such that an officer's subjective belief about whether probable cause existed is entirely irrelevant. *Whren*, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). It only matters that the officer was aware of the facts giving rise to probable cause, which it is undisputed that Delancy was here. Thus, handcuffing Plaintiff was also lawfully justified on the basis of probable cause. The magistrate judge therefore did not err in recommending that summary judgment be granted on Plaintiff's Fourth Amendment claim.

---

[2] Plaintiff would admit to this fact later in the stop. Delancy Decl. Ex. A at 13:41 ("Sergeant Delancy: Do you have any paperwork for the car so I can see the VIN number so I can put that in? Plaintiff: "Yeah, yeah, yeah. And I can uncover it if you want but I like to stay private.").

Page 11 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

### III. Response to Section 3.5 and 5.4 – First Amendment Claim and "Walking Away"

Plaintiff's next objection to the findings and recommendations is that the magistrate described him as "walking away" from the officers. Objections at 11, 22. In reality, he claims, he was turning to face Officer Jundt to exercise his First Amendment rights and ask for his badge number. Objections at 11-12, 23. According to Plaintiff, if he was not walking away but rather exercising his First Amendment rights, it completely changes the analysis because his detention cannot be predicated on protected First Amendment activity. Objections at 11-12, 23.

At the outset, it should be noted that the portion of the Findings and Recommendations that Plaintiff references—the portion stating that "[P]laintiff exited his vehicle and attempted to walk away from the scene of the traffic stop"—refers to the very beginning of the encounter when Plaintiff parked and began walking down the street away from the officers. It was not describing the moment after the officers contacted Plaintiff when he attempted to take another step down the street while asking Officer Jundt for his badge number. The findings and recommendations does not even mention the step that Plaintiff took away from his vehicle while asking for badge numbers and that magistrate judge does not appear to have relied on that fact in concluding that the officers did not violate Plaintiff's constitutional rights by placing him in handcuffs. Instead, the magistrate judge's conclusion appears to have been based on the multiple lawful orders to return to his vehicle that Plaintiff ignored. F&R at 2, 4-5.

However, even if the magistrate judge did rely on Plaintiff stepping away from the officers as a sign that he was uncooperative, it would have still been proper to do so. Although Plaintiff claims that his step away was protected First Amendment activity, he appears to define First Amendment activity with a much broader scope than is proper. Although the Ninth Circuit never explicitly addressed the issue, it is widely accepted that asking a police officer for a badge number is a form of protected First Amendment activity. *Bernier v. Rodriguez*, No. 1:18-cv-1131 JLT SKO, 2022 U.S. Dist. LEXIS 12811, at *32 (E.D. Cal. Jan. 21, 2022) (collecting

Page 12 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

cases).  However, there is a difference between the words Plaintiff was speaking and the physical actions he was taking at the same time.  Although Plaintiff was asking for a badge number, he detained because officers understood his physical act of taking a step away from the car after he had been ordered several times to return to mean that Plaintiff intended to continue ignoring their orders and would not return to the vehicle.  Plaintiff cites to no authority which holds that the physical steps he is taking are part and parcel to any verbal speech he is engaged in at the same time and are subject to the same protections.  Indeed, it would produce a number of anomalous results if physical actions associated with speech were protected.  For example, a suspect stopped by police could effectively evade detention by simply walking away so long as they continuously engage in a protected activity like criticizing the officers.  Plaintiff's position otherwise is without merit and does not defeat the lawful basis for his arrest discussed above.

## IV. Response to Section 3.6 and 5.5 – Request for Identification

Plaintiff claims that "[t]he [findings and recommendations] implies that Plaintiff was uncooperative and refused to comply with lawful officer requests," specifically by failing to provide his identification when requested.  Objections at 13, 23-24.  In reality, Plaintiff argues, he was never asked for his identification before being placed in handcuffs.  Objections at 13, 23-24.  Plaintiff's argument is perplexing, as the findings and recommendations at no point state that he refused to provide identification, nor do Defendants argue that Plaintiff's failure to produce a driver's license is what justified placing him in handcuffs.  Rather, the basis for the magistrate's determination that Plaintiff's behavior was uncooperative such that the officers were justified in handcuffing him is undisputed.  Video of the encounter plainly reflects that, on multiple occasions, the officers issued lawful commands to Plaintiff to return to his vehicle so that they could check his license, registration, and insurance.  *See* Griffin Decl. Ex. A at 3:30; Delancy Decl. Ex. A at 0:08, 0:35.  However, Plaintiff ignored them and attempted to walk away.

Page 13 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

Plaintiff's refusal to identify himself was never part of the basis for Plaintiff's detention and therefore has no bearing on this case.

## V. Response to Sections 3.7 and 5.10 – Retaliation for Badge Number Request

Plaintiff next faults the magistrate judge's decision to grant summary judgment on his First Amendment retaliation claim. Objections at 14, 27-28. The magistrate judge granted summary judgment after concluding that the evidence was insufficient to allow a jury to find a causal relationship between the detention and Plaintiff asking for the officers' badge numbers. F&R at 5. Plaintiff argues that this was an error because of the temporal proximity between his request for badge numbers and him being handcuffed would have allowed a jury to determine that the detention was retaliatory. Objections at 14, 28.

Here, the magistrate's conclusion was correct. As Plaintiff acknowledged in his first sur-response on summary judgment, temporal proximity only gives rise to a triable issue of fact about causation in the absence of evidence of other legitimate motivations for acting. Plaintiff's Sur-Reply in Opposition to Defendants' Motion for Summary Judgment ("First Sur-Response") at (ECF No. 44) ("'[T]emporal proximity' plus absence of legitimate reasons establishes causal connection."); *see Hunter v. Boylan*, No. 3:24-cv-05267-RSM-DWC, 2024 U.S. Dist. LEXIS 214493, at *10 (W.D. Wash. Oct. 31, 2024) (a retaliation claim premised solely on temporal proximity is too tenuous to proceed to trial when the adverse actions taken are "well explained by other circumstances."). Even the case Plaintiff cites in his objections about how "timing can properly be considered as circumstantial evidence of retaliatory intent" goes on to conclude that there was insufficient evidence of retaliation because, beyond the timing, "there [was] little else to support the inference." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); Objections at 28. Recognizing the need for solid proof of retaliatory intent, in cases where the plaintiff claims that they were arrested in retaliation for protected First Amendment expression, the Supreme Court has also imposed a specific, additional rule requiring the plaintiff to prove that the officers lacked

Page 14 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

probable cause or other lawful basis to arrest them for an offense. *Nieves v. Bartlett*, 587 U.S. 391, 404, 407, 139 S. Ct. 1715, 204 L.Ed.2d 1 (2019).[3]

Here, as previously addressed in Defendants' response to sections 3.3 and 3.4 above, there was ample legitimate cause to detain Plaintiff, both as a function of the officers' authority to control his movements during a traffic stop when he was uncooperative and because there was probable cause to believe he had violated ORS 819.430. Additionally, the body worn camera footage from the encounter plainly reflects that Defendants did not place Plaintiff in handcuffs immediately after he requested their badge numbers, but rather immediately after Plaintiff started moving further down the street away from his vehicle. Delancy Decl. Ex. A at 0:58. Those are legitimate reasons for Plaintiff's detention that effectively undermine his argument that the arrest was retaliatory based on temporal proximity alone. It was therefore correct for the magistrate judge to grant summary judgment on Plaintiff's First Amendment retaliation claim.

## VI. Response to Section 5.6 – Asking vs. Ordering Plaintiff to Return

Plaintiff argues that the Findings and Recommendations improperly characterize the officers' request for him to return to his vehicle as "asking" him to return rather than ordering him to return. Objections at 24. Plaintiff maintains that this is important because the fact that he was ordered to return means the encounter was a seizure within the meaning of the Fourth Amendment rather than a consensual encounter with police. Objections at 24-25. Once again, Plaintiff's argument is perplexing. As previously discussed in Section I of this response—Defendants' response to sections 3.2 and 5.1 of Plaintiffs' Objections—Defendants have never maintained that this was a consensual encounter with police. Plaintiff was validly stopped for a traffic violation of ORS 803.540 after officers observed him driving through Hood River without

---

[3]     Plaintiff cites to *Nieves* in his Objections for the proposition that "[a]rresting a citizen immediately after he engages in protected speech (asking for a badge number) creates a triable issue of fact regarding retaliatory motive." Objections at 28. However, Plaintiff does not identify any specific part of *Nieves* which supposedly supports his interpretation and Defendants cannot locate one. If anything, *Nieves* runs directly counter to Plaintiff's cited proposition by requiring the plaintiff to prove that there was no lawful basis for an arrest before the plaintiff can even begin establishing a retaliatory motive. *Nieves*, 587 U.S. at 404, 407.

state registration plates. Delancy Decl. ¶ 4 (describing observing Plaintiff driving without plates, Ex. A at 3:14 (showing absence of license plates on vehicle during encounter); Wilson Decl. ¶ 6-7 (admitting to driving through Hood River). The magistrate judge's description of the officers request as "asking" Plaintiff to return to the vehicle as opposed to "ordering" him to do so is most likely the result of the nature of the initial traffic stop not being at issue in this case. After all, none of Plaintiff's claims in this action challenge the legitimacy of the initial traffic stop. His only asserted claim for violation of the Fourth Amendment concerns his detention in handcuffs. Amended Complaint ("Am. Compl.") at 11-12 (ECF No. 13). Accordingly, the magistrate judge did not rule that the encounter was purely consensual and there is no significance to the judge using the word "asking" instead of "ordering" in describing the events leading up to Plaintiff being handcuffed.

## VII.    Response to Section 5.7 – Providing Badge Numbers

Plaintiff argues that the magistrate's findings and recommendations improperly state that the officers "provided" their badge numbers upon his request when, in reality, only two of the three officers actually did so. Objections at 25. Plaintiff points out that he was detained in the middle of asking Officer Jundt for his badge number, so he never actually provided it to Plaintiff. Objections at 25. Ultimately, it is not important whether Officer Jundt actually provided his badge number or not. Plaintiff's contention here is that his detention was retaliatory because he was handcuffed while asking for badge numbers. What is therefore important is whether Plaintiff asked for the badge numbers before he was arrested, which it is undisputed that he did. The problem for Plaintiff is just that, as explained in section V above—Defendants' response to section 3.7—Plaintiff fails to point to anything other than the fact that he was detained around the time that he asked the officers for badge numbers to support his claim of retaliation. Nor does Plaintiff point to anything that undermines the officers' other lawful bases for detaining

Plaintiff as required by *Nieves*. That is fatal to his First Amendment claim. The magistrate therefore correctly recommended granting summary judgment against this claim.

### VIII. Response to Section 5.8 – Phone Recording

Next, Plaintiff addresses his alternative First Amendment theory that the officers violated his right to record police by shutting off his cell phone recording during the encounter. Plaintiff argues that the magistrate judge erred in accepting Sergeant Delancy's testimony that he did not stop Plaintiff's cell phone from recording as undisputed because Plaintiff presented evidence that the recording did, in fact, stop. Objections at 26. While it is true that Plaintiff's cell phone recording did stop during the encounter, Plaintiff presents no evidence that Sergeant Delancy was the one who deliberately stopped it. In fact, the evidence that Defendants presented below definitively reflects that the recording stopped before Sergeant Delancy even touched the phone.

Watching the cell phone recording itself which Plaintiff produced during discovery shows that it ends as officers are approaching Plaintiff, not when the phone is taken from his hand. Declaration of Keegan Murphy in Support of Reply in Support of Motion for Summary Judgment ("Murphy Decl.") Ex. A at 0:50 (ECF No. 40). The same thing is visible on the officers' body camera. Plaintiff's cell phone recording stops right after the word "be" in Sergeant Delancy's statement to Plaintiff that "Sir. Okay. You're going to be detained right now." Murphy Decl. Ex. A at 0:50. Viewing that exact moment from the perspective of the officers' body camera, the video footage plainly reflects that the cell phone is in Plaintiff's hand, not any of the officers' hands:

Page 17 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**



Declaration of Officer Austin Griffin in Support of Motion for Summary Judgment ("Griffin Decl.") Ex A at 5:19 (ECF No. 32).

Throughout the encounter, Sergeant Delancy took great pains to specifically ensure that he did not interfere with Plaintiff's First Amendment right to record the officers. When detaining Plaintiff in handcuffs, Sergeant Delancy advised Plaintiff that although he was going to temporarily take the cell phone out of Plaintiff's hand so that they could get the handcuffs on, he was going to return the phone to Plaintiff's pocket so that it could continue recording the audio of the encounter. Delancy Decl. Ex. A at 1:03. Then, later on, once Plaintiff had been released from handcuffs, Sergeant Delancy reminded Plaintiff about the phone in case he wanted to take it back out and video record, but Plaintiff declined. Delancy Decl. Ex. A at 9:08. Taken together, the clear evidence that not only did Defendants not interfere with Plaintiff's recording of the encounter but actively facilitated it would prevent a rational trier of fact from concluding that the officers deliberately interfered with the recording or that the arrest was carried out in retaliation

Page 18 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

for Plaintiff's recording of the encounter.  The magistrate judge therefore correctly recommended that summary judgment be granted as to Plaintiff's First Amendment claim.

## IX.     Response to Section 5.9 – Plaintiff's Cooperation

Plaintiff argues that the findings and recommendations contradict themselves insofar as they note that "[d]uring the handcuffing process Plaintiff was fully cooperative" but still conclude that the officers were justified in handcuffing Plaintiff because of his uncooperative behavior.  Objections at 27.  However, there is a difference between Plaintiff's behavior during the handcuffing process and his behavior during the stop before he was handcuffed.  Plaintiff was placed in handcuffs after he acted uncooperatively by refusing multiple orders to return to his vehicle so that the officers could continue the traffic stop.  Delancy Dep 184:18-21.  Although it is true that Plaintiff did not resist the officers' efforts to place him in handcuffs once they began doing so, that does not mean that he was cooperative during the entire stop or prevent the magistrate judge from concluding that his prior behavior justified the use of handcuffs in the first place.

## X. Response to Section 6.2 – Excessive Force

Plaintiff argues that the magistrate judge erred in recommending that summary judgment be granted on his excessive force claim because, as he weighs them, the factors from *Graham v. Connor*, 490 U.S. 386, 400, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989), suggest the force was unreasonable.  Objections at 30-31.  Plaintiff is incorrect.  Ordinarily, the *Graham* balancing test requires weighing three factors to determine what degree of force is reasonable for an officer to use: the severity of the crime, whether Plaintiff is resisting arrest, and the degree of danger posed to the officers.  *C.V. v. City of Anaheim*, 823 F3d 1252, 1255 (9th Cir 2016).  However, even in situations when an individual has not committed a dangerous crime, does not specifically resist arrest, and does not pose a threat to the arresting officer, *Graham* still recognizes that officers may use some limited degree of force as necessary to effect an arrest or detention.  *Graham*, 490

U.S. at 396 ("The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  In practice, this means that officers are generally permitted to handcuff an individual whenever legally authorized to make an arrest or in certain circumstances when detaining someone.  *Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022) ("[a] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest." (quoting *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002))).  Here, as explained in section II above—Defendants' response to sections 3.3, 3.4, 5.2, 5.3, and 6.1 of Plaintiff's Objections—the Officers were legally permitted to either arrest Plaintiff for violating ORS 819.430 or detain him using handcuffs after he refused their command to return to his vehicle.  Accordingly, Plaintiff's excessive force claim for placing him in handcuffs fails and the magistrate judge was correct to recommend that summary judgment be granted as to Plaintiff's excessive force claim.

## XI. Response to Section 6.3 – Equal Protection

Plaintiff argues that the magistrate erred in recommending summary judgment on his class of one Equal Protection Clause claim on the basis that Plaintiff failed to identify any similarly situated comparators.  Objections at 31.  Plaintiff asserts that "[u]nder *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a 'class of one' equal protection claim requires only that the plaintiff was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment."  Objections at 31.  Alternatively, he argues that the other driver stopped for speeding who was not handcuffed was a similarly situated comparator.  Objections at 31.

The legal parameters of a class of one claim are well settled.  As Plaintiff notes, he must prove that he was "[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528

U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam).  To prove the second element that he was treated differently from others, Plaintiff is required to show that he was treated different from a comparator who was similarly situated "in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).  This standard is strict and requires proof of "an extremely high degree of similarity between [the plaintiff] and the persons to whom they compare themselves."  *Id.*; *Ashford v. City of Brownsville*, No. 23-2804, 2024 U.S. App. LEXIS 30877, at *3 (9th Cir. Dec. 6, 2024) (noting that the comparator similarity requirement is "strict").

Here, the other driver stopped for speeding is not an adequate comparator.  It is undisputed that the other driver was stopped for a different traffic offense from Plaintiff, did not attempt to exit their vehicle during the stop, and did not ignore any lawful orders given by the officers during the stop.  That falls well short of being similarly situated "in all material respects."  Accordingly, Plaintiff's class of one claim fails and the magistrate judge did not err in recommending summary judgment be granted on it.

XII.    **Response to Section 6.4 – Qualified Immunity**

Plaintiff argues that the magistrate judge erred in recommending that several of his claims be dismissed on summary judgment because Defendants are entitled to qualified immunity.  Objections at 32.  Before the magistrate judge, Defendants argued that they were entitled to qualified immunity on Plaintiff's claims under the Fourth Amendment because, if it was not lawful to place Plaintiff in handcuffs, that much was not clearly established by existing case law.  Reply at 11-14.  The magistrate agreed with Defendants and concluded that Plaintiff had failed in his burden to show that his rights were clearly established.  F&R at 7.  Plaintiff argues that the magistrate erred because it was clearly established that he could not be arrested for obstruction of justice.  Objections at 32.  He also dedicates an entire supplemental memorandum to arguing that a recent decision from the United States Supreme Court

undermines the entire basis for the doctrine of qualified immunity such that it should be overturned in its entirety. Objections at 33.

Under the doctrine of qualified immunity, government officials who violate another's rights are immune from liability under § 1983 unless "the unlawfulness of their conduct was 'clearly established at the time.'" *Wesby*, 583 U.S. at 62-63 (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting *Reichle*, 566 U.S. at 664). For a constitutional right to be deemed clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (citations omitted). "That demanding standard reflects the long-standing principle that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Est. of Hernandez v. City of Los Angeles*, 96 F.4th 1209, 1221 (9th Cir. 2024) (internal quotation marks omitted).

Whether or not a right is "clearly established" is a matter of law to be decided by a judge. *Morales v. Fry*, 873 F.3d 817, 824–25 (9th Cir. 2017). "In determining whether this standard is met, the [c]ourt considers whether there are cases of controlling authority in the plaintiff['s] jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [their] actions were lawful." *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (internal quotation marks omitted). "The plaintiff bears the burden of showing that the rights allegedly violated were clearly established." *Gordon v. Cty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021).

Beginning with Plaintiff's first argument, he continues to fixate on Sergeant Delancy's statement that the arrest was for obstruction of justice despite the law being clear that the officer's own subjective state of mind and the offense cited at the time of handcuffing have no constitutional significance. *See Devenpeck*, 543 U.S. at 155; *Whren*, 517 U.S. at 813; *Wesby*, 583 U.S. at 54 n.2. This is true even during the qualified immunity analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) (eliminating subjective prong of qualified immunity analysis about officer's state of mind). Defendants contend here that handcuffing Plaintiff was objectively justified either as a function of their authority to control Plaintiff's movements during a traffic stop or probable cause to believe Plaintiff had violated ORS 819.430. Thus, to defeat qualified immunity, it is Plaintiff's burden to show that the law was clearly established such that no reasonable officer in Defendants' position could have believed that was correct.

With respect to the officers' authority to handcuff an uncooperative suspect, as noted in previous sections, under Ninth Circuit case law it is well established that an officer has authority to "control all movements in a traffic encounter" as necessary to "reasonably control the situation." *Williams*, 419 F.3d at 1032-34. Moreover, if a suspect is uncooperative, officers have authority to detain that individual in handcuffs as part of an investigatory stop. *In*, 124 F.4th at 795 (recognizing that a suspect can be detained in handcuffs during an investigatory stop when he or she is "uncooperative"). In his response, Plaintiff does not cite any case law calling into question the validity of Defendants' position, let alone case law clear enough that it would have put a reasonable officer on notice that he or she may not detain a suspect in handcuffs who refuses to cooperate with multiple directives to return to the vehicle during a traffic stop. Accordingly, Defendants are entitled to qualified immunity on this theory.

With respect to Defendants' alternate theory that they had probable cause to arrest Plaintiff for violating ORS 819.430, Plaintiff similarly offers little in support of his position that

Page 23 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

the officers actions were clearly unlawful.  In assessing whether qualified immunity applies to an officer's determination regarding probable cause to make an arrest, the officer is entitled to qualified immunity unless the plaintiff can show that "all reasonable officers would agree that there was no probable cause in this instance." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1078 (9th Cir. 2011).  If it can even be reasonably argued that probable cause existed—that is, if any reasonable officer could find that there was probable cause—then Plaintiff's claim necessarily must fail.  *Johnson v. Barr*, 79 F.4th 996, 1005 (9th Cir. 2023).  Here, as outlined previously, Sergeant Delancy believed that there was probable cause to arrest Plaintiff for possession of a vehicle with a concealed VIN number for the purpose of hiding the vehicle's identity, ORS 819.430.  In support of that belief, Sergeant Delancy cited the fact that Plaintiff appeared to have deliberately covered his VIN number with papers, had removed other identifying information such as the license plates from the vehicle, had attempted to leave the scene of the traffic stop before officers could make contact with him, and refused the officers' request to return to the vehicle where Plaintiff knew the vehicle's information would be checked.  Delancy Dep. 123:17-22.  Sergeant Delancy's thought process is logical and it is more than arguable that he did indeed have probable cause.  At a minimum, Plaintiff cites no controlling or persuasive authority holding that an officer under similar circumstances would have needed more to make out probable cause under ORS 819.430.  As a result, qualified immunity necessarily attaches to the decision to detain Plaintiff for violating ORS 819.430.

Notably, although Plaintiff offers no case law specific to either of Defendants' theories that clearly establishes that any of their actions was unlawful, citing to *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), he argues generally that the Defendants' actions were so obviously unlawful that qualified immunity does not apply.  In *Hope*, the plaintiff—an Alabama state prisoner—was handcuffed to a hitching post and left out in the sun shirtless for seven hours.  *Id.* at 734-35.  During those seven hours, Plaintiff suffered sunburns, was offered

water only once or twice while being taunted about his thirst, and was offered no bathroom breaks. *Id.* When the defendants asserted qualified immunity in response to Plaintiff's claim of deliberate indifference and argued that no case clearly established that their conduct was unlawful, the United States Supreme Court held that a prior case was unnecessary. *Id.* at 741. The Court reasoned that the defendants' actions were so obviously cruel that it would have been apparent to any reasonable officer in their position that they "unnecessarily and wantonly inflicted pain" in violation of the Eighth Amendment. *Id.* Plaintiff has not provided evidence of anything even remotely similar occurring in this case. In contrast to the plaintiff in *Hope* who was handcuffed out in the sun for seven hours, Plaintiff was handcuffed for approximately seven minutes after he refused to return to his vehicle during a traffic stop. Delancy Decl. ¶ 32. Plaintiff's claims in this case do not allege anything even somewhat close to the obvious wrongdoing that was before the Court in *Hope*.

Finally, even if Defendants are entitled to qualified immunity under existing rules, Plaintiff argues that the United States Supreme Court's decision in *Hencely v. Fluor Corp.*, ___ U.S. ___, 146 S. Ct. 1086, 224 L.Ed.2d 560 (2026), effectively undermines the doctrine as a whole such that it must be overturned. *Hencely* was a case about whether the Supremacy Clause of the United States Constitution preempted a state law negligence claim asserted against a U.S. military contractor which allegedly arose out of the contractor's performance of its obligations to the federal government. 146 S. Ct. at 1093. Although the case has nothing to do with qualified immunity on its face, Plaintiff claims that it articulates five governing principles for judge-made defenses that effectively undermine the basis for qualified immunity. Plaintiff's Supplemental Memorandum of Law in Support of Objections to Findings and Recommendations ("Supplemental Memorandum") at 7 (ECF No. 57-1). However, it is entirely unclear how Plaintiff comes by that interpretation of the case.

Page 25 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

*Hencely* itself is not about a judge-made defense—it is about the application of the Supremacy Clause of the Constitution.  The "principles" that Plaintiff claims can be extracted from the case are just the Court's explanations for how the Supremacy Clause legal analysis works, which Plaintiff then attempts without explanation to transpose onto judge made-defenses.  For example, Plaintiff's first principle is that immunity can only come from constitutional text or federal statute.  Supplemental Memorandum at 8.  That comes from the Supreme Court's explanation that, under the Supremacy Clause, a state law can generally only be preempted by constitutional text or a federal statute.  *Hencely*, 146 S. Ct. at 1093.  Plaintiff's next principle that "judge-made defenses only apply when the actor was doing what the government authorized" comes from the Court's explanation that the Supremacy Clause only preempts a tort claim "when the contractor is being sued precisely for accomplishing what the Federal Government requested."  *Id.* at 1099.  The remainder of Plaintiff's arguments regarding this case all follow the same pattern and all fall flat as a legal matter because there is no logical reason to apply the Supremacy Clause's requirements for preemption to  judge-made defenses.

The one bit of authority that is specific to qualified immunity that Plaintiff offers in his Supplemental Memorandum is a snippet of legislative history which he claims shows that Congress's intent was to preclude any sort of common law immunity.  Supplemental Memorandum at 5-7.  This argument is flawed in several ways, but even if it were not, it does not change the fact that qualified immunity is the current governing law as established by the United States Supreme Court.  This Court lacks the authority to overturn or ignore the Supreme Court's decisions and therefore must reject Plaintiff's argument.  *See Johnson v. O'Malley*, No. 23-CV-481 JLS (AHG), 2024 U.S. Dist. LEXIS 104797, at *12 (S.D. Cal. June 11, 2024) (rejecting plaintiff's argument that court should overturn doctrine of sovereign immunity because "[w]ithout exception, federal district courts are bound by Supreme Court precedent").

Page 26 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

Accordingly, the magistrate judge did not err in concluding that qualified immunity bars Plaintiffs' Fourth Amendment claims here.

### XIII.   Response to Section 6.5 – *Monell* Claim

Plaintiff argues that the magistrate judge erred in recommending that his *Monell* claim be dismissed because "[t]he fact that three separate officers . . . participated in an arrest for a nonexistent crime . . . is powerful circumstantial evidence of a systemic failure to train." Objections at 34.  Defendants dispute Plaintiff's implicit assertion that he was unlawfully arrested.  However, even if it were true, it is well established that "an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022).  "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).  Here, Plaintiff's argument asks this Court to do exactly what *Hyde* forbids and infer a deficient training policy based solely on a single contact during which Defendants supposedly violated his rights.  Accordingly, his claim necessarily fails and Defendants are entitled to summary judgment on his *Monell* claim.

### XIV.   Response to Section 6.6 – *Miranda* Warnings

Plaintiff argues that the fact he was given *Miranda* warnings at the time he was handcuffed is evidence that Sergeant Delancy believed he was being placed under arrest as opposed to merely detained.  Objections at 35.  However, an officer's personal belief about whether an individual is subject to detention as opposed to arrest plays no part in the relevant analysis.  *Hernandez*, 969 F.3d at 940 ("To determine whether a *Terry* stop has escalated into a full-blown arrest, we evaluate the severity of the intrusion, the aggressiveness of the officer's actions, and the reasonableness of the officer's methods under the circumstances.").  Moreover, Plaintiff incorrectly assumes that *Miranda* warnings would only be given if he had been arrested. *Miranda* warnings are necessary whenever officers engage in a custodial interrogation.  *United*

Page 27 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

*States v. Parkins*, 92 F.4th 882, 893 (9th Cir. 2024).  Although "custody" and "arrest" frequently overlap, they are not synonymous.  "Miranda warnings are necessary even during a *Terry* stop if the suspect has been taken into custody or if the questioning otherwise takes place in a police dominated or compelling atmosphere."  *United States v. Bautista*, 684 F.2d 1286, 1291 (9th Cir. 1982).  Given that Plaintiff was placed into handcuffs during the course of a *Terry* stop, it would not have been unreasonable for the officers to conclude that *Miranda* warnings were necessary.  Accordingly, the fact that Plaintiff was provided *Miranda* warnings is completely irrelevant and does not undermine any of the magistrate judge's findings and recommendations.

## XV.    Response to Section 6.7 – Fruit of the Poisonous Tree

Plaintiff argues that the magistrate judge erred by failing to apply the Fruit of the Poisonous Tree doctrine—otherwise known as the exclusionary rule—to exclude evidence of the covered VIN officers observed after he claims he was unlawfully seized.  Objections at 36.  Notably, Sergeant Delancy observed Plaintiff's covered VIN as he was initially approaching Plaintiff before Plaintiff was detained in handcuffs.  Delancy Decl. ¶ 12.  However, far more importantly, "the exclusionary rule does not apply in § 1983 cases."  *Lingo v. City of Salem*, 832 F.3d 953, 959 (9th Cir. 2016).  Accordingly, the magistrate judge did not err in failing to apply the rule in the findings and recommendations.

## XVI.    Response to Section 6.8 – Bystander Liability

Plaintiff argues that the magistrate judge erred because the findings and recommendations fail to analyze whether Officers Griffin and Jundt were liable on a bystander theory since they did not intervene and prevent his detention.  Objections at 36-37.  However, Plaintiff did not plead as a theory that Officers Griffin and Jundt were liable for violating his rights on a bystander theory.  Am. Compl. at 11-15.  Moreover, the magistrate judge did not conclude that Officers Griffin and Jundt were entitled to summary judgment because they were mere bystanders.  Rather, the magistrate judge concluded that they were entitled to summary

judgment because Plaintiff's constitutional rights were not violated in the first place.  F&R at 4-6.  For the reasons discussed previously in this response, that conclusion was correct and Defendants are therefore entitled to summary judgment.

**XVII.  Response to Section 6.9 – Totality of the Circumstances**

Finally, Plaintiff argues that the magistrate judge erred by "analyz[ing] each claim in isolation [and] failing to consider the cumulative weight of the evidence."  Objections at 37.  Instead, Plaintiff argues that "totality of the circumstances must be considered in evaluating the reasonableness of a seizure."  Objections at 37.  Plaintiff misunderstands the relevant law.  It is true that the court must consider the totality of the factual circumstances when determining if a seizure is unreasonable and therefore violates the Fourth Amendment.  However, it does not mean that the court must consider all of a Plaintiff's separate claims together when assessing the case as a whole.  Individual claims are each subject to their own legal standards and Plaintiff must prove each one on its own.  The findings and recommendations did not err in analyzing each of them separately.

**CONCLUSION**

In sum, although Plaintiff presents an exhaustive list of objections to the magistrate judge's findings and recommendations in this case, none have merit.  The magistrate judge correctly found and recommended that Defendants are entitled to summary judgment.  Defendants now respectfully ask this Court to adopt those findings and recommendations and dismiss this case with prejudice.

DATED this 16th Day of June, 2026.

Keegan C. Murphy, OSB #194264
Kenneth S. Montoya, OSB #064467
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S**

**MOTION TO EXTEND DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES** on:

> Cameron Wilson
> 1312 South 44th Avenue
> Yakima, Washington 98908
>     Pro Se

by the following indicated method or methods:

☒　　　　by **electronic means through the Court's Case Management/Electronic Case File system** on the date set forth below;

　　　　by **emailing** a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;

　　　　by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to plaintiff's last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below.

DATED this 16th day of June, 2026.

Keegan C. Murphy, OSB #194264
Kenneth S. Montoya, OSB #064467
Attorneys for Defendants

CERTIFICATE OF SERVICE