**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

**CAMERON JAMES WILSON,**
Plaintiff, *pro se*,

*v.*

**CITY OF HOOD RIVER; EMELIKE DELANCY; AUSTIN GRIFFIN; and RYAN JUNDT,**
Defendants.

**Case No. 3:24-cv-02033-JR**

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e)**

**No Request for Oral Argument**

# MOTION

**Certification under LR 7-1(a).** Pursuant to LR 7-1(a), Plaintiff certifies that on August 14, 2026, Plaintiff conferred by telephone with Keegan Murphy, counsel for Defendants, concerning the issues raised in this Motion. Defendants object to the Motion. Defendants do not contend that any particular factual conflict identified in this Motion was absent from Plaintiff's pre-judgment filings. Defendants' position is that Rule 59(e) does not permit reconsideration of arguments that were available to Plaintiff at the time of summary-judgment briefing. Plaintiff explained that the Motion does not introduce new evidence or assert a new claim but instead seeks correction of the Court's Rule 56 treatment of factual conflicts specifically identified before judgment in ECF No. 57. The parties were unable to resolve the matter.

Plaintiff Cameron James Wilson respectfully moves under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment entered as ECF No. 71, to vacate or modify the Order adopting the Findings and Recommendation ("F&R") at ECF No. 70, and to reconsider the grant of Defendants' summary-judgment motion (ECF No. 30) under the Rule 56 factual posture required by controlling law. Plaintiff requests this relief because the adopted F&R resolved identified, outcome-determinative historical disputes in favor of the moving parties notwithstanding record evidence that permits a contrary, reasonable inference. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam).

This is not an effort to relitigate every issue previously presented or to introduce a new evidentiary theory. Rule 59(e) is an extraordinary remedy. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). The motion instead asks the Court to correct

a manifest Rule 56 error apparent from the existing record: the adoption of factual propositions that Plaintiff specifically challenged in ECF No. 57 with sworn testimony and a contemporaneous transcript. See *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

# MEMORANDUM OF LAW

## 1 Governing Standards

A Rule 59(e) motion may be granted when necessary to correct manifest errors of law or fact, account for newly discovered evidence, accommodate an intervening change in controlling law, or prevent manifest injustice. *ACandS*, 5 F.3d at 1263. It may not be used merely to repeat arguments that were or could have been raised before judgment. *Marlyn Nutraceuticals*, 571 F.3d at 880. This motion meets that standard because it identifies the particular Rule 56 methodology error that Plaintiff asserted before judgment and that became dispositive when the Court adopted the F&R in full. The manifest error is that the adopted F&R resolved multiple genuinely disputed historical facts in favor of the moving parties, contrary to Rule 56 and Tolan, even though Plaintiff had already identified those disputes in ECF No. 57.

Summary judgment may be entered only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when the evidence permits a reasonable jury to return a verdict for the nonmovant; it is material when it can affect the outcome under controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At this stage, the Court may not weigh evidence, assess credibility, or choose among competing reasonable inferences. *Id.* at 249, 255.

Those constraints apply with equal force where qualified immunity is asserted. *Tolan*, 572 U.S. at 656–57. The qualified-immunity sequence is discretionary under *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), but no sequencing choice permits the Court to decide contested historical facts in favor of the officers. The Court must first identify the plaintiff-favorable version of genuinely disputed facts before applying either qualified-immunity prong. *Tolan*, 572 U.S. at 656–57; *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 953–54, 957 (9th Cir. 2000).

# 2 The Adopted F&R Resolves Specific, Material Historical Disputes Against Plaintiff

The F&R stated that it found "no contradiction of defendants' facts by the evidence in the record." (ECF No. 52 at 4.) Plaintiff's objections identified, among other matters, the encounter's inception, the characterization of the command to return to the vehicle, the asserted pre-restraint VIN basis, the absence of a direct pre-handcuff identification request, and the events surrounding Plaintiff's request for officer identification. (ECF No. 57 at 6–16, 19–28.) The present motion focuses on the Rule 56 consequences of those conflicts rather than attempting to repeat every prior objection.

## 2.1 The scope and inception of the encounter are disputed

The F&R described Plaintiff as having been stopped after officers observed him driving without registration plates. (ECF No. 52 at 2.) Plaintiff's objections instead identified testimony and transcript evidence from which a factfinder could conclude that officers had stopped another vehicle for speeding, that Plaintiff's vehicle was already parked, and that Plaintiff was standing on a public sidewalk when the challenged detention began. (ECF No. 57 at 6–7, 19–20.) Delancy testified that Plaintiff was not operating the vehicle at the time of contact and that the encounter was not a traffic stop "in the traditional sense." (Delancy Dep. at 5132–48, as cited in ECF No. 57 at 6–7.)

This does not mean, as a matter of law, that officers lacked every authority to investigate the parked vehicle or speak with Plaintiff. Nor does it deny that a lawful traffic stop may authorize officers to exercise control over occupants of the stopped vehicle. *United States v. Williams*, 419 F.3d 1029, 1034 (9th Cir. 2005), the authority on which the F&R relied, concerned a passenger who voluntarily exited a vehicle during an ongoing traffic stop. The narrower Rule 56 point is that the factual distinction materially affects the inception and scope of the Fourth Amendment analysis: whether Plaintiff was an occupant subject to an ongoing stop, when any seizure began, and what objectively justified the commands that preceded handcuffing. The Court could not treat the factual predicate of *Williams* as undisputed by adopting the moving parties' characterization while disregarding contrary testimony and transcript evidence. *Tolan*, 572 U.S. at 656–57.

## 2.2 The return-command and pre-handcuff identification sequence also permit competing inferences

The F&R states that officers "asked" Plaintiff to return to his vehicle, that Plaintiff refused, and that he was thereafter handcuffed so the officers could check registration and license information. (ECF No. 52 at 2.) Plaintiff's objections identified a more particular record dispute. Delancy testified that he did not ask Plaintiff to return; he said, "You're going to come back down to your vehicle." (Delancy Dep. at 8482–89, as cited in ECF No. 57 at 23–25.) Delancy also testified that, before handcuffing, he did not ask Plaintiff for his name. (Delancy Dep. at 6813–21, as cited in ECF No. 57 at 18–19.) The contemporaneous transcript includes Plaintiff's statement: "You haven't even given me a chance." (Tr. at 8, as cited in ECF No. 57 at 18–19.)

These points do not establish that officers had no authority to seek vehicle-related information or to issue a command during a lawful stop. They matter because the F&R treated the asserted return request, refusal, and ensuing handcuffing as an uncontradicted sequence supporting the Fourth Amendment disposition. Construed in Plaintiff's favor, the record permits a factfinder to regard the exchange as a coercive command followed by restraint before any direct name request, rather than a refusal of a direct identification request or a simple failure to comply with an unambiguous investigative request. That competing account bears on the inception, scope, and reasonableness of the restraint; it may not be resolved for the moving parties at summary judgment. *Anderson*, 477 U.S. at 249, 255; *Tolan*, 572 U.S. at 656–57.

## 2.3 The F&R's officer-identification characterization omits a disputed third response and its timing

The F&R states without qualification that Plaintiff asked the officers for their names and badge numbers "which the officers provided." (ECF No. 52 at 2.) The transcript supports the conclusion that Delancy identified himself as "Eme" with badge number 60 and Griffin identified himself as Austin with badge number 63. (Tr. at 4–5, as discussed in ECF No. 57 at 11–12.) But the transcript also reflects that Plaintiff then asked a third time for a name and badge number before the recording segment ends. Id. Jundt testified that he believed Plaintiff asked him for his name and badge number; that he was prepared to provide it; and that he did not believe he was given an opportunity to do so because Delancy detained Plaintiff and continued the conversation. (Jundt Dep. at 20–21.)

Plaintiff does not contend that no officer provided identifying information. The narrower and record-supported point is that the F&R's unqualified statement resolves the timing of Jundt's

response despite testimony permitting a contrary inference. That timing is material to the Court's treatment of the encounter because Jundt also testified that Plaintiff's request was not threatening and was not obstruction in that situation. Id. The Court may not resolve that evidentiary conflict for the moving parties at summary judgment. *Anderson*, 477 U.S. at 255; *Tolan*, 572 U.S. at 656–57.

## 2.4 The asserted covered-VIN basis presents a disputed chronology, not an announced-charge argument

Plaintiff does not contend that Delancy's use of the phrase "obstruction of justice" independently invalidates an arrest. Under *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004), the Fourth Amendment inquiry is objective and is not controlled by the officer's subjective motivation or the offense announced at the scene. The question remains what historical facts were objectively known at the moment of seizure and whether those facts supplied a lawful basis for the restraint. *Id.*; *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The F&R accepted Defendants' position that the covered-VIN condition supplied an objective basis before Plaintiff was handcuffed. (ECF No. 52 at 2–3.) The body-camera transcript reflects handcuffing before the first spoken VIN reference. (Tr. at 4, 7, as cited in ECF No. 57 at 10, 21.) The transcript's sequence does not conclusively prove that no earlier observation occurred; Defendants maintain that the condition had been observed earlier. But construed in Plaintiff's favor, the chronology, together with the other record evidence identified in ECF No. 57, permits a reasonable factfinder to infer that the VIN condition was not observed or known until after the restraint. That competing inference is material because later-acquired information cannot establish what officers objectively knew before the seizure. *Beck*, 379 U.S. at 91; *Devenpeck*, 543 U.S. at 153–55.

## 2.5 The record permits competing inferences concerning the alleged attempt to leave, noncompliance, threat, resistance, and force

The F&R states that Plaintiff "attempted to walk away," refused to return to his vehicle, and ignored Delancy's instruction. (ECF No. 52 at 2.) It also states that Plaintiff was "fully cooperative" during handcuffing. Id. The existing record permits more than one reasonable inference about the sequence. Delancy testified that Plaintiff did not physically resist and was cooperative during the handcuffing. (Delancy Dep. at 167–68.) Griffin testified that he observed no dangerous actions and did not recall Plaintiff being belligerent, yelling, or screaming. (Griffin Dep. at 19.) Jundt testified that Plaintiff's request for his badge number was not threatening and was not obstruction

in that situation. (Jundt Dep. at 20–21.)

The record also contains Defendants' competing account: Delancy testified that Plaintiff took two steps toward Jundt and that he perceived a potential for flight. (Delancy Dep. at 167.) Thus, Plaintiff does not ask the Court to label Defendants' account false. Rather, the point is that a factfinder could credit the evidence of no physical resistance, no observed dangerous conduct, no belligerence, and a non-threatening movement toward Jundt to request identification, rather than credit the potential-flight inference. The distinction is material to both the governmental-interest side of the *Graham* analysis and the degree of force reasonable at the time. *Graham v. Connor*, 490 U.S. 386, 396 (1989). In an excessive-force qualified-immunity case, a court may not resolve disputes over threat and resistance in favor of officers on summary judgment. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477–81 (9th Cir. 2007); *Tolan*, 572 U.S. at 656–57.

At the scene, Delancy stated that Plaintiff was being detained for "obstruction." (Tr. at 4, as cited in ECF No. 57 at 8.) Delancy later agreed that "obstruction of justice" is not the name of an Oregon statute or code. (Delancy Dep. at 4170–4201, as cited in ECF No. 57 at 8.) That admission is not independently dispositive under *Devenpeck*; it matters because it reinforces the need to examine, rather than assume, the objective facts available before the handcuffing.

Oregon law makes the conduct distinction consequential. ORS 162.235(1)(a) requires intentional obstruction through intimidation, force, physical or economic interference, or an obstacle. Separately, the Oregon Supreme Court has construed the passive-resistance exception in ORS 162.247 to encompass noncooperation with a peace officer that does not involve violence or other active conduct. *State v. McNally*, 361 Or. 314, 322–24, 339, 392 P.3d 721 (2017). *McNally* construed a different Oregon statute in a criminal jury-instruction context; it does not immunize actual physical resistance or decide the federal claims here. It confirms only why the distinction between passive verbal noncooperation and active, threatening interference is fact-sensitive. If a jury credits Plaintiff's evidence of verbal questioning, a request for identification, no threat, and no physical resistance, the objective basis for an interference-type theory and the asserted governmental need for immediate handcuffing materially differ from the account accepted at summary judgment.

# 3 Rice v. Morehouse Confirms the Required Rule 56 Methodology but Does Not Supply a New Theory

Plaintiff cites *Rice v. Morehouse*, 989 F.3d 1112 (9th Cir. 2021), as additional binding support for the Rule 56 principle Plaintiff already invoked through *Tolan* and *Anderson* in ECF No. 57, not as new record evidence, an intervening change in law, or a claim that *Rice* is factually identical. *Rice*

involved a much more severe use of force: officers pulled the plaintiff from a vehicle, tripped him face-first onto pavement, pinned him down, and used additional force. *Id.* at 1115–18. The present record does not allege that same take-down or level of force.

Its relevant lesson is methodological. *Rice* explained that, when a court reaches the constitutional-violation prong, it asks whether, "[t]aken in the light most favorable to the party asserting the injury," the alleged facts show a constitutional violation. *Id.* at 1120 (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). *Pearson* permits a court to select the order in which it addresses the qualified-immunity prongs, but that discretion does not permit selection of the officers' version of disputed historical facts. In reversing qualified-immunity summary judgment, *Rice* held that a reasonable jury could regard disputed conduct as passive, rather than active, resistance and then evaluated the force claim from that plaintiff-favorable factual posture. *Id.* at 1120–25. That is the limited proposition Plaintiff invokes here: where the record permits competing reasonable inferences about threat, resistance, the necessity of force, and the facts known before restraint, the court may not choose the officers' version at summary judgment. See also *LaLonde*, 204 F.3d at 953–54, 957.

The Court's qualified-immunity decision in *Zorn v. Linton*, 146 S. Ct. 926, 928–31 (2026), does not alter that Rule 56 requirement. *Zorn* is materially adverse on clearly established law for a routine wristlock used after warnings to move a resistant sit-in protester, and Plaintiff does not minimize it. But *Zorn* itself began by viewing the summary-judgment record in the nonmovant's favor. *Id.* at 927. The present motion accordingly asks first for correction of the historical fact selection required by Rule 56; it does not ask the Court to adopt a generalized proposition that any handcuffing or routine physical restraint violates clearly established law.

# 4 The Retaliation Theory Must Be Considered Through the Correct Probable-Cause Framework

Plaintiff's factual account also bears on the First Amendment claim because it describes a request for officer identification and other verbal speech immediately preceding restraint. Temporal sequence, without more, does not defeat a retaliatory-arrest claim where objective probable cause exists. Under *Nieves v. Bartlett*, 587 U.S. 391, 402, 406–07 (2019), the absence of probable cause is generally required, subject to a narrow exception supported by objective evidence that similarly situated people not engaged in the same protected speech were not arrested. *Gonzalez v. Trevino*, 602 U.S. 653, 658–60 (2024), clarifies that virtually identical named comparators are not required, but the evidence must remain objective.

Plaintiff does not ask the Court to find that timing alone satisfies the *Nieves* exception. The immediate Rule 56 point is narrower: the disputed historical facts that affect whether there was objective probable cause also affect the threshold retaliation analysis. If, after construing the facts in Plaintiff's favor, the Court concludes that objective probable cause independently supported the seizure, *Nieves* governs the retaliation claim and the existing record must be assessed under its objective-evidence requirement. If the Court concludes a jury could find no objective pre-seizure basis, the premise for treating probable cause as dispositive is absent.

# 5 The Pending ADR Motion Should Be Restored if Judgment Is Vacated

The Rule 56 errors independently support the requested relief. Separately, if the Court alters or amends the judgment, the Court should restore Plaintiff's mediation motion (ECF No. 68) to active consideration because its denial in ECF No. 72 rested on mootness following dismissal. Plaintiff does not request mediation as a substitute for a Rule 56 ruling; he requests that the Court address the motion in the ordinary course if the judgment is reopened.

# CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court:

(1) alter or amend the judgment entered at ECF No. 71;

(2) vacate or modify ECF No. 70 to the extent it adopted the F&R and granted summary judgment without applying the plaintiff-favorable Rule 56 analysis required by *Tolan*;

(3) reconsider Defendants' summary-judgment motion under the Rule 56 factual posture described above;

(4) deny summary judgment on Plaintiff's Fourth Amendment and First Amendment claims to the extent the existing record, when properly construed in Plaintiff's favor, presents a genuine dispute of material fact, and reconsider any derivative disposition that depends on those claims; or, at minimum, issue a reasoned determination explaining why the specific evidence identified in ECF No. 57 does not create a genuine and material dispute; and

(5) if the judgment is altered or amended, restore ECF No. 68 to active consideration in light of ECF No. 72's mootness disposition.

Dated: **August 17, 2026**

Respectfully submitted,

*s/* Cameron James Wilson
Plaintiff, *pro se*
503-496-9239
cam@piitp.com

## CERTIFICATE OF SERVICE

I certify that on **August 17, 2026**, I filed the foregoing Plaintiff's Motion to Alter or Amend Judgment under Federal Rule of Civil Procedure 59(e) through the Court's CM/ECF system. The CM/ECF system will send notice of electronic filing to counsel of record.

*s/* Cameron James Wilson
Plaintiff, *pro se*